Name & Address:
Jerome H. Friedberg, Esq. (State Bar No. 125663)
Patricia S. Riordan, Esq. (State Bar No. 187418)
THEODORA ORINGHER MILLER & RICHMAN PC
10880 Wilshire Boulevard, Suite 1700
Los Angeles, CA  90024

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAUTILUS, INC., a Washington corporation,<br>PLAINTIFF(S)<br><br>V.<br><br>CHUNCHAI YU, an individual; STEVEN BURNSTEIN, an individual; STANLEY YANG, an individual; DR TRADE INTERNATIONAL, INC., a California corporation; RODNEY TIMMERWILKE, an individual; and DOES ONE through TEN, inclusive,<br>DEFENDANT(S). | CASE NUMBER<br>CV10 0624 MMM (MANX)<br><br><br>SUMMONS |

TO:DEFENDANT(S): <u>CHUNCHAI YU, an individual; STEVEN BURNSTEIN, an individual; STANLEY YANG, an individual; DR TRADE INTERNATIONAL, INC., a California corporation; and RODNEY TIMMERWILKE, an individual</u>

A lawsuit has been filed against you.

Within <u>21</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint ☒ <u>First</u> amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Jerome H. Friedberg</u>, whose address is <u>10880 Wilshire Boulevard, Suite 1700, Los Angeles, CA  90024</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: NOV - 5 2010

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

American LegalNet, Inc.
www.USCourtForms.com

Name & Address:
Jerome H. Friedberg, Esq. (State Bar No. 125663)
Patricia S. Riordan, Esq. (State Bar No. 187418)
THEODORA ORINGHER MILLER & RICHMAN PC
10880 Wilshire Boulevard, Suite 1700
Los Angeles, CA  90024

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | CASE NUMBER |
|---|---|
| NAUTILUS, INC., a Washington corporation,<br>PLAINTIFF(S)<br>V.<br>CHUNCHAI YU, an individual; STEVEN BURNSTEIN, an individual; STANLEY YANG, an individual; DR TRADE INTERNATIONAL, INC., a California corporation; RODNEY TIMMERWILKE, an individual; and DOES ONE through TEN, inclusive,<br>DEFENDANT(S) | CV10 0624 MMM (MANX)<br><br><br>SUMMONS |

TO: DEFENDANT(S): <u>CHUNCHAI YU, an individual; STEVEN BURNSTEIN, an individual; STANLEY YANG, an individual; DR TRADE INTERNATIONAL, INC., a California corporation; and RODNEY TIMMERWILKE, an individual</u>

A lawsuit has been filed against you.

Within <u>21</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint ☒ <u>First</u> amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Jerome H. Friedberg</u>, whose address is <u>10880 Wilshire Boulevard, Suite 1700, Los Angeles, CA  90024          </u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:    NOV - 5 2010

By:    SHEA BOURGEOIS

Deputy Clerk

(Seal of the Court)

SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

American LegalNet, Inc.<br>www.USCourtForms.com

1  Jerome H. Friedberg, Esq. (State Bar No. 125663)
2  jfriedberg@tocounsel.com
   Patricia S. Riordan, Esq. (State Bar No. 187418)
3  priordan@tocounsel.com
4  THEODORA ORINGHER MILLER & RICHMAN PC
   10880 Wilshire Boulevard, Suite 1700
5  Los Angeles, California  90024-4101
6  Telephone: (310) 557-2009
   Facsimile: (310) 551-0283
7
8  Attorneys for NAUTILUS, INC., a
   Washington corporation

```
                              FILED
                    CLERK, U.S. DISTRICT COURT

                         NOV - 5 2010

                    CENTRAL DISTRICT OF CALIFORNIA
                    BY _____ DEPUTY
```

9

10              **UNITED STATES DISTRICT COURT**
11   **CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION**
12
13   NAUTILUS, INC., a Washington          Case No. CV10 0624 MMM (MANX)
     corporation,
14                                         **FIRST AMENDED COMPLAINT**
               Plaintiff,                  **FOR:**
15
          vs.                              **(I)     LANHAM ACT – § 32 (15**
16                                         **U.S.C. § 1114);**
     CHUNCHAI YU, an individual;           **(II)    LANHAM ACT – § 43(a) (15**
17   STEVEN BURNSTEIN, an individual;      **U.S.C. § 1125(a));**
     STANLEY YANG, an individual; DR       **(III)   LANHAM ACT – § 42 (15**
18   TRADE INTERNATIONAL, INC., a          **U.S.C. § 1124);**
     California corporation; RODNEY        **(IV)    TARIFF ACT – § 526 (19**
19   TIMMERWILKE, an individual; and       **U.S.C. § 1526(A));**
     DOES ONE through TEN, inclusive,      **(V)     PATENT ACT – §§ 271, 289**
20                                         **(35 U.S.C. §§ 271, 289);**
                                           **(VI)    STATUTORY UNFAIR**
21             Defendants.                 **COMPETITION (CAL. BUS. &**
22                                         **PROF. CODE § 17200 et seq.);**
                                           **(VII)   COMMON LAW UNFAIR**
23                                         **COMPETITION AND**
24                                         **TRADEMARK INFRINGEMENT;**
                                           **and**
25                                         **(VIII)  CIVIL CONSPIRACY.**
26
27
28

1    Plaintiff NAUTILUS, INC. ("Nautilus"), for its First Amended Complaint herein
2    against CHUNCHAI YU ("Yu"), STEVEN BURNSTEIN ("Burnstein"), STANLEY
3    YANG ("Yang"), DR TRADE INTERNATIONAL, INC. ("DR Trade"), RODNEY
4    TIMMERWILKE ("Timmerwilke"), and DOES ONE through TEN, inclusive
5    (collectively, "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

7    1.    This is an action for: (i) infringement of registered trademarks in violation
8    of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; (ii) false designation of origin
9    and trademark and trade dress infringement in violation of Section 43(a) of the Lanham
10   Act, 15 U.S.C. § 1125(a); (iii) unlawful importation of goods bearing infringing
11   trademarks in violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124; (iv)
12   unlawful importation of goods bearing registered United States trademarks in violation
13   of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a); (v) patent infringement in
14   violation of the Patent Act, 35 U.S.C. §§ 271 and 289; (vi) statutory unfair competition
15   in violation of Cal. Bus. & Prof. Code § 17200 et seq.; (vii) unfair competition in
16   violation of the common law of the State of California; and (viii) civil conspiracy to
17   commit each of the foregoing violations of law.

18   2.    As described more fully below, Defendants have imported, distributed,
19   offered for sale, and/or sold commercial quantities of counterfeit Bowflex® and
20   Bowflex Xtreme® brand home gyms and BOWFLEX Selecttech® brand dumbbells
21   and dumbbell stands (collectively, "BOWFLEX brand exercise equipment"), and are
22   therefore liable for infringement of Nautilus's lawfully-owned trademarks, trade dress,
23   and patents.

24   3.    Defendants' conduct has produced and, unless enjoined by this Court, will
25   continue to produce a likelihood of consumer confusion and deception as well as
26   irreparable injury to Nautilus.

27   4.    For a number of years, Nautilus has used various trademarks, alone and in
28   combination, in connection with the marketing and sale of BOWFLEX brand exercise

1  equipment.  These trademarks include, without limitation, the BOWFLEX trademark,
2  the BOWFLEX XTREME trademark, the SELECTTECH trademark, and the Bowflex
3  "B" Design® trademark, a stylized "B" within an oval design (collectively, the
4  "Bowflex Marks").  Nautilus also is the owner of a distinctive trade dress in the
5  appearance and features of its line of BOWFLEX brand exercise equipment (the
6  "Bowflex Trade Dress").  Nautilus has spent substantial time, effort, and money
7  advertising and promoting the Bowflex Marks and Bowflex Trade Dress throughout the
8  United States.  The Bowflex Marks and Bowflex Trade Dress have consequently
9  developed significant goodwill, have become distinctive, and have acquired secondary
10  meaning.

11      5.     By virtue of proper assignment, Nautilus also has acquired and duly owns
12  all right, title, and interest in United States Patents Nos. 7,077,791 (the "'791 Patent"),
13  7,261,678 (the "'678 Patent"), Des. 508,628 (the "'628 Patent"), Des. 540,405 (the
14  "'405 Patent"), and Des. 540,894 (the "'894 Patent") (collectively, the "Bowflex
15  Patents"), including the right to sue and recover for infringement thereof.

16      6.     In an attempt to profit from Nautilus's substantial investment in its
17  Bowflex Marks, Bowflex Trade Dress, and Bowflex Patents, Defendants have
18  imported, distributed, sold, and/or offered for sale exercise equipment that bears
19  spurious marks, appearances, and features that are either identical to or substantially
20  indistinguishable from the Bowflex Marks and Bowflex Trade Dress, and that embody
21  and infringe one or more of the inventions and designs claimed in the Bowflex Patents.
22  Consumers naturally expect that exercise equipment bearing the famous Bowflex
23  Marks and Bowflex Trade Dress and embodying the Bowflex Patents to be
24  manufactured, licensed or sponsored by Nautilus.  However, Nautilus has confirmed
25  that the exercise equipment at issue was not manufactured, licensed or sponsored by, or
26  affiliated with Nautilus, and is counterfeit.  Consumers are therefore likely to be
27  confused and/or disappointed by obtaining counterfeit exercise equipment when they
28  intended to purchase genuine exercise equipment manufactured and sold by Nautilus.

*THEODORA ORINGHER MILLER & RICHMAN PC*

7.     As a result of Defendants' actions, Nautilus is suffering a loss of the enormous goodwill and value it has created in the Bowflex Marks, Bowflex Trade Dress, and Bowflex Patents and is losing sales of genuine products. This action seeks permanent injunctive relief and damages for Defendants' infringement of Nautilus's valuable intellectual property rights.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to: (i) 28 U.S.C. §§ 1331, 1338(a) and (b), 15 U.S.C. § 1121, as an action for violation of the Lanham Act, 15 U.S.C. §§ 1051 et seq., 35 U.S.C. §§ 271 and 289, as an action for violation of the Patent Act, 35 U.S.C. §§ 1 et seq.; (ii) 28 U.S.C. § 1332(a)(2), as an action between a citizen of a State and a citizen or subject of a foreign state in which the amount in controversy exceeds $75,000, exclusive of interest and costs; and (iii) 28 U.S.C. § 1367(a), pursuant to the principles of supplemental jurisdiction.

9.     Nautilus is informed, believes, and thereupon alleges that venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## THE PARTIES

10.     Plaintiff Nautilus is a corporation organized and existing under the laws of the State of Washington, with its principal place of business at 16400 S.E. Nautilus Drive, Vancouver, WA 98683.

11.     Defendant Chunchai Yu is an individual residing at 12409 Orgren Court, Chino, California 91710.

12.     Defendant Steven Burnstein is an individual residing at 12409 Orgren Court, Chino, California 91710.

13.     Defendant Stanley Yang is an individual residing at 10406 Falcon Avenue, Fountain Valley, California 92708. Upon information and belief, Yang is the owner and president of DR Trade.

*THEODORA ORINGHER MILLER & RICHMAN PC*

14.     Defendant DR Trade International, Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business at 18474 Amistad Street, Suite F, Fountain Valley, California 92708.

15.     Defendant Rodney Timmerwilke is an individual residing at 566 South Calvados Avenue, Covina, California 91723.

16.     Nautilus does not know the true names and capacities of the Defendants sued herein as Does One through Ten, inclusive, and therefore sues these Defendants by fictitious names.  Does One through Ten conspired with Yu, Burnstein, Yang, DR Trade, and Timmerwilke to import and distribute counterfeit exercise equipment bearing the Bowflex Marks and Bowflex Trade Dress and/or infringing the Bowflex Patents.  Nautilus will amend this Complaint to allege the true names and capacities of these Defendants when it ascertains the same.

### FACTS GIVING RISE TO THIS ACTION

*The Infringed Trademarks*

17.     Nautilus is the United States owner of the famous Bowflex Marks under which BOWFLEX brand exercise equipment is sold.  Nautilus has invested substantial time, effort and money in advertising and promoting the Bowflex Marks throughout the United States.  As a result, the Bowflex Marks are reportedly among the most widely recognized trademarks in the United States, and Nautilus has developed significant goodwill in these trademarks.  Today, BOWFLEX exercise equipment constitutes one of the most popular brands of exercise equipment sold in the United States.

18.     Nautilus is the registered owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Registration No. | Registration Date | Trademark |
| --- | --- | --- |
| 1,416,128 | November 4, 1986 | BOWFLEX |
| 3,089,399 | May 9, 2006 | BOWFLEX XTREME |
| 3,099,981 | June 6, 2006 | SELECTTECH |

*THEODORA ORINGHER MILLER & RICHMAN PC*

| 3,127,405 | August 8, 2006 | BOWFLEX "B" DESIGN |

True and correct copies of the registration certificates from the USPTO are attached hereto as Exhibits A through D.  The BOWFLEX trademark (Registration No. 1,416,128) is valid, subsisting and incontestable pursuant to 15 U.S.C. § 1065.

19.   Nautilus filed and recorded copies of the registration certificates of the BOWFLEX, BOWFLEX XTREME, SELECTTECH, and BOWFLEX "B" DESIGN trademarks with the U.S. Bureau of Customs and Border Protection ("CBP") in accordance with Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a), and Section 42 of the Lanham Act, 15 U.S.C. § 1124.

20.   Once filed with CBP, the BOWFLEX trademark (Registration No. 1,416,128) was recorded by CBP under the Recordation Number TMK 09-00700, the BOWFLEX XTREME trademark (Registration No. 3,089,399) was recorded by CBP under the Recordation Number TMK 09-00701, the SELECTTECH trademark (Registration No. 3,099,981) was recorded by CBP under the Recordation Number TMK 09-00698, and the BOWFLEX "B" DESIGN trademark (Registration No. 3,127,405) was recorded by CBP under the Recordation Number TMK 09-00699. True and correct copies of computer printouts documenting CBP's recordation of these trademarks are attached hereto as Exhibits E through H.

***The Infringed Trade Dress***

21.   Nautilus is the owner of the Bowflex Trade Dress, a distinctive trade dress in the appearance and features of its line of BOWFLEX® SELECTTECH® dumbbells and dumbbell stands.  Representative samples of the Bowflex Trade Dress are shown in Exhibit I.  The Bowflex Trade Dress comprises unique and distinctive designs and is non-functional.

22.   Since the time when Nautilus first adopted its Bowflex Trade Dress, Nautilus has been, and currently is, the exclusive source in the United States of its BOWFLEX® SELECTTECH® dumbbells and dumbbell stands having the Bowflex Trade Dress.

*THEODORA ORINGHER MILLER & RICHMAN PC*

23.    Nautilus has continuously advertised, marketed, sold, and distributed BOWFLEX® SELECTTECH® dumbbells and dumbbell stands having the Bowflex Trade Dress.

24.    Nautilus has expended substantial effort and funds in promoting the goodwill of its BOWFLEX® SELECTTECH® dumbbells and dumbbell stands having the Bowflex Trade Dress.  The Bowflex Trade Dress consequently has developed significant goodwill, has become distinctive, and has acquired secondary meaning.

*The Infringed Patents*

25.    By virtue of proper assignments, Nautilus has acquired and duly owns all right, title, and interest in the following patents, including the right to sue and recover for infringement thereof:

| Patent No. | Date of Patent | Title of Patent |
|---|---|---|
| 7,077,791 | July 18, 2006 | Weight Selection Methods and Apparatus |
| 7,261,678 | August 28, 2007 | Adjustable Dumbbell System |
| Des. 508,628 | August 23, 2005 | Adjustable Dumbbell Support Base |
| Des. 540,405 | April 10, 2007 | Adjustable Dumbbell |
| Des. 540,894 | April 17, 2007 | Adjustable Dumbbell |

True and correct copies of these patents from the records of the USPTO are attached hereto as Exhibits J through N.

*Defendants' Importation of Infringing Exercise Equipment*

26.    CBP periodically inspects a fraction of the merchandise imported into the United States.  As a result of one such inspection on or about July 14, 2009, CBP discovered that a shipment imported into the United States in the name of Chunchai Yu contained a commercial quantity of counterfeit exercise equipment bearing spurious

*THEODORA ORINGHER MILLER & RICHMAN PC*

1  marks that were either identical with or substantially indistinguishable from the
2  Bowflex Marks.

3      27.   In October 2009, CBP provided Nautilus with a Notice of Seizure of
4  Infringing Merchandise (No. 2009-2704-001260) ("Yu Notice of Seizure") naming
5  "Chunchai Yu, 12409 Orgren Ct, Chino, CA 91710" as the party who imported over
6  300 pieces of counterfeit exercise equipment that infringed the BOWFLEX and
7  BOWFLEX XTREME trademarks.  According to the Yu Notice of Seizure, the
8  counterfeit BOWFLEX brand exercise equipment had been exported by Zhejiang Baige
9  Import & Export Co., Ltd. in China and entered the United States at the Port of Los
10 Angeles/Long Beach on or about July 14, 2009.  A true and correct copy of the Yu
11 Notice of Seizure is attached hereto as Exhibit O.

12     28.   Nautilus has inspected samples of the exercise equipment referenced in the
13 Yu Notice of Seizure and has confirmed that they are counterfeit, and not genuine
14 articles manufactured by or with the permission of Nautilus.  Nautilus also has
15 confirmed that: (i) in addition to the BOWFLEX and BOWFLEX XTREME
16 trademarks, the seized exercise equipment and/or its packaging also bear counterfeit
17 versions of the SELECTTECH and BOWFLEX "B" DESIGN trademarks; (ii) the
18 seized exercise equipment embodies and infringes one or more of the inventions and
19 designs claimed in the Bowflex Patents; and (iii) the seized exercise equipment bears a
20 striking resemblance, and is confusingly similar, to genuine BOWFLEX exercise
21 equipment having the Bowflex Trade Dress.

22     29.   Together, Yu and Burnstein have imported at least thirty-eight ocean
23 shipping containers from entities in China, the great majority of which were exported in
24 the name of Zhejiang Baige Import & Export Co., Ltd.  Upon information and belief,
25 most, if not all, of the containers imported by Yu and Burnstein contained counterfeit
26 exercise equipment, including counterfeit BOWFLEX brand exercise equipment.

27     30.   As a result of another inspection on or about September 30, 2009, CBP
28 discovered that a shipment imported into the United States in the name of DR Trade

*THEODORA ORINGHER MILLER & RICHMAN PC*

1   contained a commercial quantity of counterfeit exercise equipment bearing spurious

2   marks that were either identical with or substantially indistinguishable from the

3   Bowflex Marks.

4          31.    In October 2009, CBP provided Nautilus with a Notice of Seizure of

5   Infringing Merchandise (No. 2009-2704-001348) ("DR Trade Notice of Seizure")

6   naming "DR Trade International Inc., 18474 Amistad St., #F, Fountain Valley, CA

7   92708" as the party that imported over 115 cartons of counterfeit exercise equipment

8   that infringed the BOWFLEX and BOWFLEX XTREME trademarks.  According to

9   the DR Trade Notice of Seizure, the counterfeit BOWFLEX brand exercise equipment

10  had been exported by Huanggang Fuqiang Textile Imp. & Exp. Co, Ltd. in China and

11  entered the United States at the Port of Los Angeles/Long Beach on or about September

12  30, 2009.  A true and correct copy of the DR Trade Notice of Seizure is attached hereto

13  as Exhibit P.

14         32.    Nautilus has inspected digital photographs of the exercise equipment

15  referenced in the DR Trade Notice of Seizure and has confirmed that they are

16  counterfeit, and not genuine articles manufactured by or with the permission of

17  Nautilus.  Nautilus also has confirmed that: (i) in addition to the BOWFLEX and

18  BOWFLEX XTREME trademarks, the seized exercise equipment and/or its packaging

19  also bear counterfeit versions of the SELECTTECH and BOWFLEX "B" DESIGN

20  trademarks; (ii) the seized exercise equipment embodies and infringes one or more of

21  the inventions and designs claimed in the Bowflex Patents;  and (iii) the seized exercise

22  equipment bears a striking resemblance, and is confusingly similar, to genuine

23  BOWFLEX exercise equipment having the Bowflex Trade Dress.

24         33.    Together, Yang and his company DR Trade have imported more than sixty

25  ocean shipping containers from entities in China, more than one-third of which were

26  exported in the name of Huanggang Fuqiang Textile Imp. & Exp. Co, Ltd.  Upon

27  information and belief, most, if not all, of the containers imported by Yang and DR

28

*THEODORA ORINGHER MILLER & RICHMAN PC*

1  Trade contained counterfeit exercise equipment, including counterfeit BOWFLEX
2  brand exercise equipment.

3      34.    Upon information and belief, Defendants Yu, Burnstein, Yang, and DR
4  Trade arranged for and imported the shipments referenced in the Yu and DR Trade
5  Notices of Seizure in connection with their coordinated and ongoing efforts to sell,
6  offer for sale, and/or distribute counterfeit BOWFLEX brand exercise equipment,
7  thereby intentionally and knowingly infringing Nautilus's valuable trademarks, trade
8  dress, and patents.

9  ***Defendants' Sales of Infringing Exercise Equipment***

10     35.    Yu and Burnstein own and operate several business entities for the purpose
11 of offering for sale, selling, and distributing the counterfeit BOWFLEX brand exercise
12 equipment they import.  These businesses include Homegymforyou and Overstock
13 Express. Yu and Burnstein advertise counterfeit BOWFLEX brand exercise equipment
14 for sale on websites such as www.eBay.com.  In the case of Overstock Express, Yu and
15 Burnstein use commercial shipping companies, such as FedEx Ground Package
16 System, Inc., to ship counterfeit BOWFLEX brand exercise equipment to consumers
17 located throughout the United States.

18     36.    Upon information and belief, Yang sells counterfeit BOWFLEX exercise
19 equipment to consumers: (i) directly from the warehouse at which his company DR
20 Trade is located in Fountain Valley, California, (ii) through the use of websites such as
21 www.eBay.com, and (iii) by using salesmen such as Timmerwilke.

22     37.    In June 2010, private investigators working for Nautilus responded to an
23 offer to sell BOWFLEX SELECTTECH dumbbells listed on the website
24 www.craigslist.org. The seller of the dumbbells met Nautilus's private investigators in
25 the parking lot of a Yum Yum Donuts shop in Covina, California, and concluded the
26 transaction.  Nautilus has inspected these dumbbells and has determined that they are
27 counterfeit.

28

THEODORA ORINGHER MILLER & RICHMAN PC

38.     The seller of these counterfeit BOWFLEX SELECTTECH dumbbells was Timmerwilke.  Timmerwilke explained to the private investigators at the time of the sale that he was not the importer of the goods, but rather was a middleman for the importer, who maintained a warehouse in Fountain Valley, California.   Upon information and belief, the importer described by Timmerwilke is Yang and the warehouse is the building in which DR Trade does business.

***Yu's and Burnstein's Infringing Activities are Connected to Those of Yang and DR Trade***

39.     Between July 2008 and November 2009, the time period during which the import activities of Yu and Burnstein and Yang and DR Trade were at their peaks, more than 290 telephone conversations took place between Yu and/or Burnstein and Yang. Many of these calls are grouped around the dates of importation for the shipments imported by Yu and Burnstein.

40.     In addition, Yu and Burnstein and Yang and DR Trade all have imported exercise equipment from a company named Zhejiang Health Ascend Industry Ltd., located at No. 1 Hehua Road, Baihuashan Industry Zone, Zhejiang, China.  This is the same company from which a man named Brian Polee imported counterfeit BOWFLEX brand exercise equipment into the United States, and for which crime Mr. Polee was convicted in federal court in Seattle, Washington, in 2009.

41.     The sheer number and peculiar groupings of telephone calls between Yu and/or Burnstein and Yang, combined with the fact that these Defendants share a common source of known counterfeit BOWFLEX brand exercise equipment, strongly suggest, and Nautilus thereupon alleges, a coordinated and mutual effort by Yu, Burnstein, and Yang to import counterfeit BOWFLEX brand exercise equipment into the United States.

***The Likelihood of Confusion and Injury Caused by Defendants' Actions***

42.     Upon information and belief, Defendants are engaged in and/or otherwise involved in facilitating the ongoing and unrestrained commercial importation of

*THEODORA ORINGHER MILLER & RICHMAN PC*

1  counterfeit BOWFLEX brand exercise equipment into the United States. As a result of

2  Defendants' actions, Nautilus is losing sales of genuine products, is suffering a loss of

3  the enormous goodwill and value created in its Bowflex Marks, Bowflex Trade Dress,

4  and Bowflex Patents, and/or may suffer such loss if Defendants are allowed to continue

5  their illegal activity.

6      43.   The counterfeit BOWFLEX brand exercise equipment imported by

7  Defendants is not the same as genuine exercise equipment manufactured and sold by

8  Nautilus under the BOWFLEX brand name. As such, consumers who purchase

9  counterfeit BOWFLEX brand exercise equipment are likely to be confused and/or

10  disappointed by obtaining counterfeit exercise equipment when they intended to

11  purchase genuine BOWFLEX brand exercise equipment. In addition, the sale of

12  counterfeit BOWFLEX brand exercise equipment is likely to cause confusion among

13  consumers regarding Nautilus's sponsorship or approval of the counterfeit exercise

14  equipment. As a result of Defendants' actions, Nautilus is suffering a loss of the

15  enormous goodwill Nautilus created in its BOWFLEX products and is losing sales of

16  genuine products.

17      44.   Defendants are likely to continue to commit the acts complained of herein,

18  and unless restrained and enjoined, will continue to do so, thereby causing Nautilus

19  irreparable harm.

20              **FIRST CLAIM FOR RELIEF**

21      (For Infringement of Registered Trademarks in Violation of Section 32(1)

22              of the Lanham Act, 15 U.S.C. § 1114(1))

23      45.   Nautilus specifically realleges and incorporates herein by reference each

24  and every allegation contained in Paragraphs 1 through 44 hereof.

25      46.   The acts of Defendants alleged herein constitute the use in commerce,

26  without the consent of Nautilus, of a reproduction, counterfeit, copy, or colorable

27  imitation of one or more of the Bowflex Marks in connection with the sale, offering for

28  sale, distribution, or advertising of goods, which use is likely to cause confusion or

*THEODORA ORINGHER MILLER & RICHMAN PC*

1 │ mistake, or to deceive consumers and therefore infringe Nautilus's rights in one or more

2 │ of the Bowflex Marks, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §

3 │ 1114(1).

4 │     47.    Defendants' use of the infringing marks was willful, intentional, and done

5 │ with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of

6 │ the Lanham Act, 15 U.S.C. § 1116(d).

7 │     48.    Defendants' acts entitle Nautilus to damages for all of Defendants' profits

8 │ derived from their past unlawful conduct, trebled, to the full extent provided under

9 │ Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the

10 │ alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C.

11 │ § 1117(c).

12 │     49.    Nautilus has no adequate remedy at law for the foregoing wrongful

13 │ conduct. Nautilus has been, and absent injunctive relief will continue to be, irreparably

14 │ harmed by Defendants' actions.

15 │ **SECOND CLAIM FOR RELIEF**

16 │ (For False Designation of Origin and Trademark and Trade Dress Infringement in

17 │ Violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))

18 │     50.    Nautilus specifically realleges and incorporates herein by reference each

19 │ and every allegation contained in Paragraphs 1 through 49 hereof.

20 │     51.    The acts of Defendants alleged herein constitute the use in interstate

21 │ commerce of a word, term, name, symbol, or device, or any combination thereof, or

22 │ false designation of origin, in connection with the sale, or offering for sale, of goods in

23 │ violation of section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). These

24 │ acts of Defendants are likely to cause confusion, or to cause mistake, or to deceive as to

25 │ the affiliation, connection, or association of Defendants with Nautilus, or as to the

26 │ origin, sponsorship, or approval of the counterfeit exercise equipment by Nautilus.

27 │

28 │

*THEODORA ORINGHER MILLER & RICHMAN PC*

52. Defendants' use of infringing marks was willful, intentional, and done with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

53. Defendants' acts entitle Nautilus to damages for all of Defendants' profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

54. Nautilus has no adequate remedy at law for the foregoing wrongful conduct. Nautilus has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## THIRD CLAIM FOR RELIEF

(For Unlawful Importation of Goods Bearing Infringing Marks in Violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124)

55. Nautilus specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 54 hereof.

56. Defendants' acts alleged herein constitute the importation of merchandise which bears copies or simulations of the federally registered Bowflex Marks including, without limitation, the BOWFLEX, BOWFLEX XTREME, SELECTTECH, and BOWFLEX "B" DESIGN trademarks, in violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124.

57. Defendants' use of the infringing marks was willful, intentional, and done with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

58. Defendants' acts entitle Nautilus to damages for all of Defendants' profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the

*THEODORA ORINGHER MILLER & RICHMAN PC*

1  alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C.
2  § 1117(c).

3      59.    Nautilus has no adequate remedy at law for the foregoing wrongful
4  conduct. Nautilus has been, and absent injunctive relief will continue to be, irreparably
5  harmed by Defendants' actions.

6                          **FOURTH CLAIM FOR RELIEF**

7  (For Unlawful Importation of Goods Bearing Registered United States Trademarks
8          in Violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a))

9      60.    Nautilus specifically realleges and incorporates herein by reference each
10  and every allegation contained in Paragraphs 1 through 59 hereof.

11      61.    Defendants' acts alleged herein constitute the importation of merchandise
12  which bears imitations of the Bowflex Marks including, without limitation, counterfeits
13  of the BOWFLEX, BOWFLEX XTREME, SELECTTECH, and BOWFLEX "B"
14  DESIGN trademarks, without Nautilus's consent, in violation of Section 526(a) of the
15  Tariff Act, 19 U.S.C. § 1526(a).

16      62.    Defendants' use of the infringing marks was willful, intentional, and done
17  with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of
18  the Lanham Act, 15 U.S.C. § 1116(d).

19      63.    Defendants' acts entitle Nautilus to damages for all of Defendants' profits
20  derived from their past unlawful conduct, trebled, to the full extent provided under
21  Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the
22  alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C.
23  § 1117(c).

24      64.    Nautilus has no adequate remedy at law for the foregoing wrongful
25  conduct. Nautilus has been, and absent injunctive relief will continue to be, irreparably
26  harmed by Defendants' actions.

27

28

*THEODORA ORINGHER MILLER & RICHMAN PC*

**FIFTH CLAIM FOR RELIEF**

(For Patent Infringement in Violation of Section 271

of the Patent Act, 35 U.S.C. § 271)

65.   Nautilus specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 64 hereof.

66.   Nautilus is the exclusive owner of the entire right, title, and interest in and to the '791 Patent, including all rights to enforce that patent and to recover for infringement.

67.   Defendants have been and currently are infringing the '791 Patent within this judicial district and elsewhere by importing, offering for sale, and selling exercise equipment incorporating the '791 Patent.

68.   Defendants' infringing exercise equipment was not manufactured or authorized by Nautilus.

69.   The actions complained of infringe the '791 Patent in violation of 35 U.S.C. § 271.

70.   Defendants' acts entitle Nautilus to damages for all of Nautilus's lost profits derived from Defendants' past unlawful conduct, trebled, to the full extent provided under Section 284 of the Patent Act, 35 U.S.C. § 284, and also attorneys' fees under Section 285 of the Patent Act, 35 U.S.C. § 285.

71.   Nautilus has no adequate remedy at law for the foregoing wrongful conduct. Nautilus has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

**SIXTH CLAIM FOR RELIEF**

(For Patent Infringement in Violation of Section 271

of the Patent Act, 35 U.S.C. § 271)

72.   Nautilus specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 71 hereof.

*THEODORA ORINGHER MILLER & RICHMAN PC*

73.     Nautilus is the exclusive owner of the entire right, title, and interest in and to the '678 Patent, including all rights to enforce that patent and to recover for infringement.

74.     Defendants have been and currently are infringing the '678 Patent within this judicial district and elsewhere by importing, offering for sale, and selling exercise equipment incorporating the '678 Patent.

75.     Defendants' infringing exercise equipment was not manufactured or authorized by Nautilus.

76.     The actions complained of infringe the '678 Patent in violation of 35 U.S.C. § 271.

77.     Defendants' acts entitle Nautilus to damages for all of Nautilus's lost profits derived from Defendants' past unlawful conduct, trebled, to the full extent provided under Section 284 of the Patent Act, 35 U.S.C. § 284, and also attorneys' fees under Section 285 of the Patent Act, 35 U.S.C. § 285.

78.     Nautilus has no adequate remedy at law for the foregoing wrongful conduct. Nautilus has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## SEVENTH CLAIM FOR RELIEF

(For Patent Infringement in Violation of Sections 271 and 289

of the Patent Act, 35 U.S.C. §§ 271 and 289)

79.     Nautilus specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 78 hereof.

80.     Nautilus is the exclusive owner of the entire right, title, and interest in and to the '628 Patent, including all rights to enforce that patent and to recover for infringement.

81.     Defendants have been and currently are infringing the '628 Patent within this judicial district and elsewhere by importing, offering for sale, and selling exercise equipment incorporating the '628 Patent.

*THEODORA ORINGHER MILLER & RICHMAN PC*

82.   Defendants' infringing exercise equipment was not manufactured or authorized by Nautilus.

83.   The actions complained of infringe the '628 Patent in violation of 35 U.S.C. §§ 271 and 289.

84.   Defendants' acts entitle Nautilus to damages for all of Nautilus's lost profits derived from Defendants' past unlawful conduct, trebled, to the full extent provided under Section 284 of the Patent Act, 35 U.S.C. § 284, or in the alternative to statutory damages under Section 289 of the Patent Act, 35 U.S.C. § 289, and also attorneys' fees under Section 285 of the Patent Act, 35 U.S.C. § 285.

85.   Nautilus has no adequate remedy at law for the foregoing wrongful conduct. Nautilus has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## EIGHTH CLAIM FOR RELIEF

(For Patent Infringement in Violation of Sections 271 and 289

of the Patent Act, 35 U.S.C. §§ 271 and 289)

86.   Nautilus specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 85 hereof.

87.   Nautilus is the exclusive owner of the entire right, title, and interest in and to the '405 Patent, including all rights to enforce that patent and to recover for infringement.

88.   Defendants have been and currently are infringing the '405 Patent within this judicial district and elsewhere by importing, offering for sale, and selling exercise equipment incorporating the '405 Patent.

89.   Defendants' infringing exercise equipment was not manufactured or authorized by Nautilus.

90.   The actions complained of infringe the '405 Patent in violation of 35 U.S.C. §§ 271 and 289.

*THEODORA ORINGHER MILLER & RICHMAN PC*

91.     Defendants' acts entitle Nautilus to damages for all of Nautilus's lost profits derived from Defendants' past unlawful conduct, trebled, to the full extent provided under Section 284 of the Patent Act, 35 U.S.C. § 284, or in the alternative to statutory damages under Section 289 of the Patent Act, 35 U.S.C. § 289, and also attorneys' fees under Section 285 of the Patent Act, 35 U.S.C. § 285.

92.     Nautilus has no adequate remedy at law for the foregoing wrongful conduct. Nautilus has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## NINTH CLAIM FOR RELIEF

(For Patent Infringement in Violation of Sections 271 and 289

of the Patent Act, 35 U.S.C. §§ 271 and 289)

93.     Nautilus specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 92 hereof.

94.     Nautilus is the exclusive owner of the entire right, title, and interest in and to the '894 Patent, including all rights to enforce that patent and to recover for infringement.

95.     Defendants have been and currently are infringing the '894 Patent within this judicial district and elsewhere by importing, offering for sale, and selling exercise equipment incorporating the '894 Patent.

96.     Defendants' infringing exercise equipment was not manufactured or authorized by Nautilus.

97.     The actions complained of infringe the '894 Patent in violation of 35 U.S.C. §§ 271 and 289.

98.     Defendants' acts entitle Nautilus to damages for all of Nautilus's lost profits derived from Defendants' past unlawful conduct, trebled, to the full extent provided under Section 284 of the Patent Act, 35 U.S.C. § 284, or in the alternative to statutory damages under Section 289 of the Patent Act, 35 U.S.C. § 289, and also attorneys' fees under Section 285 of the Patent Act, 35 U.S.C. § 285.

*THEODORA ORINGHER MILLER & RICHMAN PC*

99.   Nautilus has no adequate remedy at law for the foregoing wrongful conduct. Nautilus has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## TENTH CLAIM FOR RELIEF

(For Violation of the California Unfair Business Practices Act,

Cal. Bus & Prof. Code § 17200 *et seq.*)

100.   Nautilus specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 99 hereof.

101.   Defendants' conduct, as alleged above, constitutes unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.*  These acts of Defendants are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Nautilus, or as to the origin, sponsorship, or approval of counterfeit exercise equipment by Nautilus.

102.   Defendants' acts entitle Nautilus to general and special damages for all of Defendants' profits derived from their past unlawful conduct to the full extent provided for by Cal. Bus. & Prof. Code § 17200 *et seq.*

103.   Nautilus has no adequate remedy at law for the foregoing wrongful conduct. Nautilus has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## ELEVENTH CLAIM FOR RELIEF

(For Unfair Competition in Violation of California State Common Law)

104.   Nautilus specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 103 hereof.

105.   Defendants' conduct, as alleged above, constitutes unfair competition under California State common law.  Defendants' acts have resulted in the "passing off" of Defendants' products as those of Nautilus, or as somehow related or associated with, or sponsored or endorsed by Nautilus.

*THEODORA ORINGHER MILLER & RICHMAN PC*

106.   Defendants' acts entitle Nautilus to general and special damages for all of Defendants' profits derived from their past unlawful conduct to the full extent provided for by the common law of the State of California.

107.   Nautilus has no adequate remedy at law for the foregoing wrongful conduct. Nautilus has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## TWELFTH CLAIM FOR RELIEF

### (For Civil Conspiracy)

108.   Nautilus specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 107 hereof.

109.   Nautilus is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants was the agent and employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency.

110.   On or about at least June 30, 2009, Defendants knowingly and willfully conspired and agreed among themselves to, without Nautilus's consent, import, distribute, sell, and/or offer for sale commercial quantities of counterfeit exercise equipment that bears spurious marks, appearances, and features that are either identical to or substantially indistinguishable from the Bowflex Marks and Bowflex Trade Dress, and that embody and infringe one or more of the inventions and designs claimed in the Bowflex Patents and are falsely marked with the Bowflex Patents.

111.   Defendants did the acts and things herein alleged pursuant to, and furtherance of, the conspiracy and above-alleged agreement.

112.   The last overt act currently known to Nautilus in pursuance of the above-described conspiracy occurred in June 2010 when Defendants sold counterfeit BOWFLEX brand exercise equipment to Nautilus's private investigators.

113.   As a proximate result of the wrongful acts herein alleged, Nautilus has been generally damaged in an amount to be proved at trial.

*THEODORA ORINGHER MILLER & RICHMAN PC*

114.   Defendants performed the foregoing acts, conduct, and omissions intentionally, maliciously, oppressively and fraudulently with the intent and design to injure Nautilus's interests.  By reason of this conduct, and pursuant to Cal. Civ. Code. § 3294(c), Nautilus is entitled to recover punitive damages from Defendants in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

115.   Nautilus has no adequate remedy at law for the foregoing wrongful conduct.  Nautilus has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## PRAYER

WHEREFORE, Plaintiff Nautilus prays for judgment as follows:

A.     For judgment that:

(i)     Defendants have violated Section 32 of the Lanham Act, 15 U.S.C. § 1114;

(ii)    Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(iii)   Defendants have violated Section 42 of the Lanham Act, 15 U.S.C. § 1124;

(iv)    Defendants have violated Section 526 of the Tariff Act, 19 U.S.C. § 1526(a);

(v)     Defendants' violations of Sections 32, 43(a), and 42 of the Lanham Act and Section 526 of the Tariff Act were willful, intentional, and done with knowledge that the infringing marks were counterfeit;

(vi)    Defendants have violated Sections 271 and 289 of the Patent Act, 35 U.S.C. §§ 271, 289;

(vii)   Defendants' acts of patent infringement constitute an exceptional case under Section 285 of the Patent Act, 35 U.S.C. § 285;

THEODORA ORINGHER MILLER & RICHMAN PC

(viii)   Defendants have violated the California Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200 *et seq*.;

(ix)   Defendants have engaged in unfair competition in violation of the common law of the State of California; and

(x)   Defendants' acts of civil conspiracy were done intentionally, maliciously, oppressively and fraudulently with the intent and design to injure Nautilus's interests and thus entitle Nautilus to punitive damages pursuant to Cal. Civ. Code. § 3294(c).

B.   For an injunction restraining and enjoining Defendants and their divisions, subsidiaries, officers, agents, employees, attorneys, and all those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from (i) purchasing, importing, distributing, selling, or offering for sale, counterfeit BOWFLEX brand exercise equipment, or assisting, aiding or abetting any other person or entity in doing so; (ii) using the Bowflex Marks or trademarks confusingly similar therewith, or the Bowflex Trade Dress or trade dress confusingly similar therewith, or assisting, aiding or abetting any other person or entity in doing so; or (iii) importing, distributing, selling, or offering for sale, exercise equipment infringing the Bowflex Patents, or assisting, aiding or abetting any other person or entity in doing so.

C.   For an order requiring Defendants, within thirty (30) days after entry of judgment, to deliver up to counsel for Nautilus any and all exercise equipment in their possession, custody, and/or control that infringes the Bowflex Marks, Bowflex Trade Dress, and/or the Bowflex Patents.

D.   For an order requiring Defendants, within thirty (30) days after entry of judgment, to recall all goods sold or distributed by them that infringe the Bowflex Marks, Bowflex Trade Dress, and/or the Bowflex Patents.

1         E.     For an order requiring Defendants, within thirty (30) days after entry
2 of judgment, to deliver up to counsel for Nautilus any and all documents in their
3 possession, custody, and/or control that reflect or relate to the purchase, importation,
4 storage, shipping, or sale of exercise equipment that infringes the Bowflex Marks,
5 Bowflex Trade Dress, and/or the Bowflex Patents.

6         F.     For an order requiring Defendants, within thirty (30) days after entry
7 of judgment, to prepare and deliver to counsel for Nautilus a complete list of entities
8 from whom Defendants purchased, and to whom they sold, exercise equipment that
9 infringes the Bowflex Marks, Bowflex Trade Dress, and/or the Bowflex Patents.

10         G.    For an order requiring Defendants, within thirty (30) days after entry
11 of judgment, to file with the Court and serve upon counsel for Nautilus a written report,
12 under oath, setting forth in detail the manner in which Defendants have complied with
13 paragraphs B through F above.

14         H.     For an order (i) requiring Defendants to account for and pay over to
15 Nautilus all of Defendants' profits derived from their unlawful conduct to the full
16 extent provided for by Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a); (ii)
17 trebling the amount of damages Defendants are required to pay over to Nautilus (*i.e.,*
18 Defendants' profits derived from their unlawful conduct), and awarding Nautilus its
19 costs, attorneys' fees, and prejudgment interest to the full extent provided for by
20 Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b); (iii) as an alternative to
21 awarding Defendants' profits, trebled, under Sections 35(a) and 35(b), awarding
22 Nautilus statutory damages as provided for by Section 35(c) of the Lanham Act, 15
23 U.S.C. § 1117(c); (iv) requiring Defendants to account for and pay over to Nautilus
24 cumulative damages sustained by Nautilus by reason of Defendants' unlawful acts of
25 patent infringement, that the amount of recovery be increased as provided by law, up to
26 three times, and that interest and costs be awarded to Nautilus as provided for by
27 Section 284 of the Patent Act, 35 U.S.C. § 284, or in the alternative to statutory
28 damages under Section 289 of the Patent Act, 35 U.S.C. § 289, and attorneys' fees as

*THEODORA ORINGHER MILLER & RICHMAN PC*

*FIRST AMENDED COMPLAINT*

1  provided for by Section 285 of the Patent Act, 35 U.S.C. § 285; and (v) awarding

2  Nautilus general, special, and punitive damages to the full extent provided for by Cal.

3  Bus. & Prof. Code §17200 *et seq.*, Cal. Civ. Code. § 3294(c), and the common law of

4  the State of California.

5        I.    For costs of suit, attorneys' fees, and such other and further relief as

6  the Court shall deem appropriate.

7  DATED: August 20, 2010    THEODORA ORINGHER MILLER & RICHMAN PC

8

9        By: _Jerry Friedberg_

10            Jerome H. Friedberg

11            Attorneys for NAUTILUS, INC., a Washington corporation

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*THEODORA ORINGHER MILLER & RICHMAN PC*

# EXHIBIT A

Int. Cl.: 28
Prior U.S. Cl.: 22
United States Patent and Trademark Office

Reg. No. 1,416,128
Registered Nov. 4, 1986
OG Date Jan. 10, 2006

Amended

## TRADEMARK
## PRINCIPAL REGISTER

## BOWFLEX

NAUTILUS, INC. (WASHINGTON COR-
PORATION)
16400 SE NAUTILUS WAY
VANCOUVER, WA 98683

FOR: EXERCISE MACHINES, IN
CLASS 28 (U.S. CL. 22).
FIRST USE 4-2-1986; IN COMMERCE
4-2-1986.
SER. NO. 73-595,861, FILED 4-28-1986.



*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on Jan. 10, 2006.*

DIRECTOR OF THE U.S. PATENT AND TRADEMARK OFFICE

Exhibit A
Page 26 of 155

# EXHIBIT  B

# The United States of America

## CERTIFICATE OF REGISTRATION

### PRINCIPAL REGISTER

*The Mark shown in this certificate has been registered in the United States Patent and Trademark Office to the named registrant.*

*The records of the United States Patent and Trademark Office show that an application for registration of the Mark shown in this Certificate was filed in the Office; that the application was examined and determined to be in compliance with the requirements of the law and with the regulations prescribed by the Director of the United States Patent and Trademark Office; and that the Applicant is entitled to registration of the Mark under the Trademark Act of 1946, as Amended.*

*A copy of the Mark and pertinent data from the application are part of this certificate.*

*To avoid CANCELLATION of the registration, the owner of the registration must submit a declaration of continued use or excusable non-use between the fifth and sixth years after the registration date. (See next page for more information.) Assuming such a declaration is properly filed, the registration will remain in force for ten (10) years, unless terminated by an order of the Commissioner for Trademarks or a federal court. (See next page for information on maintenance requirements for successive ten-year periods.)*



*Director of the United States Patent and Trademark Office*

Int. Cl.: 28

Prior U.S. Cls.: 22, 23, 38 and 50

Reg. No. 3,089,399

**United States Patent and Trademark Office**

Registered May 9, 2006

## TRADEMARK
### PRINCIPAL REGISTER

## BOWFLEX XTREME

NAUTILUS, INC. (WASHINGTON CORPORA-
TION)
16400 SE NAUTILUS WAY
VANCOUVER, WA 98683

FOR: MANUALLY OPERATED EXERCISE
EQUIPMENT, IN CLASS 28 (U.S. CLS. 22, 23, 38
AND 50).

FIRST USE 6-30-2003; IN COMMERCE 6-30-2003.

OWNER OF U.S. REG. NOS. 1,416,128, 2,379,854
AND OTHERS.

SER. NO. 78-281,058, FILED 7-30-2003.

EUGENIA MARTIN, EXAMINING ATTORNEY

# EXHIBIT C

# The United States of America

## CERTIFICATE OF REGISTRATION
### PRINCIPAL REGISTER

*The Mark shown in this certificate has been registered in the United States Patent and Trademark Office to the named registrant.*

*The records of the United States Patent and Trademark Office show that an application for registration of the Mark shown in this Certificate was filed in the Office; that the application was examined and determined to be in compliance with the requirements of the law and with the regulations prescribed by the Director of the United States Patent and Trademark Office; and that the Applicant is entitled to registration of the Mark under the Trademark Act of 1946, as Amended.*

*A copy of the Mark and pertinent data from the application are part of this certificate.*

*To avoid CANCELLATION of the registration, the owner of the registration must submit a declaration of continued use or excusable non-use between the fifth and sixth years after the registration date. (See next page for more information.) Assuming such a declaration is properly filed, the registration will remain in force for ten (10) years, unless terminated by an order of the Commissioner for Trademarks or a federal court. (See next page for information on maintenance requirements for successive ten-year periods.)*



*Director of the United States Patent and Trademark Office*

Exhibit C
Page 29 of 155

Int. Cl.: 28

Prior U.S. Cls.: 22, 23, 38, and 50

**United States Patent and Trademark Office**

Reg. No. 3,099,981

Registered June 6, 2006

## TRADEMARK
**PRINCIPAL REGISTER**

# SELECTTECH

NAUTILUS, INC. (WASHINGTON CORPORA-
TION)
16400 SE NAUTILUS WAY
VANCOUVER, WA 98683

FOR: MANUALLY OPERATED EXERCISE
EQUIPMENT, NAMELY DUMBBELLS AND ACCES-
SORIES SOLD THEREWITH NAMELY, WEIGHTS,
STANDS, EXTENSION BARS AND MATS, IN CLASS
28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 8-5-2003; IN COMMERCE 8-20-2003.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

SER. NO. 78-400,336, FILED 4-12-2004.

CURTIS FRENCH, EXAMINING ATTORNEY

Exhibit C

Page 30 of 155

# EXHIBIT  D

# The United States of America

## CERTIFICATE OF REGISTRATION

### PRINCIPAL REGISTER

*The Mark shown in this certificate has been registered in the United States Patent and Trademark Office to the named registrant.*

*The records of the United States Patent and Trademark Office show that an application for registration of the Mark shown in this Certificate was filed in the Office; that the application was examined and determined to be in compliance with the requirements of the law and with the regulations prescribed by the Director of the United States Patent and Trademark Office; and that the Applicant is entitled to registration of the Mark under the Trademark Act of 1946, as Amended.*

*A copy of the Mark and pertinent data from the application are part of this certificate.*

***To avoid CANCELLATION of the registration, the owner of the registration must submit a declaration of continued use or excusable non-use between the fifth and sixth years after the registration date. (See next page for more information.) Assuming such a declaration is properly filed, the registration will remain in force for ten (10) years, unless terminated by an order of the Commissioner for Trademarks or a federal court. (See next page for information on maintenance requirements for successive ten-year periods.)***



*Director of the United States Patent and Trademark Office*

Exhibit D
Page 31 of 155

Int. Cl.: 28

Prior U.S. Cls.: 22, 23, 38, and 50

## United States Patent and Trademark Office

Reg. No. 3,127,405
Registered Aug. 8, 2006

## TRADEMARK
### PRINCIPAL REGISTER



NAUTILUS, INC. (WASHINGTON CORPORA-
TION)
16400 SE NAUTILUS WAY
VANCOUVER, WA 98683

FOR: EXERCISE EQUIPMENT, NAMELY, MANUALLY OPERATED AND ELECTRONICALLY OPERATED EXERCISE EQUIPMENT; EXERCISE MACHINES, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 10-4-2004; IN COMMERCE 10-4-2004.

THE MARK CONSISTS OF A STYLIZED "B" WITHIN AN OVAL DESIGN.

SN 76-609,914, FILED 9-2-2004.

WILLIAM BRECKENFELD, EXAMINING ATTOR-
NEY

# EXHIBIT E

**Effective Date: 7/29/2009**
**Expiration Date: 11/4/2016**

## Trademark
**Customs Recordation Number: TMK 09-00700**

BACK

| | |
|---|---|
| **Title** | BOWFLEX |
| **Product** | IC 028. EXERCISE MACHINES. |
| **Description** | THE WORD MARK "BOWFLEX" |
| **Owner Name** | NAUTILUS, INC. |
| **Gray Market Importations Restricted** | NO |
| **U.S. Patent and Trademark Office Registration Number** | 1416128 |
| **Firm** | REPRESENTATIVE |
| **Contact Name** | REBEKKA MOEN 16400 SE NAUTILUS DRIVE VANCOUVER, WASHINGTON 98683 |
| **Phone Number** | (360) 859-2662 |

Exhibit E

Page 33 of 155

# EXHIBIT F

**Effective Date:** 7/29/2009
**Expiration Date:** 5/9/2016

## Trademark
### Customs Recordation Number: TMK 09-00701

<span style="border:1px solid black; padding:2px;">◄ BACK</span>

| | |
|---|---|
| Title | BOWFLEX XTREME |
| Product | IC 028. MANUALLY OPERATED EXERCISE EQUIPMENT. |
| Description | THE WORD MARK "BOWFLEX XTREME" |
| Owner Name | NAUTILUS, INC |
| Gray Market Importations Restricted | NO |
| U.S. Patent and Trademark Office Registration Number | 3089399 |
| Firm | REPRESENTATIVE |
| Contact Name | REBEKKA MOEN
16400 SE NAUTILUS DRIVE
VANCOUVER, WASHINGTON 98683 |
| Phone Number | (360) 859-2662 |

Exhibit F

Page 34 of 155

# EXHIBIT  G

**Effective Date: 7/29/2009**
**Expiration Date: 6/6/2016**

# Trademark
## Customs Recordation Number: TMK 09-00698

<span style="border:1px solid #000; padding:2px;">BACK</span>

| | |
|---|---|
| Title | SELECTTECH |
| Product | IC 028. MANUALLY OPERATED EXERCISE EQUIPMENT, NAMELY DUMBBELLS AND ACCESSORIES SOLD THEREWITH NAMELY, WEIGHTS, STANDS, EXTENSION BARS AND MATS. |
| Description | THE WORD MARK "SELECTTECH" |
| Owner Name | NAUTILUS, INC. |
| Gray Market Importations Restricted | NO |
| U.S. Patent and Trademark Office Registration Number | 3099981 |
| Firm | REPRESENTATIVE |
| Contact Name | REBEKKA MOEN 16400 SE NAUTILUS DRIVE VANCOUVER, WASHINGTON 98683 |
| Phone Number | (360) 859-2662 |

Exhibit G

Page 35 of 155

# EXHIBIT H

**Effective Date: 7/29/2009**
**Expiration Date: 8/8/2016**

# Trademark
## Customs Recordation Number: TMK 09-00699

BACK

| | |
|---|---|
| **Title** | B AND DESIGN |
| **Product** | IC 028. EXERCISE EQUIPMENT, NAMELY, MANUALLY OPERATED AND ELECTRONICALLY OPERATED EXERCISE EQUIPMENT; EXERCISE MACHINES. |
| **Description** | WORD MARK AND DESIGN, THE MARK CONSISTS OF A STYLIZED "B" WITHIN |
| **Owner Name** | NAUTILUS, INC |
| **Gray Market Importations Restricted** | NO |
| **U.S. Patent and Trademark Office Registration Number** | 3127405 |
| **Firm** | REPRESENTATIVE |
| **Contact Name** | REBEKKA MOEN<br>16400 SE NAUTILUS DRIVE<br>VANCOUVER, WASHINGTON 98683 |
| **Phone Number** | (360) 859-2662 |

Exhibit H

Page 36 of 155

# EXHIBIT  I



Exhibit I
Page 37 of 155



Exhibit I

Page 38 of 155



Exhibit I

Page 39 of 155

# EXHIBIT  J

US007077791B2

(12) **United States Patent**
Krull

(10) Patent No.: **US 7,077,791 B2**
(45) Date of Patent: *Jul. 18, 2006

(54) **WEIGHT SELECTION METHODS AND APPARATUS**

(75) Inventor: **Mark A. Krull**, Bend, OR (US)

(73) Assignee: **Nautilus, Inc.**, Vancouver, WA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 428 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **10/127,049**

(22) Filed: **Apr. 18, 2002**

(65) **Prior Publication Data**

US 2003/0199368 A1    Oct. 23, 2003

(51) **Int. Cl.**
*A63B 21/075* (2006.01)

(52) **U.S. Cl.** .......................... 482/108; 482/98; 482/107

(58) **Field of Classification Search** ........ 482/106–108, 482/93, 94, 98
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 772,906 A | 10/1904 | Reach | |
| 848,272 A | 3/1907 | Thornley | |
| 1,053,109 A | 2/1913 | Reach | |
| 1,422,888 A | 7/1922 | Reeves et al. | |
| 1,672,944 A | 6/1928 | Jowett | |
| 1,779,594 A | 10/1930 | Hall | |
| 1,917,566 A | 7/1933 | Wood | |
| 3,647,209 A | 3/1972 | La Lanne | |
| 3,758,109 A | 9/1973 | Bender | |
| 3,771,785 A | 11/1973 | Speyer | |
| 3,825,253 A | 7/1974 | Speyer | |

| | | | |
|---|---|---|---|
| 3,912,261 A | 10/1975 | Lambert, Sr. | |
| 3,913,908 A | 10/1975 | Speyer | |
| D244,628 S | 6/1977 | Wright | |
| 4,029,312 A | 6/1977 | Wright | |
| 4,076,236 A | 2/1978 | Ionel | |
| 4,349,192 A | 9/1982 | Lambert, Jr. et al. | |
| RE31,113 E | 12/1982 | Coker et al. | |
| 4,411,424 A | 10/1983 | Barnett | |
| 4,453,710 A | 6/1984 | Plötz | |
| 4,529,197 A | 7/1985 | Gogarty | |
| 4,529,198 A * | 7/1985 | Hettick, Jr. ................. 482/104 |
| 4,538,805 A | 9/1985 | Parviainen | |
| 4,540,171 A | 9/1985 | Clark et al. | |
| 4,546,971 A | 10/1985 | Raasoch | |

(Continued)

FOREIGN PATENT DOCUMENTS

CH       384485       11/1964

(Continued)

OTHER PUBLICATIONS

UK fitness supplies.co.uk, located at http://www.ukfitness-supplies.co.uk, 3 pages (First publ. date unknown; website pages printed on Aug. 4, 2003).

*Primary Examiner*—Gregory L. Huson
*Assistant Examiner*—Fenn C. Mathew
(74) *Attorney, Agent, or Firm*—Dorsey & Whitney LLP

(57)            **ABSTRACT**

An exercise dumbbell has at least one weight selector that is rotatable into engagement with various combination of weights at opposite ends of the handle. On a first embodiment, first and second weight selectors are rotatably mounted on opposite ends of a bar for independent rotation relative to the handle. On a second embodiment, first and second weight selectors are keyed to a common bar and rotated together therewith relative to the handle.

**21 Claims, 13 Drawing Sheets**



**US 7,077,791 B2**
Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,566,690 A | 1/1986 | Schook | |
| 4,568,078 A | 2/1986 | Weiss | |
| 4,575,074 A | 3/1986 | Damratoski | |
| 4,601,466 A | 7/1986 | Lais | |
| 4,624,457 A | 11/1986 | Silberman et al. | |
| 4,627,615 A | 12/1986 | Nurkowski | |
| 4,627,618 A | 12/1986 | Schwarz | |
| 4,651,988 A | 3/1987 | Sobel | |
| 4,712,793 A | 12/1987 | Harwick et al. | |
| 4,730,828 A | 3/1988 | Lane | |
| 4,743,017 A | 5/1988 | Jaeger | |
| 4,768,780 A | 9/1988 | Hayes | |
| 4,787,629 A | 11/1988 | DeMyer | |
| 4,809,973 A | 3/1989 | Johns | |
| 4,822,034 A * | 4/1989 | Shields | 482/106 |
| 4,834,365 A | 5/1989 | Jones | |
| 4,878,662 A | 11/1989 | Chern | |
| 4,878,663 A | 11/1989 | Luquette | |
| 4,880,229 A | 11/1989 | Broussard | |
| 4,900,016 A | 2/1990 | Caruthers | |
| 4,900,018 A | 2/1990 | Ish, III et al. | |
| D307,168 S | 4/1990 | Vodhanel | |
| 4,913,422 A | 4/1990 | Elmore et al. | |
| 4,948,123 A | 8/1990 | Schook | |
| 4,971,305 A | 11/1990 | Rennex | |
| 4,982,957 A | 1/1991 | Shields | |
| D315,003 S | 2/1991 | Huang | |
| 5,000,446 A | 3/1991 | Sarno | |
| 5,037,089 A | 8/1991 | Spagnuolo et al. | |
| 5,040,787 A | 8/1991 | Brotman | |
| D321,230 S | 10/1991 | Leonesio | |
| 5,102,124 A | 4/1992 | Diodati | |
| 5,123,885 A | 6/1992 | Shields | |
| 5,131,898 A | 7/1992 | Panagos | |
| 5,135,453 A | 8/1992 | Sollenberger | |
| D329,563 S | 9/1992 | Rasmussen | |
| 5,171,199 A | 12/1992 | Panagos | |
| 5,221,244 A | 6/1993 | Doss | |
| 5,263,915 A | 11/1993 | Habing | |
| 5,284,463 A | 2/1994 | Shields | |
| 5,306,221 A | 4/1994 | Itaru | |
| 5,344,375 A | 9/1994 | Cooper | |
| 5,374,229 A | 12/1994 | Sencil | |
| 5,407,413 A | 4/1995 | Kupferman | |
| D359,778 S | 6/1995 | Towley, III et al. | |
| 5,433,687 A | 7/1995 | Hinzman et al. | |
| 5,435,800 A | 7/1995 | Nelson | |
| D362,776 S | 10/1995 | Thorn | |
| 5,484,367 A | 1/1996 | Martinez | |
| 5,607,379 A | 3/1997 | Scott | |
| 5,628,716 A | 5/1997 | Brice | |
| 5,630,776 A | 5/1997 | Yang | |
| 5,637,064 A | 6/1997 | Olson et al. | |
| 5,669,861 A | 9/1997 | Toups | |
| 5,749,814 A | 5/1998 | Chen | |
| 5,769,762 A | 6/1998 | Towley, III et al. | |
| 5,776,040 A | 7/1998 | Webb et al. | |
| 5,779,604 A | 7/1998 | Towley, III et al. | |
| 5,839,997 A | 11/1998 | Roth et al. | |
| 5,853,355 A | 12/1998 | Standish | |
| 5,876,313 A | 3/1999 | Krull | |
| 5,879,274 A | 3/1999 | Mattox | |
| 5,971,899 A | 10/1999 | Towley, III et al. | |
| 6,033,350 A | 3/2000 | Krull | |
| 6,039,678 A | 3/2000 | Dawson | |
| D422,654 S | 4/2000 | Chen | |
| 6,083,144 A | 7/2000 | Towley, III et al. | |
| 6,099,442 A | 8/2000 | Krull | |

| | | | |
|---|---|---|---|
| 6,123,651 A | 9/2000 | Ellenburg | |
| 6,149,558 A | 11/2000 | Chen | |
| 6,186,927 B1 | 2/2001 | Krull | |
| 6,186,928 B1 | 2/2001 | Chen | |
| 6,196,952 B1 * | 3/2001 | Chen | 482/107 |
| 6,228,003 B1 * | 5/2001 | Hald et al. | 482/107 |
| 6,261,022 B1 | 7/2001 | Dalebout et al. | |
| 6,261,211 B1 | 7/2001 | Suarez et al. | |
| 6,322,481 B1 | 11/2001 | Krull | |
| 6,328,678 B1 | 12/2001 | Romero | |
| 6,350,221 B1 | 2/2002 | Krull | |
| 6,402,666 B1 | 6/2002 | Krull | |
| 6,416,446 B1 | 7/2002 | Krull | |
| 6,422,979 B1 * | 7/2002 | Krull | 482/98 |
| 6,461,282 B1 | 10/2002 | Fenelon | |
| 6,500,101 B1 | 12/2002 | Chen | |
| D468,946 S | 1/2003 | Harms et al. | |
| D469,294 S | 1/2003 | Harms et al. | |
| 6,540,650 B1 | 4/2003 | Krull | |
| 6,582,345 B1 | 6/2003 | Roy | |
| 6,629,910 B1 | 10/2003 | Krull | |
| 6,656,093 B1 | 12/2003 | Chen | |
| 6,669,606 B1 | 12/2003 | Krull | |
| 6,679,816 B1 | 1/2004 | Krull | |
| 6,682,464 B1 | 1/2004 | Shifferaw | |
| 6,719,672 B1 | 4/2004 | Ellis et al. | |
| 6,719,674 B1 | 4/2004 | Krull | |
| 6,733,424 B1 | 5/2004 | Krull | |
| 6,746,381 B1 | 6/2004 | Krull | |
| 6,749,547 B1 * | 6/2004 | Krull | 482/106 |
| D498,272 S | 11/2004 | Sanford-Schwentke et al. | |
| D500,820 S | 1/2005 | Krull | |
| 6,855,097 B1 | 2/2005 | Krull | |
| 6,872,173 B1 | 3/2005 | Krull | |
| 6,902,516 B1 | 6/2005 | Krull | |
| D508,628 S | 8/2005 | Crawford et al. | |
| 2002/0107118 A1 | 8/2002 | Shifferaw | |
| 2002/0115539 A1 | 8/2002 | Krull | |
| 2002/0183174 A1 | 12/2002 | Chen | |
| 2003/0148862 A1 | 8/2003 | Chen et al. | |
| 2003/0153439 A1 | 8/2003 | Krull | |
| 2003/0199369 A1 | 10/2003 | Krull | |
| 2004/0005968 A1 | 1/2004 | Crawford et al. | |
| 2004/0005969 A1 | 1/2004 | Chen | |
| 2004/0023765 A1 | 2/2004 | Krull | |
| 2004/0072661 A1 | 4/2004 | Krull | |
| 2004/0138031 A1 | 7/2004 | Krull | |
| 2005/0079961 A1 | 4/2005 | Dalebout et al. | |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 177643 | 4/1986 |
| FR | 637365 | 4/1928 |
| FR | 1468902 | 4/1967 |
| FR | 2452296 | 10/1980 |
| FR | 2613237 | 10/1988 |
| JP | 10118222 | 5/1998 |
| SU | 1258447 | 9/1986 |
| SU | 1367987 | 1/1988 |
| SU | 1389789 A2 | 4/1988 |
| SU | 1643024 | 4/1991 |
| SU | 1659073 | 6/1991 |
| SU | 1687271 | 10/1991 |
| SU | 1780780 | 12/1992 |
| WO | 03/063969 A2 | 8/2003 |
| WO | 03/063969 A3 | 8/2003 |
| WO | 03/089070 A1 | 10/2003 |

* cited by examiner



Fig. 1

Case 2:10-cv-00624-MMM-MAN   Document 43   Filed 11/05/10   Page 55 of 173   Page ID #:1034



Fig. 2



Fig. 3



Fig. 6



Fig. 5

Fig. 4



Fig. 7



Fig. 10



Fig. 8



Fig. 11



Fig. 9



Fig. 12

Exhibit J
Page 45 of 155

U.S. Patent     Jul. 18, 2006     Sheet 5 of 13     US 7,077,791 B2









Fig. 28





Fig. 34

Fig. 35

Fig. 36

Fig. 37

Fig. 38

Fig. 39

Exhibit J
Page 51 of 155

Case 2:10-cv-00624-MMM-MAN   Document 43   Filed 11/05/10   Page 64 of 173   Page ID #:1043





Fig. 46

Fig. 44

Fig. 45



Fig.47

770

777

774

773

771



771

777

770

Fig.48

778

773

770

778

777

771

Fig.49

772

US 7,077,791 B2

**1**

## WEIGHT SELECTION METHODS AND APPARATUS

### FIELD OF THE INVENTION

The present invention relates to exercise equipment and more particularly, to weight selection methods and apparatus for free weights such as dumbbells and barbells.

### BACKGROUND OF THE INVENTION

Various weight selection methods and apparatus have been developed to provide adjustable resistance to exercise. With respect to free weights, weight plates are typically mounted on opposite ends of a bar. In relatively advanced systems, the bar or handle assembly is stored in proximity to the weight plates, and at least one selection mechanism is provided to connect a desired amount of mass to the bar.

Some examples of patented barbell/dumbbell improvements and/or features are disclosed in U.S. Pat. No. 4,529,198 to Hettick, Jr. (discloses a barbell assembly having opposite end weights that are maintained in alignment on respective storage members and selectively connected to a handle by means of axially movable springs); U.S. Pat. No. 4,822,034 to Shields (discloses both barbell and dumbbell assemblies having opposite end weights that are maintained in alignment on a shelf and selectively connected to a handle by means of latches on the weights); U.S. Pat. No. 5,284,463 to Shields (discloses a dumbbell assembly having opposite end weights that are maintained in alignment on a base and selectively connected to a handle by means of cam driven pins on the weights); U.S. Pat. No. 5,637,064 to Olson et al. (discloses a dumbbell assembly having a plurality of interconnected opposite end weights that are stored in nested relationship to one another and selectively connected to a handle by means of a U-shaped pin); U.S. Pat. No. 5,769,762 to Towley, III et al. (discloses a dumbbell assembly having a plurality of interconnected opposite end weights that are stored in nested relationship to one another and selectively connected to a handle by various means); U.S. Pat. No. 5,839,997 to Roth et al. (discloses a dumbbell assembly having opposite end weights that are maintained in alignment on a base and selectively connected to a handle by means of eccentric cams on a rotating selector rod); and U.S. Pat. No. 6,033,350 to Krull (discloses a dumbbell assembly having opposite end weights that are maintained in alignment on a base and selectively connected to a handle by means of respective first and second selector rods that move axially in opposite directions). Despite these advances and others in the field of weight selection, room for improvement and continued innovation remains.

### SUMMARY OF THE INVENTION

The present invention provides weight selectors that occupy spaces between adjacent weights and rotate through a range of orientations to alternatively engage and disengage various combinations of the weights. Each weight selector is configured to engage any combination of at least two weights. Many features and advantages of the present invention will become apparent from the more detailed description that follows.

**2**

### BRIEF DESCRIPTION OF THE FIGURES OF THE DRAWING

With reference to the Figures of the Drawing, wherein like numerals represent like parts and assemblies throughout the several views,

FIG. 1 is a side view of an exercise dumbbell constructed according to the principles of the present invention;

FIG. 2 is a partially sectioned side view of a weight base and a plurality of weight plates suitable for use with the dumbbell of FIG. 1;

FIG. 3 is a sectioned end view of the weight base and weights of FIG. 2;

FIG. 4 is an end view of the weight plates of FIG. 3 without the weight base;

FIG. 5 is a side view of the weight plates of FIG. 4;

FIG. 6 is a top view of the weight plates of FIG. 4;

FIG. 7 is an end view of a weight engagement member on the dumbbell of FIG. 1;

FIG. 8 is a side view of the weight engagement member of FIG. 7;

FIG. 9 is an opposite end view of the weight engagement member of FIG. 7;

FIG. 10 is an end view of a weight indicator on the dumbbell of FIG. 1;

FIG. 11 is a side view of the weight indicator of FIG. 10;

FIG. 12 is an opposite end view of the weight indicator of FIG. 10;

FIG. 13 is an exploded end view of the weight engagement member of FIG. 7, the weight indicator of FIG. 10, and two additional weight engagement members, as they occupy a first orientation on the dumbbell of FIG. 1;

FIG. 14 is an exploded view of the weight engagement members and weight indicator of FIG. 13, as they occupy a second orientation on the dumbbell of FIG. 1;

FIG. 15 is an exploded view of the weight engagement members and weight indicator of FIG. 13, as they occupy a third orientation on the dumbbell of FIG. 1;

FIG. 16 is an exploded view of the weight engagement members and weight indicator of FIG. 13, as they occupy a fourth orientation on the dumbbell of FIG. 1;

FIG. 17 is an exploded view of the weight engagement members and weight indicator of FIG. 13, as they occupy a fifth orientation on the dumbbell of FIG. 1;

FIG. 18 is a side view of a bracket on the dumbbell of FIG. 1;

FIG. 19 is an inside end view of the bracket of FIG. 18;

FIG. 20 is an outside end view of the bracket of FIG. 18;

FIG. 21 is a top view of the bracket of FIG. 18;

FIG. 22 is a side view of a bar on the dumbbell of FIG. 1;

FIG. 23 is an end view of the bar of FIG. 22;

FIG. 24 is a top view of the bar of FIG. 22;

FIG. 25 is a side view of a handle on the dumbbell of FIG. 1;

FIG. 26 is an end view of the handle of FIG. 25;

FIG. 27 is an end view of a fastener on the dumbbell of FIG. 1;

FIG. 28 is a side view of another exercise dumbbell constructed according to the principles of the present invention;

FIG. 29 is partially sectioned side view of one end of the dumbbell of FIG. 28;

FIG. 30 is an end view of a knob on the dumbbell of FIG. 28;

FIG. 31 is an opposite side view of the knob of FIG. 30;

US 7,077,791 B2

3

FIG. 32 is a side view of one end of a shaft on the dumbbell of FIG. 28;

FIG. 33 is an end view of the shaft of FIG. 32;

FIG. 34 is a side view of a first weight engaging member on the dumbbell of FIG. 28;

FIG. 35 is an end view of the weight engaging member of FIG. 34;

FIG. 36 is a side view of a second weight engaging member on the dumbbell of FIG. 28;

FIG. 37 is an end view of the weight engaging member of FIG. 36;

FIG. 38 is a side view of a third weight engaging member on the dumbbell of FIG. 28;

FIG. 39 is an end view of the weight engaging member of FIG. 38;

FIG. 40 is a top view of three adjacent weights on the dumbbell of FIG. 28;

FIG. 41 is an end view of one of the weights of FIG. 40;

FIG. 42 is a side view of the weight of FIG. 41;

FIG. 43 is an opposite end view of the weight of FIG. 41;

FIG. 44 is a partially sectioned top view of the weights of FIG. 40 resting on a cradle constructed according to the principles of the present invention;

FIG. 45 is a partially sectioned side view of the weights and cradle of FIG. 44;

FIG. 46 is an end view of the cradle of FIG. 44 without the weights;

FIG. 47 is an end view of an alternative embodiment weight engagement member suitable for use in accordance with the present invention;

FIG. 48 is a side view of the weight engagement member of FIG. 47; and

FIG. 49 is an opposite end view of the weight engagement member of FIG. 47.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

The present invention provides methods and apparatus to facilitate adjustment of weight resistance to exercise motion. Generally speaking, the present invention allows a person to adjust weight resistance by rotating one or more weight selectors into engagement with a desired combination of weights.

FIG. 1 shows an exercise dumbbell 100 constructed according to the principles of the present invention. The dumbbell 100 includes a handle assembly 110 and a plurality of weight plates 227–229 that are selectively connected to the handle assembly 110.

As shown in FIG. 2, the weight plates 227–229 rest on a weight base or cradle 300 when not in use. The base 300 is preferably an injection molded plastic member having an intermediate portion, and respective weight storage areas at opposite ends of the intermediate portion. Each weight storage area is defined by a plurality of side walls, end walls, and spacers which cooperate to define discrete weight upwardly opening slots or compartments 327–329. The upper corners on these walls and spacers are preferably beveled and/or rounded to help guide the weight plates 227–229 into place. Also, each end wall 307 and 309 is preferably contoured or notched (as shown in FIG. 3) for reasons discussed below. The depicted base 300 does not require a bottom wall because of the manner in which the weight plates 227–229 are configured, but the present invention is not limited to such an arrangement. Some other weight storage arrangements are disclosed in U.S. Pat. No. 4,529,198 to Hettick, Jr.; U.S. Pat. No. 4,822,034 to Shields;

4

U.S. Pat. No. 5,284,463 to Shields; U.S. Pat. No. 5,839,997 to Roth et al.; and U.S. Pat. No. 6,033,350 to Krull, all of which are incorporated herein by reference.

FIGS. 4–6 show one group of weight plates 227–229 by themselves, though arranged as if supported by the base 300. With the exception of thickness, the weight plates 227–229 are identical to one another. The weight plates 227–229 are preferably made of steel. For the dumbbell 100, the weight plates 227 are configured to weigh five pounds each; the weight plates 228 are configured to weigh seven and one-half pounds each; and the weight plates 229 are configured to weigh ten pounds each. Those skilled in the art will recognize that different weight amounts may be selected as a matter of design choice. In this particular case, the selected weights are deemed a desirable choice for reasons discussed below.

As shown in FIGS. 4–6, each of the weight plates 227–229 has an upwardly opening slot 207, and a peg or nub 208 that is disposed immediately beneath the slot 207 and protrudes orthogonally outward from the plate. The lower corners of each plate 227–229 are notched to provide a relatively narrower lower end 230, and laterally extending, downwardly facing shoulders 233 on opposite sides thereof. These notches tend to offset the impact of the slot 207 for purposes of maintaining proximity between the center of mass and the geometric center of the weight plate. Also, the narrow end 230 is configured to fit inside a respective slot 327–329 in the base 300, and the shoulders 233 are configured to rest on respective sidewalls of the base 300, thereby eliminating the need for a bottom wall. This arrangement also reduces the size of the base 300 relative to the size of the weight plates 227–229. The weight plates 227–229 preferably have rounded corners to eliminate sharp edges and to facilitate both insertion of the weight plates 227–229 into the base 330 and insertion of the handle assembly 110 into the weight plates 227–229.

The handle assembly 110 includes an intermediate hand grip or handle 120 that is shown by itself in FIGS. 25–26. The handle 120 is preferably an extruded plastic member that may be described as a cylindrical tube. The exterior of the handle 120 may be knurled, contoured, and/or coated to facilitate a comfortable and reliable grip. The outside diameter defined by the tube is 1.125 inches, and the inside diameter defined by the tube is 0.75 inches. A groove or keyway 122 is provided along the internal sidewall of the hand 120, and the keyway 122 extends axially the length of the handle 120 (five and one-half inches).

The handle 120 is mounted on a bar 130 that is shown by itself in FIGS. 22–24. The bar 130 is preferably made of steel, and may be described as a modified cylindrical rod that defines a longitudinal axis. An intermediate portion of the bar 130 is five and one-half inches long and defines an outside diameter of 0.75 inches. In other words, the handle 120 is configured to fit snugly onto the intermediate portion of the bar 130. A groove or keyway 132 extends axially along the intermediate portion of the bar 130, which is otherwise cylindrical in shape. The groove 132 in the bar 130 is similar in size and shape to the groove 122 in the handle 120, and a pin or key (not shown) is inserted through the aligned grooves 122 and 132 to key the handle 120 against rotation relative to the bar 130. Other arrangements, including radially extending pins or screws may be used in the alternative to secure the handle 120 to the bar 130. Also, an alternative bar may be manufactured with the handle forming an integral portion thereof.

Opposite end portions of the bar 130 are provided with diametrically opposed flat surfaces 134 and 136. Each of the

US 7,077,791 B2

5

6

flat surfaces 134 extends axially along the entire length of a respective end portion (four and five-eighths inches), and each of the flat surfaces 136 extends only one-quarter inch inward from a respective distal end. One of the longer flat surfaces 134 is circumferentially aligned with the groove 132 and accommodates insertion of the key between the handle 120 and the bar 130. The other longer flat surface 134 is diametrically opposed.

The flat surfaces 134 and 136 on the bar 130 are configured to receive respective ends of respective brackets 140, one of which is shown by itself in FIGS. 18–21. Each bracket 140 is preferably a steel plate that has been bent into a U-shaped configuration, including an intermediate strip 141, an inside flange 142 having an elliptical shape, and an outside flange 145 having a rectangular shape. Prior to assembly of the dumbbell 100, the angles defined between the strip 141 and each of the flanges 142 and 145 are preferably slightly greater than ninety degrees for reasons discussed below.

A generally D-shaped opening 144 extends through the inside flange 142 and is configured to fit snugly onto either end portion of the bar 130 (because the longer flat surfaces 134 are diametrically opposed, and the shorter flat surfaces 136 are diametrically opposed). In other words, the inside flange 142 is slidable into abutment against either end of the intermediate portion of the bar 130. An opening 146 extends through the outside flange 145 and is configured to fit snugly onto either distal end of the bar 130 and into abutment against the remainder of the end portion. As discussed below, a weight indicator 160 and three weight engagement members 167–169 are mounted on each end portion of the bar 130 prior to a respective outside flange 145. The opening 146 is bounded by two diametrically opposed cylindrical surfaces and two diametrically opposed flat surfaces which cooperate to define an opening similar to the profile of the distal ends of the bar 130 (shown in FIG. 23). The openings 144 and 146 cooperate with the bar 130 to key the bracket 140 against rotation relative to the bar 130. Other arrangements, including welding or keying, may be used in the alternative.

Threaded holes 138 extend into respective distal ends of the bar 130 to receive respective fasteners 108, one of which is shown by itself in FIG. 27. Each fastener 108 may be described as a bolt having a threaded shaft (not shown) and a relatively larger diameter head. A tool receiving opening 108 is preferably provided in the head of the fastener 108 to facilitate tightening of the fastener relative to the bar 130 by means of a wrench or other appropriate tool. The fasteners 108 cooperate with the intermediate portion of the bar 130 to prevent axial movement of the brackets 140 and/or the weight engagement members 167–169. The slightly divergent configuration of the flanges 142 and 145 provides a spring washer sort of effect.

Each bracket 140 is configured to maintain the weight plates 227–229 in the same relative positions as the base 300. In this regard, the strip 141 is configured to fit inside the slots 207 in the weight plates 227–229, and three pairs of tabs 147–149 extend outward from opposite sides of the strip 141. The tabs 147 cooperate with the inside flange 142 to define a first weight slot 157 configured to accommodate the weight plate 227. The tabs 148 cooperate with the tabs 147 to define a second weight slot 158 configured to accommodate the weight plate 228. The tabs 149 cooperate with the tabs 148 to define a third weight slot 159 configured to accommodate the weight plate 229.

As noted previously, a weight indicator 160 and a group of three weight engagement members 167–169 are mounted

on each end portion of the bar 130. One of the weight indicators 160 is shown by itself in FIGS. 10–12. Each weight indicator 160 is preferably an injection molded plastic disc. A circular hole 163 extends through the center of the indicator 160 and defines an inside diameter of slightly more than 0.75 inches. In other words, the indicator 160 is configured to be rotatably mounted on either end portion of the bar 130. Circumferentially spaced weight indicia 161 are provided on a first side of the indicator 160. The weight indicia 161 are arranged to appear one at a time through a window 143 in the inner flange 142 when the indicator 160 is properly positioned on the bar 130. Also, circumferentially spaced slits 164 are provided in an opposite, second side of the indicator 160 to facilitate a rotational link between the indicator 160 and the weight engagement members 167–169, as further discussed below.

FIGS. 7–9 shows one of the middle weight engagement members 168 by itself. Each weight engagement member 167–169 is preferably an injection molded plastic member that includes a disc portion 181 and an orthogonally projecting hub (designated as 182 on the weight engagement member 168). The disc portion 181 is similar in size and shape to the indicator 160, but twice as thick. The hub portion 182 is concentrically aligned with the disc portion 181 and configured both to fit inside the slot 207 in a respective weight plate 227–229, and to span the thickness of a respective weight plate 227–229.

A circular hole 183 extends through both the disc portion 181 and the hub 182 and defines an inside diameter of slightly more than 0.75 inches. In other words, the weight engagement members 167–169 are configured to be rotatably mounted on either end portion of the bar 130. Circumferentially spaced slits 184 are provided in the side of the disc portion 181 opposite the hub 182 to similarly facilitate a rotational link between the indicator 160 and the weight engagement members 167–169. In this regard, circumferentially spaced tabs 185 project outward from a distal end of the hub 182. The tabs 185 on the weight engagement member 168 are configured for insertion into the slits 184 in the adjacent weight engagement member 167. Similar tabs on the weight engagement member 167 are configured for insertion into the slits 164 in the weight indicator 160, and similar tabs on the weight engagement member 169 are configured for insertion into the slits 184 in the weight engagement member 168.

Each of the weight engagement members 167–169 has at least one lip portion that extends axially away from a radially outward portion of a respective disc portion 181. On each of the weight engagement members 167–169, the at least one lip portion spans a plurality of sectors disposed about the hub, leaving gaps in the remaining sectors. Each hub and its associated lip portion(s) cooperate to define a ring of space therebetween. This ring of space is configured to accommodate the nub 208 on a respective weight plate 227–229 when the hub is resting inside the slot 207 in the respective weight plate 227–229. In other words, the arrangement facilitates rotation of the lip portion(s) on the weight engagement members 167–169 about the nubs 208 on respective weight plates 227–229.

Each interconnected group of weight engagement members 167–169 cooperates to define a rotatable weight selector. On the dumbbell 100, each weight selector is selectively rotatable into eight different weight engaging orientations. For each of the weight engagement members 167–169, as well as the indicator 160, five of these available orientations are shown in FIGS. 13–17. An angle of forty-five degrees is defined between each successive orientation or sector.

US 7,077,791 B2

<table>
<tr><td>7</td><td>8</td></tr>
</table>

In FIG. 13, the "10" on the indicator 160 is positioned to appear in the window 143, and none of the weight engagement members 167–169 has a lip portion positioned to underlie or hook a respective nub 208 (at 6:00). As a result, when the handle assembly 110 is lifted from the loaded base 300 shown in FIG. 2, all of the weight plates 227–229 remain at rest on the base 300. The "10" on the indicator 160 correctly indicates that the empty handle assembly 110 weighs ten pounds.

The indicator 160 and the weight engagement members 167–169 are rotated forty-five degrees counter-clockwise to arrive at the orientations shown in FIG. 14. The indicator 160 now displays a "20" in the window 143, and the weight engagement member 167 has a lip portion positioned to underlie a respective weight plate 227. With both weight engagement members 167 occupying this same orientation, both five pounds plates 227 are latched to the handle assembly 110. The "20" on the indicator 160 correctly indicates that the handle assembly 110 will now weigh twenty pounds when lifted from the base 300.

FIG. 15 shows that the next orientation engages the seven and one-half pound plates 228 while releasing the five pound plates 227. The "25" on the indicator 160 correctly indicates that the handle assembly 110 will now weigh twenty-five pounds when lifted from the base 300.

FIG. 16 shows that the next orientation engages the ten pound plates 229 while releasing the seven and one-half pound plates 228. The "30" on the indicator 160 correctly indicates that the handle assembly 110 will now weigh thirty pounds when lifted from the base 300.

FIG. 17 shows that the next orientation engages both the five pounds plates 227 and the seven and one-half pound plates 228 while releasing the ten pound plates 229. The "35" on the indicator 160 correctly indicates that the handle assembly 110 will now weigh thirty-five pounds when lifted from the base 300.

In the next orientation (not shown), the five pound plates 227 remain engaged, the seven and one-half pound plates 228 are released, and the ten pounds plates 229 are engaged. The "40" on the indicator 160 will correctly indicate that the handle assembly 110 is set to weight forty pounds when lifted from the base 300.

In the next orientation, the five pound plates 227 are released, the seven and one-half pound plates 228 are engaged, and the ten pounds plates 229 remain engaged. The "45" on the indicator 160 will correctly indicate that the handle assembly 110 is set to weigh forty-five pounds when lifted from the base 300.

In the last available orientation, all of the plates 227–229 are engaged, and the "55" on the indicator 160 will correctly indicate that the handle assembly 110 is set to weight fifty-five pounds when lifted from the base 300.

As shown in FIGS. 7–8, the weight engagement member 168 has three circumferentially spaced lip portions 186–188, and three circumferentially spaced gaps (one of which is designated as 189). The gap 189 spans an angle B of fifty degrees, and the lip portion 187 spans an angle A of forty degrees. As suggested by this example, two and one-half degrees of added "play" or tolerance are provided on each side of each gap to reduce the possibility of "snagging" a numb 208 on a weight plate that is not supposed to be selected.

In addition to engaging a desired combination of weight plates 227–229, each weight selector cooperates with a respective bracket 140 to maintain desired axial spacing of the weight plates 227–229. In this regard, the hub 182 on the weight engagement member 168 projects axially beyond the

lip portions 186–188 to an extent that is slightly greater than the thickness of a weight plate 228. In other words, the hub 182 on the weight engagement member 168 is long enough to axially span both the lip portions 186–188 and one of the weight plates 228. As a result, the weight plates 228 is slidably retained between the lip portions 186–188 on the weight engagement member 168 and the disc portion 181 on an adjacent weight engagement member 167.

The weight engagement members 167 are generally similar to the weight engagement members 168, though their hubs are shorter (because the weight plates 227 are thinner), and their lip portions are arranged differently. The weight engagement members 169 are also generally similar to the weight engagement members 168. However, in addition to having longer hubs (because the weight plates 229 are thicker), and a different arrangement of lip portions, the weight engagement members 169 are preferably configured to function as knobs, as well. As a result, the weight engagement members 169 have a relatively greater thickness, which is measured axially, and the outside flange 145 on each bracket 140 is preferably configured to facilitate access to opposite sides of a respective knob 159. The outboard flanges 145 also protect against unintended rotation of the knob 169, particularly in cases where a user chooses to rest an end of the dumbbell 100 on his/her thigh.

The outer end walls 309 on the base 300 are notched like the inner end walls 307 to provide additional access to the knobs 169 when the dumbbell 100 is resting on the base 300. The inner end walls 307 are notched to accommodate the inside flanges 142 on respective brackets 140.

Recognizing that the weight selectors rotate to latch and unlatch the weight plates 227–229 relative to the handle assembly 110, the dumbbell 100 is preferably provided with one or more mechanisms to bias and/or lock the weight selectors against unintended rotation relative to the handle assembly 110. One such arrangement is provided on each end of the dumbbell 100 in FIG. 1. In particular, partially spherical depressions 119 extend into the outer surface of each knob 169 at locations spaced forty-five degrees apart from one another. A housing 116 is mounted within the upper outside corner of each bracket 140 immediately above a respective knob 169. A notch is preferably provided in the housing 116 to avoid potential interferences problems with the bend in the bracket 140. In a manner known in the art, a ball is movably mounted inside the housing 116 and allowed to project downward beyond the housing 116 and into an aligned depression 119 in the knob 169. A helical coil spring is compressed between the ball and either the overlying strip 141 on the bracket 140 or an upper portion of the housing 116. As a result of this arrangement, the knob 169 tends to click or snap into desired orientations relative to the handle assembly 110, and a threshold amount of torque is required to rotate the knob 169 out of any of these desired orientations. Other possible mechanisms include a leaf spring that deflects into and out of similar depressions, or a spring-biased lever that must first be moved to free the knob for rotation.

On the dumbbell 110, the two weight selectors operate independent of one another. In other words, the weight engagement members 167–169 at one end of the dumbbell 100 may be rotated to the orientation shown in FIG. 14 while the weight engagement members 167–169 at the other end of the dumbbell 100 remain in the orientation shown in FIG. 13. As a result, the opposite end weight indicators 160 will show "20" and "10", respectively, thereby correctly suggesting that the handle assembly 110 will weigh fifteen pounds (the average of ten and twenty) when lifted from the

US 7,077,791 B2

<table>
<tr><td>9</td><td>10</td></tr>
</table>

base 300. An advantage of this arrangement is that seven additional weight amounts may be selected. In other words, the dumbbell 100 provides eight different amounts of equally distributed weight, and seven additional amounts of weight that make one end of the dumbbell 100 somewhat heavier than the other end. To the extent that some people may find this imbalance undesirable, they can mitigate the effect by positioning the stronger, "thumb side" of their hand toward the heavier end, and/or adjusting their grip toward the heavier end. In any event, an advantage of the present invention is that relatively few weight plates are required to provide a relatively large number of effective dumbbell weights.

Another advantage associated with the dumbbell 100 involves the use of weight plates 227–229 that weigh five pounds, seven and one-half pounds, and ten pounds, respectively. Although the present invention is not limited in this regard, this particular combination strikes a seemingly desirable compromise between the range of available weights and the magnitude of adjustment between available weights. One alternative option is to use weight plates that weight two and one-half pounds, five pounds, and ten pounds, respectively. Together with a ten pound handle assembly, this combination would provide a range of ten to forty-five pounds in balanced five pound increments (assuming that the lip portions on the weight engagement members were rearranged to provide proper sequential selection of the weight amounts). In other words, this option provides generally the same magnitude of adjustment increments but with a maximum weight that is ten pounds lighter than the dumbbell 100. Another option is to use weight plates that weigh five pounds, ten pounds, and fifteen pounds, respectively. Together with a ten pound handle assembly, this combination would provide a range of ten to seventy pounds in balanced ten pound increments (again assuming that the lip portions on the weight engagement members were rearranged to provide proper sequential selection of the weight amounts). In other words, this option provides a greater maximum weight but with adjustment increments that are generally double those available with the dumbbell 100.

Many of the details associated with the dumbbell 100 may be modified or changed without departing from the scope of the present invention. Among other things, different amounts of weight, numbers of weight plates, and/or sizes of components may be substituted for those described above. This flexibility extends to the number of available weight selecting orientations, and/or choosing less than all of the possible combinations of weights. For example, the weight selectors may be reconfigured to select ten combinations of four weight plates at each end of the handle, in a manner that provides smaller increments of change at the lower end of the available weight range while also providing a higher maximum weight. The following chart sets forth one possible example involving ten available amounts of balanced weight.

| Knob | Handle | 1st Weights | 2nd Weights | 3rd Weights | 4th Weights | Total |
|------|--------|-------------|-------------|-------------|-------------|-------|
| 0° | 10 | 0 | 0 | 0 | 0 | 10 |
| 36° | 10 | 5 | 0 | 0 | 0 | 15 |
| 72° | 10 | 0 | 10 | 0 | 0 | 20 |
| 108° | 10 | 5 | 10 | 0 | 0 | 25 |
| 144° | 10 | 0 | 0 | 20 | 0 | 30 |
| 180° | 10 | 0 | 0 | 20 | 0 | 40 |
| 216° | 10 | 0 | 10 | 0 | 30 | 50 |

-continued

| Knob | Handle | 1st Weights | 2nd Weights | 3rd Weights | 4th Weights | Total |
|------|--------|-------------|-------------|-------------|-------------|-------|
| 252° | 10 | 0 | 0 | 20 | 30 | 60 |
| 288° | 10 | 0 | 10 | 20 | 30 | 70 |
| 324° | 10 | 5 | 10 | 20 | 30 | 75 |

Another chart is set forth below to represent another desirable combination of weights. On this particular embodiment, the handle assembly is configured to weigh five pounds; the plates nearest the handle weigh six and one-quarter pounds each; the intermediate weights weigh two and one-half pounds each; and the outermost weights weigh one and one-quarter pounds each. By arranging one weight selector to select only the heaviest weight, and the other weight selector to select only the two lighter weights (see "Split" in the chart), an effective dumbbell weight of fifteen pounds is realized, and the selected weight will feel relatively well balanced because the relative distances between the selected weights and the center of the handle tend to produce offsetting moment arms. In other words, this particular arrangement of weights may be considered advantageous because it provides a ninth, "essentially balanced" weight amount and facilitates a desirable weight range from a marketing perspective.

| Knob | Handle | 1.25's | 2.5's | 6.25's | Total |
|------|--------|--------|-------|--------|-------|
| 0° | 5 | 0 | 0 | 0 | 5.0 |
| 45° | 5 | 2.5 | 0 | 0 | 7.5 |
| 90° | 5 | 0 | 5 | 0 | 10.0 |
| 135° | 5 | 2.5 | 5 | 0 | 12.5 |
| Split | 5 | 1.25 | 2.5 | 6.25 | 15.0 |
| 180° | 5 | 0 | 0 | 12.5 | 17.5 |
| 225° | 5 | 2.5 | 0 | 12.5 | 20.0 |
| 270° | 5 | 0 | 5 | 12.5 | 22.5 |
| 315° | 5 | 2.5 | 5 | 12.5 | 25.0 |

Design flexibility exists with respect to various other elements, as well, including the location of the indicia for indicating the amount of selected weight, and/or the manner in which such indicia is provided. Also, alternative embodiments may be configured to accommodate knobs or other rotational aids in different locations, including just beyond each end of the handle, as opposed to just inside the distal ends of the dumbbell. Alternative embodiments may also include reconfigured weight engagement members which would, for example, have first and second lip portions that extend axially in opposite directions to selectively engage respective first and second weights on opposite sides of a respective weight engaging member.

Some of the possible variations of the present invention are embodied on an exercise dumbbell designated as 500 in FIG. 28. This dumbbell 500 has an intermediate handle 510 that is configured for grasping, and opposite end weight housings 520 that are configured to accommodate respective weight plates 530, 540, and 550. When not in use, the weight plates 530, 540, and 550 rest on a base or cradle designated as 600 in FIGS. 44–46.

The handle 510 is a cylindrical tube that is preferably made of steel. The handle 510 has a longitudinal axis and opposite ends secured to respective housings 520 (by welding or other suitable means). Each of the housings 520 includes an inside end wall 522, an outside end wall 526, a top wall 528, and opposite side walls 529, which cooperate

US 7,077,791 B2

11

to define a downwardly opening compartment. FIG. 28 shows integrally molded housings 520, and FIG. 29 shows a housing 520' which is identical in size and configuration, but assembled from three discrete parts. In either case, spacers may be provided to extend downward from the top wall 528 and occupy axial spaces between the weight plates 530, 540, and 550. Axially offset shoulders 524 are provided on interior, diametrically opposed sides of each end wall 522 and 526 to engage respective weights 530 and 550 and define centrally located gaps between the weights 530 and 550 and respective end walls 522 and 526. The shoulders 524 are disposed laterally inward from the outside edges of the walls 522 and 526.

A weight selector 560 is rotatably mounted relative to the handle 510 and/or the housings 520. The weight selector 560 includes a shaft 561 and two sets of weight engaging members or weight supports 570, 580, and 590 mounted on the shaft 561. The shaft 561 includes an intermediate portion 562 having a circular profile, and opposite end portions 563 having generally D-shaped profiles (a flat surface extends along an otherwise circular profile). The intermediate portion 562 extends through the handle 510 and through the inside end wall 522 of each housing 520. Each end portion 563 extends through a respective housing 520 and through a respective outside end wall 526.

The innermost weight support 570 is shown by itself in FIGS. 34–35. The support 570 includes an axially extending hub 578, a radially extending rim 576, and an axially extending lip 573. The support 570 is preferably an injection molded plastic member, and the rim 576 may be said to be integrally connected between the lip 573 and the hub 578. An opening 579 extends through the hub 578 and the rim 576, and is configured to fit snugly onto an end 563 of the shaft 561. The lip 573 includes a single, continuous segment or hook that preferably extends through an arc of 167.5° The lip 573 spans a sector designated as Z in FIG. 35, but does not span the sector designated as A.

The intermediate weight support 580 is shown by itself in FIGS. 36–37. The support 580 includes an axially extending hub 588, a radially extending rim 586, and an axially extending lip 584. The support 580 is preferably an injection molded plastic member, and the rim 586 may be said to be integrally connected between the lip 583 and the hub 588. An opening 589 extends through the hub 588 and the rim 586, and is configured to fit snugly onto an end 563 of the shaft 561. The lip 583 includes two diametrically opposed segments or hooks that preferably extend through respective arcs of 77.5° One of the segments spans the sector designated as Z in FIG. 37, but neither of the segments spans the sector designated as A.

The outermost weight support 590 is shown by itself in FIGS. 48–49. The support 590 includes an axially extending hub 598, a radially extending rim 596, and an axially extending lip 594. The support 590 is preferably an injection molded plastic member, and the rim 596 may be said to be integrally connected between the lip 593 and the hub 598. An opening 599 extends through the hub 598 and the rim 596, and is configured to fit snugly onto an end 563 of the shaft 561. The lip 593 includes four circumferentially spaced segments or hooks that preferably extend through respective arcs of 32.5° One of the segments spans the sector designated as Z in FIG. 39, but none of the segments spans the sector designated as A.

A fastener is secured to one end 563 of the shaft 561, just beyond an adjacent, outside end wall 526 of a respective housing 520, and a knob 565 is fastened to an opposite end 563 of the shaft 561 just beyond the outside end wall 526 of

12

the other housing 520. As shown in FIGS. 30–31, the knob 565 includes a relatively large diameter rim 566 that is configured for grasping, an intermediate portion 567 that bears against the outside end wall 526, and a relatively small diameter hub 568 that extends through the outside end wall 526. A recess 506 is provided in the hub 568 to receive a fastener in countersunk fashion. Both the knob 565 and both sets of supports 570, 580, and 590 are constrained to rotate together with the shaft 560 relative to the housings 520 and the handle 510. In other words, unlike the dumbbell 110, the dumbbell 500 has first and second weight selectors that are constrained to rotate together relative to the handle 510.

The weight plates 530, 540, and 550 are shown in greater detail in FIGS. 40–43. Although the two plates 540 and 550 are shown with the same thickness, the plate 550 weighs one-half as much as the plate 540. The plate 550 may be made from a different density material and/or may be "cored out" to achieve the difference in mass vis-a-vis the plate 540. The plate 530 is configured to weigh twice as much as the plate 540. The end views of the plate 550 shown in FIGS. 41 and 43 are representative of the end views of the other plates 540 and 530.

Each side of the plate 550 (and the plates 540 and 530) may be described with reference to a relatively thinner, intermediate portion 551 and relatively thicker, opposite side portions 552. The side portions 552 bear against adjacent counterparts and/or against shoulders 524 on respective end walls 522 or 526 on the housings 520. The intermediate portion 551 cooperates with adjacent counterparts and/or the end walls 522 or 526 to define gaps 545 disposed between the side portions 552 and the shoulders 524. The gaps 545 are configured to receive respective weight engagement members 570, 580, and 590. FIG. 41 shows how the weight engagement members 590, 580, and 570 axially align with the plates 550, 540, and 530.

An elongate slot 556 extends downward into each of the plates 550, 540, and 530, and is configured to accommodate the axial hubs 598, 588, and 578 on a respective support 590, 580, or 570. Just beneath the slot 556, a nub or peg 559 projects axially outward from the intermediate portion 551 of the plate 550 (and each of the plates 540 and 530). The peg 559 is disposed just inside the path A–Z traveled by the axially extending lip 595 on the support 590. As on the dumbbell 100, when a segment of the lip 595 is disposed beneath the peg 559, the plate 550 is "hooked" or constrained to move upward together with the handle 510.

The upper ends of the side portions 552 terminate in respective laterally extending portions 553, which extend away from one another. The lateral portions 553 are the same thickness as the side portions 552. The lower ends 554 of the side portions 552 are beveled or tapered. Relatively thinner, triangular fins 555 extend between respective lateral portions 553 and respective side portions 552. The fins 555 are configured to fit within opposing slots 625 in the base 600, and the lateral portions 553 are designed to rest on top of the ledge 603. Similar fins 555 on the plates 540 and 530 are configured to fit within respective slots 624 and 623 in the base 600. The grooves 623–625 are bounded by inclined, opposing walls which cooperate to center the plates 530, 540, and 550 relative to the base 600. Additional grooves 622 and 626 are provided in the base 600 to receive the end walls 522 and 526, respectively. The grooves 626 are bounded by relatively outward walls which are inclined upward and away from the middle of the base 600.

The base 600 has a bottom 610 that is configured to rest upon a flat surface, such as a table top or floor. Opposite end portions 601 and 602 extend upward from the bottom 610.

US 7,077,791 B2

13

In addition to outside walls, interior walls 604 extend upward from the bottom 610 and between opposing end walls 522 on respective housings 520. Elongate slots 606 extend downward into the interior walls 604 to accommodate the handle 510. When the bases 530, 540, and 550 are suspended from the base 600, the slots 606 align with the slots 556.

As on the dumbbell 100, the weight selector 560 is designed for rotation in 45° increments, but as discussed above, the present invention is not strictly limited in this regard. Also, a ball detent or other biasing system may be interconnected between the housing 520 and either the knob 565 or the weight selector shaft 561, for example, to bias the weight selector 560 to enter into and remain in the desired orientations.

The lips 573, 584, and 595 are configured to provide a wide berth or an added margin of clearance vis-a-vis the pegs 559. In particular, when any given plate 530, 540, or 550 is not engaged, the respective lip 573, 584, or 595 is at least 6° outside the boundary of the peg 559. With reference to the support 590, for example, each of the lip segments 595 spans an arc of 32.5°.

The configuration of the weight supports 570, 580, and 590, as well as the plates 530, 540, and 550, are such that any combination of the plates 530, 540, and 550 may be secured to the handle 510 for removal from the base 600. In this regard, when the support 570, 580, and 590 occupy the respective orientations shown in FIGS. 35, 37, and 39, the plates 530 are engaged to the exclusion of the plates 540 and 550. When the supports 570, 580, and 590 are rotated 180°, the sector designated as A underlies the pegs 559 on the plates 530, 540, and 550, and none is secured to the handle 510. When the supports 570, 580, and 590 are rotated until the sector designated as Z underlies the pegs 559, all of the plates 530, 540, and 550 are engaged.

With the handle 510 and the housings 520 designed to collectively weigh ten pounds, and the plates 530, 540, and 550 weighing ten pounds, five pounds, and two and one-half pounds, respectively, the following chart shows how different amounts of weight may be selected as a function of the orientation of the weight selector 560.

| Knob | Handle | Weights 590 | Weights 580 | Weights 570 | Total |
|---|---|---|---|---|---|
| — | 10 | 0 | 0 | 0 | 10 |
| 45° | 10 | 5 | 0 | 0 | 15 |
| 90° | 10 | 0 | 10 | 0 | 20 |
| 135° | 10 | 5 | 10 | 0 | 25 |
| 180° | 10 | 0 | 0 | 20 | 30 |
| 225° | 10 | 5 | 0 | 10 | 35 |
| 270° | 10 | 0 | 10 | 20 | 40 |
| 315° | 10 | 5 | 10 | 20 | 45 |

Like the dumbbell 100, the dumbbell 500 requires only three discrete weights at each end to provide eight different balanced dumbbell loads. Unlike the dumbbell 100, balanced adjustments to the effective weight of the dumbbell 500 may be made by rotating a single knob. Although the unitary weight selector 560 does not accommodate additional, out of balance weight amounts, the number of available dumbbell loads may be doubled by selectively adding opposite end "half-weights" that weigh one-half as much as the plates 590. For example, such half-weights could be connected to the inside end walls 522 by means of hook and loop fasteners or spring clips.

14

As noted above with respect to the dumbbell 100, several of the details concerning the dumbbell 500 may be modified without departing from the scope of the present invention. Among other things, many of the features and variations discussed above with reference to the dumbbell 100 are applicable to the dumbbell 500, and vice versa. Still another possible modification is depicted on an alternative embodiment weight engagement member designated as 770 in FIGS. 47–49.

Like the weight engagement members on the dumbbells 100 and 500, the weight engagement member 770 includes a radially extending disc portion 771, an axially extending hub portion 772, and at least one axially extending lip portion 778. As shown in FIG. 49, small openings may be provided in the lip portion 778 to improve the strength-to-mass ratio of the part. A cylindrical hole 773 extends through the hub portion 772 and the disc portion 771 to facilitate rotatable mounting of the weight engagement member 770 on a cylindrical shaft. Also, a groove or keyway 774 cooperates with the hole 773 to facilitate keying of the weight engagement member 770 on a cylindrical shaft (in the alternative). Circumferentially spaced leaf springs 777 are integrally formed in the disc portion 771 of the weight engagement member 770. As shown in FIG. 48, the intermediate portion of each leaf spring 777 projects axially beyond the disc portion 771, in a direction opposite the hub portion 772. The purpose of these springs 777 is to "take up" or span any gap between the disc portion 771 and the weight plate that may be caused due to tolerances in the manufacturing process, and/or to impose a clamping force against an adjacent weight plate. In any event, leaf springs 777 must be configured in a manner that any associated clamping and/or friction forces do not cause "unselected" weight plates to rise from the base together with the handle assembly.

The present invention may also be described in terms of various methods of providing adjustable mass to resist exercise motion. Many such methods may be described with reference to the foregoing embodiments. For reasons of practicality, the foregoing description and accompanying figures are necessarily limited to only some of the many conceivable embodiments and applications of the present invention. Other embodiments, improvements, and/or modifications will become apparent to those skilled in the art as a result of this disclosure. Moreover, those skilled in the art will also recognize that aspects and/or features of various methods and/or embodiments may be mixed and matched in numerous ways to arrive at still more variations of the present invention. In view of the foregoing, the scope of the present invention is to be limited only to the extent of the following claims.

What is claimed is:

1. An adjustable mass free weight system, comprising:

a handle assembly including a hand grip, a first weight selector disposed at a first end of said hand grip, and a second weight selector disposed at an opposite, second end of said hand grip, wherein each said weight selector is rotatably connected to said hand grip, and each said weight selector includes (a) a base portion that defines a longitudinal axis, (b) radial portions that are affixed to said base portion at axially spaced locations and extend radially away from said base portion, and (c) axial portions that are affixed to radially outward ends of respective radial portions and extend axially away from respective radial portions;

a plurality of aligned weights, wherein slots in the weights are configured to receive said base portion, and gaps are defined between adjacent weights to receive respective

US 7,077,791 B2

15

radial portions and axial portions therebetween, and each of said weights has a nub that projects axially toward a respective one of said radial portions and is selectively engaged when a respective one of said axial portions is rotated beneath said nub; and

a base configured to support said weights in a rest position.

**2.** The system of claim 1, wherein each of said weights has an axially extending shoulder that spans a respective one of said gaps.

**3.** The system of claim 1, wherein said first weight selector is rotatable relative to said second weight selector.

**4.** The system of claim 1, wherein opposite end portions of a bar project outward from respective ends of said hand grip, and each said base portion forms a tube about a respective one of said end portions.

**5.** The system of claim 1, wherein each said base portion is keyed to a common bar that extends through said hand grip.

**6.** The system of claim 1, wherein each said weight selector is rotatable to a first orientation relative to said weights, wherein only first said weights at respective ends of said hand grip are engaged by respective axial portions, and each said weight selector is rotatable to a second orientation relative to said weights, wherein only second said weights at respective ends of said hand grip are engaged by respective axial portions.

**7.** The system of claim 6, wherein each said weight selector is rotatable to a third orientation relative to said weights, wherein both said first weights and said second weights are engaged by respective axial portions.

**8.** The system of claim 1, wherein at least one of said radial portions supports at least two said axial portions that are circumferentially spaced apart from one another.

**9.** The system of claim 1, wherein at least one of said radial portions supports at least three said axial portions that are circumferentially spaced apart from one another.

**10.** The system of claim 1, wherein said weights have lower ends that are configured to fit into respective slots in said base, and transversely extending shoulders that are configured to rest on opposite sidewalls on said base.

**11.** An adjustable mass free weight system, comprising:
a hand grip;
at least one weight selector that defines a longitudinal axis and is rotatably connected to said hand grip, wherein a plurality of discrete engagement members are affixed to each said weight selector at discrete axially spaced locations, and each of said members includes a radially extending segment and at least one axially extending segment affixed to a radially outward portion of said radially extending segment;
a plurality of weights, wherein each of said weights has a slot that is configured to receive a respective said weight selector, and adjacent said weights define gaps therebetween to accommodate respective members, and each of said weights has an axially extending nub that is disposed radially inside a rotational path defined by each said axially extending segment on a respective one of said members, and said at least one weight selector rotates relative to said weights to move each said axially extending segment into and out of underlying engagement with a respective nub; and
a base configured to support said weights in a rest position.

**12.** The system of claim 11, wherein said at least one weight selector is rotatable to a first orientation relative to said weights, wherein only a first one of said weights is

16

engaged, and said at least one weight selector is rotatable to a second orientation relative to said weights, wherein a second one of said weights is engaged.

**13.** The system of claim 12, wherein said at least one weight selector is rotatable to a third orientation relative to said weights, wherein both said first one of said weights is engaged by a respective axially extending segment, and said second one of said weights is engaged by a respective axially extending segment.

**14.** The system of claim 11, wherein opposite end portions of a bar project outward from respective ends of said hand grip, and said at least one weight selector includes first and second weight selectors rotatably mounted on respective end portions of said bar and rotatable independent of one another.

**15.** The system of claim 11, wherein said weights have lower ends that are configured to fit into respective slots in said base, and transversely extending shoulders that are configured to rest on opposite sidewalls on said base.

**16.** An adjustable mass free weight system, comprising:
a bar having an intermediate handle portion, a first end portion, and an opposite, second end portion, wherein said bar defines a longitudinal axis;
a first weight plate and a second weight plate maintained in axial alignment along said first end portion of said bar;
a third weight plate and a fourth weight plate maintained in axial alignment along said second portion of said bar, wherein each said weight plate includes an axially extending nub;
a first weight selector and a second weight selector, wherein each said weight selector is rotatably mounted on a respective end portion of said bar, and said first weight selector includes at least one dedicated hook for each of said first weight plate and said second weight plate, and said second weight selector includes at least one dedicated hook for each of said third weight plate and said fourth weight plate, and each said hook is configured to engage and disengage a respective said nub as a function of its orientation relative to said bar, and each said hook on said first weight selector is constrained to rotate together, and each said hook on said second weight selector is constrained to rotate together; and
a base configured to support said weights in a rest position.

**17.** The system of claim 16, wherein a first bracket is secured to said first end portion of said bar, and a second bracket is secured to said second end portion of said bar, and each said bracket bounds a distal end of a respective weight selector.

**18.** The system of claim 16, wherein a first bracket is secured to said first end portion of said bar, and a second bracket is secured to said second end portion of said bar, and each said bracket has a U-shaped configuration with opposite distal ends connected to said bar and an intermediate portion spanning a respective weight selector.

**19.** The system of claim 16, wherein a first bracket is secured to said first end portion of said bar, and a second bracket is secured to said second end portion of said bar, and each said bracket has a U-shaped configuration with opposite distal ends connected to said bar, and a respective weight selector disposed therebetween.

**20.** The system of claim 16, wherein each said weight plate has a lower end that is configured to fit into a respective slot in said base, and transversely extending shoulders that are configured to rest on opposite sidewalls on said base.

US 7,077,791 B2

17

21. An adjustable mass free weight system, comprising:
a handle having a first end and a second end;
a plurality of first weights maintained in axial alignment
    at said first end of said handle;
a plurality of second weights maintained in axial align-     5
    ment at said second end of said handle;
a base configured to support said first weights and said
    second weights in a rest position; and
a first means, rotatably connected to said first end of said
    handle, for selectively securing said first weights to   10
    said handle and for maintaining spacing between adja-
    cent said first weights, wherein said first means is
    rotatable from a first orientation, wherein only one of

18

said first weights is secured to said handle, to a second
orientation, wherein another of said first weights is
secured to said handle; and
a second means, rotatably connected to said second end of
    said handle, for selectively securing said second
    weights to said handle and for maintaining spacing
    between adjacent said second weights, wherein said
    second means is rotatable from a first orientation,
    wherein only one of said second weights is secured to
    said handle, to a second orientation, wherein another of
    said second weights is secured to said handle.

*   *   *   *   *

# EXHIBIT K

US007261678B2

(12) **United States Patent**
Crawford et al.

(10) Patent No.: **US 7,261,678 B2**
(45) Date of Patent: **Aug. 28, 2007**

(54) **ADJUSTABLE DUMBBELL SYSTEM**

(75) Inventors: **Douglas A. Crawford**, Lafayette, CO (US); **Patrick A. Warner**, Boulder, CO (US); **Eric D. Golesh**, Thornton, CO (US); **Edward L. Flick**, Denver, CO (US); **Lopin Wang**, Taichung (TW)

(73) Assignee: **Nautilus, Inc.**, Vancouver, WA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 502 days.

(21) Appl. No.: **10/456,977**

(22) Filed: **Jun. 5, 2003**

(65) **Prior Publication Data**

US 2004/0005968 A1      Jan. 8, 2004

**Related U.S. Application Data**

(60) Provisional application No. 60/400,894, filed on Aug. 1, 2002, provisional application No. 60/400,244, filed on Jul. 31, 2002, provisional application No. 60/387,298, filed on Jun. 7, 2002.

(51) Int. Cl.
A63B 21/075       (2006.01)
(52) U.S. Cl. ...................... 482/107; 482/108; 482/94
(58) Field of Classification Search ................ 482/93, 482/94, 104, 106–109, 908
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 772,906 A | 10/1904 | Reach | |
| 848,272 A | 3/1907 | Thornley | |
| 1,053,109 A | 2/1913 | Reach | |
| 1,422,888 A | 7/1922 | Reeves et al. | |
| 1,672,944 A | 6/1928 | Jowett | |
| 1,779,594 A | 10/1930 | Hall | |
| 1,917,566 A | 7/1933 | Wood | |
| 3,647,209 A | 3/1972 | La Lanne | 272/58 |
| 3,758,109 A | 9/1973 | Bender | 272/84 |
| 3,771,785 A | 11/1973 | Speyer | 272/84 |
| 3,825,253 A | 7/1974 | Speyer | 272/84 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CH | 384485 | 11/1964 |

(Continued)

OTHER PUBLICATIONS

UK fitness supplies.co.uk, located at http://www.ukfitnessupplies.co.uk, 3 pages (First publ. date unknown, website pages printed on Aug. 4, 2003).

Primary Examiner—Cary E. O' Connor
Assistant Examiner—Victor K. Hwang
(74) Attorney, Agent, or Firm—Dorsey & Whitney LLP

(57)          **ABSTRACT**

A dumbbell is described including a handle having a grip and at least one end, an inner plate mounted on the handle adjacent the grip, in a fixed rotational orientation, a support plate rotationally mounted on the handle adjacent the inner plate, at least one collar rotationally mounted on the handle adjacent the support plate, and rotationally fixed with the support plate, a selector knob rotationally mounted on the handle adjacent the at least one collar, and rotationally fixed with the collar, a weight plate removably mounted on the handle adjacent the at least one collar, and a means for selectively securing the support plate to the inner plate to resist the rotation of the support plate, collar and selector knob with respect to the inner plate and handle.

**25 Claims, 55 Drawing Sheets**



**US 7,261,678 B2**

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,912,261 A | 10/1975 | Lambert, Sr. | 272/58 |
| 3,913,908 A | 10/1975 | Speyer | 272/84 |
| D244,628 S | 6/1977 | Wright | D34/5 K |
| 4,029,312 A | 6/1977 | Wright | 272/123 |
| 4,076,236 A | 2/1978 | Ionel | 272/123 |
| 4,349,192 A | 9/1982 | Lambert, Jr. et al. | |
| RE31,113 E | 12/1982 | Coker et al. | 272/118 |
| 4,411,424 A | 10/1983 | Barnett | 272/118 |
| 4,453,710 A | 6/1984 | Plötz | 272/122 |
| 4,529,197 A | 7/1985 | Gogarty | 272/122 |
| 4,529,198 A | 7/1985 | Hettick, Jr. | 272/123 |
| 4,538,805 A | 9/1985 | Parviainen | |
| 4,540,171 A | 9/1985 | Clark et al. | 272/118 |
| 4,546,971 A | 10/1985 | Raasoch | 272/123 |
| 4,566,690 A | 1/1986 | Schook | 272/117 |
| 4,568,078 A | 2/1986 | Weiss | 272/119 |
| 4,575,074 A | 3/1986 | Damratoski | 272/119 |
| 4,601,466 A | 7/1986 | Lais | 272/118 |
| 4,624,457 A | 11/1986 | Silberman et al. | 272/118 |
| 4,627,615 A | 12/1986 | Nurkowski | |
| 4,627,618 A | 12/1986 | Schwartz | 272/122 |
| 4,651,988 A | 3/1987 | Sobel | 272/143 |
| 4,712,793 A | 12/1987 | Harwick et al. | |
| 4,730,828 A | 3/1988 | Lane | 272/118 |
| 4,743,017 A | 5/1988 | Jaeger | 272/122 |
| 4,768,780 A | 9/1988 | Hayes | 272/122 |
| 4,787,629 A | 11/1988 | DeMyer | 272/123 |
| 4,809,973 A | 3/1989 | Johns | 272/118 |
| 4,822,034 A | 4/1989 | Shields | 272/123 |
| 4,834,365 A | 5/1989 | Jones | |
| 4,878,662 A | 11/1989 | Chern | 272/118 |
| 4,878,663 A | 11/1989 | Luquette | 272/134 |
| 4,880,229 A | 11/1989 | Broussard | 272/123 |
| 4,900,016 A | 2/1990 | Caruthers | 272/122 |
| 4,900,018 A | 2/1990 | Ish, III et al. | 272/134 |
| D307,168 S | 4/1990 | Vodhanel | D21/197 |
| 4,913,422 A | 4/1990 | Elmore et al. | 272/123 |
| 4,948,123 A | 8/1990 | Schook | 272/123 |
| 4,971,305 A | 11/1990 | Rennex | 272/118 |
| 4,982,957 U | 1/1991 | Shields | 272/123 |
| D315,003 S | 2/1991 | Huang | D21/197 |
| 5,000,446 A | 3/1991 | Sarno | 272/118 |
| 5,037,089 A | 8/1991 | Spagnuolo et al. | 272/134 |
| 5,040,787 A | 8/1991 | Brotman | 272/123 |
| D321,230 S | 10/1991 | Leonesio | D21/197 |
| 5,102,124 A | 4/1992 | Diodati | 482/107 |
| 5,123,885 A | 6/1992 | Shields | 482/106 |
| 5,131,898 A | 7/1992 | Panagos | 482/108 |
| 5,135,453 A | 8/1992 | Sollenberger | D6/552 |
| D329,563 S | 9/1992 | Rasmussen | |
| 5,171,199 A | 12/1992 | Panagos | 482/106 |
| 5,221,244 A | 6/1993 | Doss | 482/106 |
| 5,263,915 A | 11/1993 | Habing | 482/99 |
| 5,284,463 A | 2/1994 | Shields | 482/107 |
| 5,306,221 A | 4/1994 | Itaru | 482/98 |
| 5,344,375 A | 9/1994 | Cooper | 482/106 |
| 5,374,229 A | 12/1994 | Sencil | 482/98 |
| 5,407,413 A | 4/1995 | Kupferman | 482/106 |
| D359,778 S | 6/1995 | Towley, III et al. | D21/197 |
| 5,433,687 A | 7/1995 | Hinzman et al. | |
| 5,435,800 A | 7/1995 | Nelson | 482/108 |
| D362,776 S | 10/1995 | Thorn | D6/552 |
| 5,484,367 A | 1/1996 | Martinez | 482/107 |
| 5,556,362 A * | 9/1996 | Whipps | 482/98 |
| 5,607,379 A | 3/1997 | Scott | 482/107 |
| 5,628,716 A | 5/1997 | Brice | 482/106 |
| 5,630,776 A | 5/1997 | Yang | 482/104 |
| 5,637,064 A | 6/1997 | Olson et al. | 482/108 |
| 5,669,861 A | 9/1997 | Toups | 482/98 |
| 5,749,814 A | 5/1998 | Chen | |
| 5,769,762 A | 6/1998 | Towley, III et al. | 482/93 |

| | | | |
|---|---|---|---|
| 5,776,040 A | 7/1998 | Webb et al. | |
| 5,779,604 A | 7/1998 | Towley, III et al. | 482/108 |
| 5,839,997 A | 11/1998 | Roth et al. | 482/107 |
| 5,853,355 A | 12/1998 | Standish | 482/106 |
| 5,876,313 A | 3/1999 | Krull | 482/98 |
| 5,879,274 A | 3/1999 | Mattox | |
| 5,971,899 A | 10/1999 | Towley, III et al. | 482/108 |
| 6,033,350 A | 3/2000 | Krull | 482/98 |
| 6,039,678 A | 3/2000 | Dawson | D21/681 |
| D422,654 S | 4/2000 | Chen | 482/107 |
| 6,083,144 A | 7/2000 | Towley, III et al. | 482/107 |
| 6,099,442 A | 8/2000 | Krull | 482/107 |
| 6,123,651 A | 9/2000 | Ellenburg | |
| 6,149,558 A | 11/2000 | Chen | |
| 6,186,927 B1 | 2/2001 | Krull | 482/98 |
| 6,186,928 B1 | 2/2001 | Chen | 482/107 |
| 6,196,952 B1 | 3/2001 | Chen | 482/107 |
| 6,228,003 B1 | 5/2001 | Hald et al. | 482/107 |
| 6,261,022 B1 | 7/2001 | Dalebout et al. | 402/107 |
| 6,261,211 B1 | 7/2001 | Suarez et al. | 482/107 |
| 6,322,481 B1 | 11/2001 | Krull | 482/106 |
| 6,328,678 B1 | 12/2001 | Romero | 482/142 |
| 6,350,221 B1 | 2/2002 | Krull | 482/107 |
| 6,402,666 B2 | 6/2002 | Krull | 482/108 |
| 6,416,446 B1 | 7/2002 | Krull | 482/107 |
| 6,422,979 B1 | 7/2002 | Krull | 482/98 |
| 6,461,282 B1 | 10/2002 | Fenelon | 482/106 |
| 6,500,101 B1 | 12/2002 | Chen | 482/107 |
| D468,946 S | 1/2003 | Harms et al. | D6/552 |
| D469,294 S | 1/2003 | Harms et al. | D6/552 |
| 6,540,650 B1 | 4/2003 | Krull | 482/107 |
| 6,582,345 B2 | 6/2003 | Roy | |
| 6,629,910 B1 | 10/2003 | Krull | 482/98 |
| 6,669,606 B2 | 12/2003 | Krull | 482/98 |
| 6,679,816 B1 | 1/2004 | Krull | 482/107 |
| 6,719,672 B1 | 4/2004 | Ellis et al. | |
| 6,719,674 B2 | 4/2004 | Krull | 482/106 |
| 6,733,424 B2 | 5/2004 | Krull | 482/98 |
| 6,746,381 B2 | 6/2004 | Krull | 482/108 |
| 6,749,547 B2 | 6/2004 | Krull | 482/106 |
| D498,272 S | 11/2004 | Sanford-Schwentke et al. | |
| D500,820 S | 1/2005 | Krull | |
| D508,628 S | 8/2005 | Crawford et al. | |
| 7,137,932 B2 * | 11/2006 | Doudiet | 482/107 |
| 2002/0107118 A1 | 8/2002 | Shifferaw | 482/106 |
| 2002/0115539 A1 | 8/2002 | Krull | 482/106 |
| 2002/0183174 A1 | 12/2002 | Chen | 482/108 |
| 2003/0092542 A1 | 5/2003 | Bartholomew et al. | |
| 2003/0148862 A1 | 8/2003 | Chen et al. | |
| 2003/0153439 A1 | 8/2003 | Krull | 482/99 |
| 2003/0193368 A1 | 10/2003 | Krull | 482/106 |
| 2003/0193369 A1 | 10/2003 | Krull | 482/107 |
| 2004/0005969 A1 | 1/2004 | Chen | 482/142 |
| 2004/0023765 A1 | 2/2004 | Krull | 482/106 |
| 2004/0072661 A1 | 4/2004 | Krull | 482/104 |
| 2004/0138031 A1 | 7/2004 | Krull | 482/107 |
| 2004/0162197 A1 * | 8/2004 | Towley et al. | 482/107 |
| 2005/0079961 A1 | 4/2005 | Dalebout et al. | |
| 2006/0135328 A1 * | 6/2006 | Doudiet | 482/107 |
| 2006/0211550 A1 * | 9/2006 | Crawford et al. | 482/107 |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 2409998 Y | 12/2000 |
| CN | 2426370 Y | 4/2001 |
| CN | 2430184 Y | 5/2001 |
| EP | 177643 | 4/1986 |
| FR | 637365 | 4/1928 |
| FR | 1468902 | 2/1967 |
| FR | 2452296 | 10/1980 |
| FR | 2613237 | 10/1988 |
| JP | 10118222 | 5/1998 |
| SU | 1258447 | 9/1986 |

**US 7,261,678 B2**

Page 3

| | | | | | | |
|---|---|---|---|---|---|---|
| SU | 1643024 | 7/1987 | | WO | WO 03/063969 A2 | 8/2003 |
| SU | 1367987 | 1/1988 | | WO | WO 03/063969 A3 | 8/2003 |
| SU | 1389789 A2 | 4/1988 | | WO | 03/089070 A1 | 10/2003 |
| SU | 1659073 | 6/1991 | | | | |
| SU | 1687271 | 10/1991 | | * cited by examiner | | |
| SU | 1780780 | 12/1992 | | | | |

Case 2:10-cv-00624-MMM-MAN   Document 43   Filed 11/05/10   Page 80 of 173   Page ID #:1059



*Fig. 1*



*Fig. 2*



Fig. 3



Fig. 4



*Fig. 5*

Exhibit K
Page 71 of 155



*Fig. 6*

Case 2:10-cv-00624-MMM-MAN   Document 43   Filed 11/05/10   Page 86 of 173   Page ID #:1065



*Fig. 7*



Fig. 8



*Fig. 9*



*Fig. 10*

Exhibit K

Page 76 of 155



*Fig. 11*



*Fig. 12*



*Fig. 13*



Fig. 14



*Fig. 15*



*Fig. 16*



Fig. 17



Fig. 18



*Fig. 19*





*Fig. 21A*

*Fig. 21C*

*Fig. 21D*

*Fig. 21B*



*Fig. 22*



*Fig. 23*

Exhibit K
Page 89 of 155

Case 2:10-cv-00624-MMM-MAN   Document 43   Filed 11/05/10   Page 103 of 173   Page ID
#:1082



*Fig. 24*

Case 2:10-cv-00624-MMM-MAN   Document 43   Filed 11/05/10   Page 104 of 173   Page ID #:1083



*Fig. 25*

Fig. 26



*Fig. 27*



*Fig. 28*



*Fig. 29*



Case 2:10-cv-00624-MMM-MAN   Document 43   Filed 11/05/10   Page 110 of 173   Page ID
#:1089



Fig.31A

Fig.31B

Fig. 31C

Fig.31D

Fig.31E



*Fig. 32*





*Fig. 34*



*Fig. 35*

*Fig. 36*



Fig. 37



*Fig. 38*

Case 2:10-cv-00624-MMM-MAN   Document 43   Filed 11/05/10   Page 118 of 173   Page ID #:1097



*Fig. 39*



Fig. 42

Fig. 41

Fig. 40





Fig.45



*Fig. 46*



Fig. 47



Fig. 48



*Fig. 49*



*Fig. 50*



Fig. 51

Case 2:10-cv-00624-MMM-MAN   Document 43   Filed 11/05/10   Page 128 of 173   Page ID #:1107



*Fig. 52*



*Fig. 53*



*Fig. 54*



*Fig. 55*



*Fig. 56*



Fig.57



Fig. 58B

Fig. 58A

US 7,261,678 B2

1

# ADJUSTABLE DUMBBELL SYSTEM

## CROSS REFERENCE TO RELATED APPLICATIONS

This application claims the benefit of and priority to U.S. Provisional Application No. 60/387,298 titled "Adjustable Dumbbell System" filed on Jun. 7, 2002, U.S. Provisional Application No. 60/400,244 titled "Adjustable Dumbbell System" filed on Jul. 31, 2002, and U.S. Provisional Application No. 60/400,894 titled "Adjustable Dumbbell System" filed on Aug. 1, 2002, each of which is hereby incorporated herein by reference. U.S. Design application No. 29/164,826 titled "Adjustable Dumbbell" filed on Jul. 31, 2002, now U.S. Pat. No. D540,405. U.S. Design application No. 29/164,931 titled "Adjustable Dumbbell Support Base" filed on July 31, 2002, now U.S. Pat. No D508,628, and U.S. Design application No. 29/164,972 titled "Adjustable Dumbbell" filed on Aug. 1, 2002, now U.S. Pat. No. D540,894 , are each hereby incorporated herein by reference. U.S. application. Ser. No. 10/127,049 filed on Apr. 18, 2002, now U.S. Pat. No. 7,077,791, is hereby incorporated herein by reference.

## FIELD OF THE INVENTION

The present invention relates generally to an adjustable dumbbell system, and more specifically to an adjustable dumbbell system that allows a user to adjust the weight of the dumbbell utilizing rotating collars, and that secures the dumbbell in the base until the proper weight selection has been made.

## BACKGROUND OF THE INVENTION

Dumbbells are widely used exercise devices for providing resistance training in a wide variety of exercises such as bicep curls, bench presses, shoulder presses, triceps extensions, and the like. Due to the number of exercises that may be performed with dumbbells, users often need many different dumbbells, each with different weights, to perform an exercise routine. Traditional dumbbells are somewhat inconvenient to use because each time one desires to change the weight of the dumbbell, the user either has to select a heavier dumbbell, or disassemble the dumbbell he is using and change the weight. A single adjustable dumbbell allows a user to perform a varied exercise routine without requiring a large number of different weight dumbbells.

In response to these issues, dumbbells have been designed that allow the weight to be changed on a single dumbbell. These dumbbells typically have more complicated structures that allow the weight load to be selected, and also typically have a relatively large weight differential between weight settings. Where the weight differential is reasonable, the total weight lifted is often relatively low, requiring the use of a second set of heavier adjustable dumbbells for a more heavy workout.

Further, some existing variable weight dumbbells are noisy due to the fact that the weights are sometimes loosely attached to the handle, and thus the weights are able to bang against one another, causing noise and scratching the weights themselves.

What is needed is an adjustable weight dumbbell that is easy to use, securely holds the weights to the bar, and allows more weight options on a single bar.

2

## BRIEF SUMMARY OF THE INVENTION

The invention described herein addresses these issues. The inventive dumbbell has variable weight capabilities, with a locking mechanism to help keep the weights from being rotating with respect to the handle during use, thus helping avoid inadvertent disengagement. The invention also includes an automatic release of the locking mechanism when the dumbbell is set down on a support surface or in a specially designed base structure. The instant invention also includes a unique layered weight plate structure that provides for precisely-weighted plates, and coated weight plates to avoid undesirable noise and damage to the surface of the weights. Further, the instant invention includes a weight selector knob having an indicator strip assembled therein.

In one embodiment, the invention described herein includes a dumbbell having a handle with a grip and at least one end, an inner plate mounted on the handle adjacent the grip, in a fixed rotational orientation, a support plate rotationally mounted on the handle adjacent the inner plate, at least one collar rotationally mounted on the handle adjacent the support plate, and rotationally fixed with the support plate, a selector knob rotationally mounted on the handle adjacent the at least one collar, and rotationally fixed with the collar, a weight plate removably mounted on the handle adjacent the at least one collar, and a means for selectively securing the support plate to the inner plate to resist the rotation of the support plate, collar and selector knob with respect to the inner plate and handle.

Additionally, the means for selectively securing includes a recess formed in the inner plate; a locking device positioned in the recess and engageable with the support plate to engage the support plate to rotationally fix the support plate on the handle.

Further, the support plate can define at least one aperture; and the locking device in the inner plate is selectively received in the aperture to rotationally fix the support plate on the handle.

The locking device can be a post member that moves from a first position being positioned in the recess and disengaged from the support plate to a second position at least partially extending from the recess to engage the support plate.

The means for disengaging the locking device includes a base for receiving the dumbbell; an engagement shoulder on the base for at least partial insertion into the recess in the inner plate; and wherein the engagement shoulder causes the locking device to retract from the support plate when the dumbbell is received in the base and the engagement shoulder is received in the recess.

Additionally, the instant invention includes a dumbbell with plates being made of several sheets of metal bonded together, such as by rivets, to create a weight plate that is economical to use, as well as manufacture. Principally, the weight plate for use on the dumbbell includes a main body having an opening formed through a central portion thereof, the main body including a plurality of plate members bound together to achieve the desired weight value for the weight plate; and the main body at least partially over molded with a coating of a plastic or more particularly a material with thermoplastic characteristics. The weight plate can have a main body including at least one plate having a smaller peripheral size than the main body, and the at least one plate is a plurality of plates having a smaller peripheral size than the main body, and being bound to a common side of the main body at symmetrical or asymmetrical locations.

Other features, utilities and advantages of various embodiments of the invention will be apparent from the

US 7,261,678 B2

3

following more particular description of embodiments of the invention as illustrated in the accompanying drawings and defined in the appended claims.

BRIEF DESCRIPTION OF THE DRAWINGS

The preferred embodiments of the invention will be described in detail with reference to the following figures, wherein like numerals refer to like elements, and wherein:

FIG. 1 is an isometric view of an adjustable dumbbell, in accordance with one embodiment of the present invention;

FIG. 2 is an isometric view of a support base, in accordance with one embodiment of the present invention;

FIG. 3 is an isometric view of an inner support, in accordance with one embodiment of the present invention;

FIG. 4 is a section view of the inner support of FIG. 3 taken along line 4-4;

FIG. 5 is an isometric view an inner disc, in accordance with one embodiment of the present invention;

FIG. 6 is a front view of a handle, in accordance with one embodiment of the present invention;

FIG. 7 is a front view of the adjustable dumbbell of FIG. 1, with the weight plates removed;

FIG. 8 is an isometric view of a collar, in accordance with one embodiment of the present invention, the isometric view illustrating the outer face of the collar;

FIG. 9 is an isometric view of the collar of FIG. 8, the isometric view illustrating the inner face of the collar;

FIG. 10 is a front view of a weight, in accordance with one embodiment of the present invention;

FIG. 11 is a section view of the weight plate of FIG. 10 taken along line 11-11;

FIG. 12 is a front view of one implementation of a collar, in accordance with one embodiment of the present invention;

FIG. 13 is a front view of a second implementation of a collar, in accordance with one embodiment of the present invention;

FIG. 14 is a front view of a third implementation of a collar, in accordance with one embodiment of the present invention;

FIG. 15 is a front view of a fourth implementation of a collar, in accordance with one embodiment of the present invention;

FIG. 16 is a front view of one implementation of a selector knob, in accordance with one embodiment of the present invention;

FIG. 17 is a partial front section view of the handle, the inner support and the inner disc with the locking mechanism in the engaged position;

FIG. 18 is a partial front section view illustrating the locking mechanism in the unengaged position;

FIG. 19 is a representative front section view of a portion of the handle and the inner support;

FIG. 20a is an isometric view of a locking pin, in accordance with one embodiment of the present invention;

FIG. 20b is a front view of the locking pin of FIG. 20a;

FIG. 20c is a side view of the locking pin of FIG. 20a;

FIG. 20d is a rear view of the locking pin of FIG. 20a;

FIG. 20e is a top view of the locking pin of FIG. 20a;

FIG. 21a is an isometric view of a plunger, in accordance with one embodiment of the present invention;

FIG. 21b is a side view of the plunger of FIG. 21a;

FIG. 21c is a front view of the plunger of FIG. 21a;

FIG. 21d is a top view of the plunger of FIG. 21a;

4

FIG. 22 is an isometric view of one implementation of an adjustable dumbbell in engagement with one implementation of a support base;

FIG. 23 is a partial isometric view of one implementation of an adjustable dumbbell, in accordance with one embodiment of the present invention;

FIG. 24 is a section view of one implementation of an adjustable dumbbell in engagement with one implementation of a support base;

FIG. 25 is an isometric view of one implementation of a support base;

FIG. 26 is a section view of one implementation of an adjustable dumbbell in engagement with one implementation of a support base;

FIG. 27 is a partial section view primarily showing one implementation of an inner support and an inner disc, with the locking pin not engaged with the inner disc;

FIG. 28 is a section view of one implementation of an adjustable dumbbell removed from one implementation of a support base;

FIG. 29 is a partial section view primarily showing one implementation of the inner support and the inner disc with the locking pin in partial engagement with the inner disc;

FIG. 30 is an isometric view of a locking pin, in accordance with one embodiment of the present invention;

FIG. 31a is a second isometric view of the locking pin of FIG. 30;

FIG. 31b is a front view of the locking pin of FIG. 31a;

FIG. 31c is a side view of the locking pin of FIG. 31a;

FIG. 31d is a rear view of the locking pin of FIG. 31a;

FIG. 31e is a top view of the locking pin of FIG. 31a;

FIG. 32 is an isometric view of a plunger, in accordance with one embodiment of the present invention;

FIG. 33a is a second isometric view of the plunger illustrated in FIG. 32;

FIG. 33b is a front view of the plunger of FIG. 33a;

FIG. 33c is a side view of the plunger of FIG. 33a;

FIG. 33d is a top view of the plunger of FIG. 33a;

FIG. 34 is a section view of an alternative implementation of a base support, in accordance with one embodiment of the present invention;

FIG. 35 is an exploded isometric view of the base support structure shown in FIG. 34;

FIG. 36 is a section view of an alternative implementation of a base support, in accordance with one embodiment of the present invention

FIG. 37 is an exploded isometric view of the base support structure shown in FIG. 36;

FIG. 38 is an isometric view of a base support structure of FIG. 36;

FIG. 39 is a section view of a base structure of and an adjustable dumbbell engaged therewith, in accordance with one embodiment of the present invention;

FIG. 40 is an exploded isometric view of a selector knob, in accordance with one embodiment of the present invention;

FIG. 41 is an isometric view of the assembled selector knob of FIG. 40, showing the outer face of the selector knob;

FIG. 42 is an isometric view of an assembled selector knob of FIG. 40, illustrating the inner face of the selector knob;

FIG. 43 is an isometric view of a number strip, in accordance with one embodiment of the present invention;

FIG. 44 is an isometric view of the number strip of FIG. 43, the selector strip being formed into a generally circular structure;

US 7,261,678 B2

5

6

FIG. 45 is an isometric view of one implementation of a handle, in accordance with one embodiment of the present invention;

FIG. 46 is a front section view of the handle of FIG. 45;

FIG. 47 is an isometric view of an inner support, in accordance with one embodiment of the present invention, the view illustrating the inner surface of the inner support;

FIG. 48 is an isometric view of the inner support of FIG. 47, the view illustrating the outer surface of the inner support;

FIG. 49 is an isometric view of a weight plate, in accordance with one embodiment of the present invention;

FIG. 50 is an exploded isometric view of the weight plate of FIG. 49;

FIG. 51 is an isometric view of a weight plate with an over-molded coating thereon, in accordance with one embodiment of the present invention;

FIG. 52 is an isometric section view of one implementation of a weight plate, in accordance with one embodiment of the present invention;

FIG. 53 is an isometric section view of an alternative weight plate, in accordance with one embodiment of the present invention;

FIG. 54 is an isometric section view of an alternative embodiment of a weight plate, in accordance with one embodiment of the present invention;

FIG. 55 is an isometric view of one implementation of an adjustable dumbbell in engagement with one implementation of a support base, in accordance with one embodiment of the present invention;

FIG. 56 is an isometric view of the adjustable dumbbell and support base of FIG. 55, with the dumbbell in engagement with all of the weight plates; and

FIG. 57 is an isometric view of the dumbbell and support base of FIG. 55, with the dumbbell removed from the support base and in engagement with less than all of the weight plates.

FIGS. 58a and 58b show an alternative embodiment of the rotational control structure between the support disc and the inner disc, to keep the inner disc from rotating with respect to the handle when the dumbbell is in use.

DETAILED DESCRIPTION OF THE INVENTION

An adjustable dumbbell system of the present invention provides an adjustable dumbbell 10 that allows a user to easily select the weight of the dumbbell. The adjustable dumbbell system of the present invention allows the user to place the adjustable dumbbell in a support base 12, turn a selector knob 14 or knobs to engage a desired combination of weights 16, and lift the adjustable dumbbell out of the base support to perform a desired exercise. The adjustable dumbbell will have the desired combination of weights, and the unnecessary weights are left in the base support. Should the user desire a different dumbbell weight, the user places the adjustable dumbbell back in the support base, turns the selector knob to engage the desired weight, and lifts the adjustable dumbbell off of the support base with the desired weight. During exercise-type use, i.e., when the adjustable dumbbell is not in the support base, the adjustable dumbbell is configured such that it is difficult or impossible to turn the selector knob to add or remove weights.

The adjustable dumbbell system includes an adjustable dumbbell 10, such as shown in FIG. 1, and a support base 12, such as shown in FIG. 2. As shown in FIGS. 1 and 7, the adjustable dumbbell 10 includes a handle 18, a pair of inner supports 20, a pair of inner discs 22, a plurality of weights 16 separated by a plurality of collars 24, and a pair of outer selector knobs 14. The adjustable dumbbell 10 includes two end regions that, except as where otherwise described, are generally identical. Thus, when reference is made to one or more parts on one side of the adjustable dumbbell or base, it is to be understood that corresponding on the other side or end region of the adjustable dumbbell or base. The inner support is mounted on the handle adjacent to a central grip portion 26 of the handle. As described in more detail below, the inner support does not rotate with respect to the handle. The inner disc is mounted on the handle immediately distal, or outside, of the inner support 20. The plurality of collars are positioned on the handle and extend distally along the handle 18 from the inner disc. The collars are interlocked together (i.e., with the adjacent collars), and with the inner disc 22, such that the collars and the inner disc rotate together about the handle. The outer selector knob 14 is positioned on the handle at the outer end of the outermost of the adjacent collars 24. The outer selector knob is also interlocked with the adjacent collar so that as the outer selector knob is rotated, the outer selector knob also rotates the collars and the inner disc around the handle. The plurality of weights 16 are spaced between adjacent collars and are selectively engaged by the collars depending upon the orientation of the outer selector knob 14, as is described in more detail below.

The support base 12, shown in FIGS. 2, 24, 25, 26, and others, receives the dumbbell 10, when not in use, and allows a user to adjust the weight of the dumbbell, as well as to hold the weights that are not attached to the dumbbell. Before using the dumbbell 10, the user first determines the weight to be lifted and sets the respective selector knob 14 at each end of the dumbbell 10 while the dumbbell is in the support base 12. The selector knobs cause a pair or combination of pairs of weight plates 16 to be retained on the handle 18. The user then lifts the dumbbell out of the base. Any weight not retained with the adjustable dumbbell is left in the base. As shown in FIGS. 2 and 25, the support base includes a bottom wall 28, a plurality of positioning walls 30, and a pair of plungers 32. The bottom wall supports the adjustable dumbbell and the weights. The positioning walls 30 ensure that the adjustable dumbbell is properly aligned when it is inserted into the support base. Further, the positioning walls hold the weights upright and in the proper location relative to the adjustable dumbbell so that the adjustable dumbbell may be easily inserted into and removed from the support base. The positioning walls 30 are spaced so as to fit between adjacent weights 16 when the dumbbell 10 rests in the support base 12, and to keep any weight not attached to the dumbbell upright when the dumbbell is removed from the support base. The plungers extend upwardly from the support base. Each plunger is positioned to extend into a cavity formed in the inner support 20 of the adjustable dumbbell when the dumbbell is placed in the support base. The plungers 32 deactivate a locking device, as described further below, to allow selection of the different weights when the adjustable dumbbell is in the support base.

Referring to FIGS. 3 and 4, the dumbbell inner support 20 includes a spring-loaded pin 34 locking mechanism that prevents the inner disc 22, the collars 24, and the outer selector knobs 14 from rotating with respect to the handle. When the dumbbell 10 is placed in the support base 12, the plunger 32 retracts the spring-loaded pin locking mechanism so that the outer selector knob can be turned, which in turn rotates the collars and the inner disc, to adjust the weight of

US 7,261,678 B2

7

the adjustable dumbbell. Thus, the weight of the adjustable dumbbell can be adjusted by turning the pair of outer selector knobs 14 to selectively engage or disengage the plurality of weights 16 (on the same respective end of the handle as the knob) with the plurality of collars 24 when the dumbbell 10 is seated in the support base 12.

Further, the adjustable dumbbell cannot, in most instances, be removed from the support base unless the weights 16 are fully engaged or disengaged by the collars. As described in more detail below and referring to FIGS. 5 and 23, the dumbbell includes a plurality of teeth 36 on the inner surface of inner disc 22 that can engage a protrusion 38 of the plunger 32 when the weights are not fully engaged or disengaged by the collars. The teeth extend generally parallel to the axis of rotation of the disc, from the outer rim thereof. The teeth are spaced apart sufficiently to allow the protrusion to pass through when the collars are fully engaged, and to interfere with the movement of the protrusion when the collars are not fully engaged. Note that the holes 40, 42 for receiving the spring-loaded pin 34 and a ball detent 44 are positioned in line with the space between adjacent teeth. However, the holes 40, 42 could be anywhere on the disc 22 as long as they cooperate with the spring-loaded pin as described. When the weights 16 are not fully engaged by the collars, the teeth 36 engage the protrusion 38 of the plunger 32 and prevent the plunger from exiting the cavity of the inner support 20, thus preventing the handle 10 from being removed from the support base 11. When the collars, inner disc and knob are properly aligned in rotation on the dumbbell, the dumbbell can be removed from the support base, and the spring-loaded pin locking mechanism re-engages the inner disc and prevents the inner disc, collars 24, and the outer selector knob 14 from rotating with respect to the handle 18 and the inner support. Thus, when out of the base, the weights 16 are locked into place and the outer selector knob cannot be turned to select a different combination of weights.

Thus, when the dumbbell 10 is set into the base 12, the plunger 32 engages the spring-loaded pin 34 to disengage it from the inner disc 22. The selector knob 14 can then be rotated to rotate the collars 24 to select the desired weight. The ball detents 44 help the user tell when he or she is at a secure rotation location and not between locations for selecting weight plates 16. The knob also has markers to indicate that the desired weight has been selected. This is described in greater detail below. In between weight selection locations, the teeth 36 on the inner disc 22 are engaged with the protrusion 38 of the plunger, thus keeping the inner disc, and the dumbbell, in the base. When the knob is properly indexed, the protrusion passes between the teeth and allows the dumbbell to be removed from the base. As the dumbbell is removed from the base, the plunger disengages the spring-loaded pin 34 and allows the pin to be biased into the matching hole on the inner disc 22 to keep the inner disc from rotating relative to the support plate 20 and the dumbbell 10. This also keeps the collars 24 and selector knob 14 from turning since they are both keyed to the rotation of the inner disc 22. Thus, when the dumbbell is removed from the base 12, the selector knob cannot be rotated to change the weight selection and cause the weight plates 16 on the dumbbell to become dislodged.

As shown in FIG. 6, the handle 18 of adjustable dumbbell 10 includes a central grip portion 26 and a pair of end portions 46, one on either end of the grip portion. The grip portion of the handle is preferably machined and provides a comfortable, ergonomic, and non-slip surface allowing a user to securely grip the adjustable dumbbell. The grip

8

portion further includes a pair of flanges 48 adjacent to the end portions. The flanges extend beyond the outer periphery 50 of the end portions and provide a support surface 52 for the inner support 20. The end portions 46 also include keys 54 that extend beyond the outer periphery of the end portions. The keys extend radially from the handle's longitudinal center line, and extend a ways along the length to fit into a key way in the support plate 20 in order to keep the support plate from rotating on the handle 18. As used herein, the terms inner and proximal refer to a direction toward the central grip portion 26 of the handle, and the terms outer and distal refer to a direction toward the terminal ends 56 of the end portions 46 of the handle.

The handle is generally symmetrical about the midpoint of the central grip portion. The central grip portion is slightly bulged to provide a comfortable and ergonomic surface to grasp. As such, extending distally from the center of the grip portion 26, the handle 18 has a generally decreasing radius. The radius of the handle begins increasing at the flange 48 until the support surface 52 where the handle has a step decrease in the radius. This step decrease in radius extends around the handle except for one section, which forms the key 54. Distal of the key, the handle has a generally constant radius until the terminal end 56 of the handle. The area distal the key is adapted to engage cooperating apertures in the inner disc 22 the collars 24, and the outer selector knob 14 allowing those elements to slide onto the end portions.

As shown in FIG. 3, the inner support 20 defines a generally centrally-formed aperture, such as an inner opening 58, for receiving an end portion of the handle 18. Each support plate is seated on one end portion 46 of the handle adjacent to the flange 48 of the central grip portion 26. The aperture of the inner support further includes a keyway 60 that receives the key 54 from the end portion of the handle and prevents the inner support from rotating with respect to the handle. Alternatively, the handle may include a keyway for receiving a key mounted on the inner support place. The inner support 20 also includes a peripheral channel 62 in the outer surface 64 of the inner support. Any other means of anchoring the inner support to the handle known in the art may be used. The inner support, for example, may be anchored to the handle through the use of pins 66 as shown in FIG. 19. The housing of the inner support plate 20 is preferably constructed of a nylon-glass reinforced material, although it may be constructed of any other suitable material, such as metal or the like.

As discussed above, the inner support includes the spring-loaded ball or ball detent 44 and the spring-loaded pin 34 that are biased to extend from within the inner support beyond the outer surface 64 of the inner support. FIG. 4 shows a cross-sectional view of the inner support 20 showing the spring-loaded ball 44 and the spring-loaded pin 34 generally biased to an outer position and extending partially through holes 68 and 70, respectively, in the outer surface 64 of the inner support. The inner support further includes a cavity 72 and a cover plate 74. The spring-loaded pin is housed within the cavity of the inner support and is generally biased to extend from the cavity through the hole 70. The cover plate is removably attached with the inner surface 78 of the inner support, and provides access to the spring-loaded pin 34 in the cavity, and further provides a surface for the spring to engage and bias the spring-loaded pin outwardly from the outer surface.

Referring still to FIG. 4, the spring-loaded pin 34 is housed within the cavity 72 between the cover plate 74 and the outer surface 64 of the inner support 20. The spring of the spring-loaded pin is seated against the cover plate. The

US 7,261,678 B2

9

pin 80 (shown separately in FIGS. 20A-20E) includes knob 82 that extends into the spring coil 84. The spring generally biases the pin 80 toward the hole 70 in the outer surface such that, absent any counteracting forces, the pin extends through the hole 70 for engagement of one of the apertures 40 of the inner disc 22.

Referring still to FIG. 4, the spring-loaded ball 44 is housed within a separate cavity 86 of the inner support 20 directly above the cavity 72. The spring 88 of the spring-loaded ball is seated against the inner surface of the cavity 86. The ball 89 is in engagement with the other end of the spring and is thus generally biased toward the hole. As such, the ball 44 is adapted to engage one of the detent recesses 42 of the inner disc 22. The ball is retained by the inner disc. During assembly, i.e., before the inner disc may hold the ball in place, the ball is held by grease used to lubricate the ball detent.

As introduced above, FIG. 5 shows a isometric view of the inner surface 90 of the inner disc 22. The inner disc includes teeth 36, apertures 40, detent recesses 42, and a generally centrally located inner opening 92 for receiving the handle 18. The teeth, apertures, and detent recesses are arranged concentrically on the inner disc. The teeth are arranged around the perimeter 94 of the inner disc 30 and extend generally 90 degrees inwardly from the perimeter edge of the inner disc. The detent recesses are spaced radially inwardly from the apertures. The apertures and the detent recesses are angularly aligned with each other and are angularly offset from the teeth when the selector knob 14 is properly oriented to select the desired weight. This allows the protrusion 38 to pass between the teeth 32 and let the dumbbell 10 be removed from the base 12. When assembled, the teeth of the inner disc 22 extend into the peripheral channel 62 of the inner support 20 (see FIG. 23). As described above, the inner disc is interlocked to the collars 24 and the outer selector knob 14. When the dumbbell is received in the base, as the weight of the dumbbell is being selected by rotating the outer selector knob, the inner disc is rotated about the handle 18 with respect to the inner support 20, which is fixed with respect to the handle. The spring-loaded ball 44 engages the detent recesses 42 to allow the user to clearly identify when the outer selector knob has been turned one full setting as described in more detail below. When removed from the base, the spring-loaded pin 34 of the inner support engages the corresponding aperture 40 to lock the inner support 20 to the inner disc 22 so that the outer selector knob 14, the collars 24, and the inner disc cannot rotate with respect to the inner support and the handle 18.

FIG. 7 shows a cross-sectional view of the adjustable dumbbell 10 taken along the longitudinal centerline of the handle 18 without any weights 16 attached to the handle. As shown in FIG. 7, the plurality of collars 24 and the outer selector knob 14 are mounted on both of the end portions 46 of the handle and are arranged distally from the inner support 20 and the inner disc 22. The inner disc, each of the collars, and the outer selector knob are interlocked and rotatably mounted on the end portion of the handle. Thus, by turning the outer selector knob 14, each of the collars 24 and the inner disc 22 are rotated together around the end portion 60 46 of the handle 18. As described above, however, the inner support remains stationary with respect to the handle, and the teeth 36 of the inner disc rotate within the peripheral channel 62 of the inner support.

FIG. 8 shows an isometric view of the inner surface of one of the collars 24. The collar includes one or more peripheral flanges 96, inner opening 98, extension sleeve 100, and a

10

plurality of insert tabs 102. As described in more detail below, the one or more peripheral flanges either engage and lift a weight 16 from the support base 12, or do not engage a weight plate and allow it to remain in the support base depending upon the orientation of the collar. The inner opening and extension sleeve receive the end portion 46 of the handle 18 and allow for the collar 24 to rotate with respect to the handle. The extension sleeve extends from the inner surface 104 of the collar and allows for separation between the individual collars to form a space between adjacent collars to receive the weights 16. The extension sleeve 100 defines a terminal face 106. The insert tabs 102 extend axially inward from the terminal face of the extension sleeve, preferably from the outer periphery of the terminal face, for engagement with the outer surface of an adjacent collar or the inner disc 22 as described in more detail below.

FIG. 9 shows a isometric view of the outer surface of one collars 24. As shown in FIG. 9, the outer surface 108 of the collar includes a plurality of indentations to receive the inserts 102 of an adjacent collar. The inserts and the indentations 110 are keyed so that the collars can only be interconnected in one orientation. In the embodiment shown in FIGS. 8 and 9, for example, the insert 102a and corresponding indentation 110a are wider than the inserts 102b and 102c and indentations 110b and 110c so that the collars can only be connected in a particular orientation. In one particular embodiment, for example, the individual collars may be keyed such that the collars may only be assembled in one particular order along the dumbbell handle 18 in addition to being assembled in only one particular orientation with respect to one another.

FIG. 10 shows a front view of a weight 16 for the adjustable dumbbell 10. Overall, the weight has a generally round shape. The weight further forms a channel 112 for receiving the extension sleeve 100 of the collars 24. The channel terminates at its inner end at semi-circular arc 114 having a constant radius R. The channel also has a constant width W equal to the diameter D of the semi-circular arc. The channel allows the extension sleeve of the collar to turn within the channel and to only move the weight incidentally through friction. At its outer end, the channel 112 necks out towards the periphery 116 of the weight 16 for receiving a stabilizing bar 118 (also referred to as bridge) (shown in FIGS. 7 and 22). The stabilizing bar extends across the weight portion of the channels of the weights to secure the weights and prevent the weights from rotating with the collars 24 during weight selection. As shown in FIGS. 1 and 7, the weights 16 extend above the height of the collars so that the bar does not interfere with the rotation of the collars. The bar can be attached at one end to the inner support 20 and/or to the handle 18 so that the bar does not rotate with the inner disc 22 or the collars. On the opposite end, the bar 118 extends into a peripheral groove 120 of the outer selector knob 14 (shown in FIG. 7). As the outer selector knob 14 rotates, the bar 118 is positioned within the peripheral groove 120 without rotating.

Still referring to FIG. 10, an engagement tab 122 extends from the outer surface of the weight 16 to engage a particular peripheral flange 96 of one of the collars 24. The particular peripheral flange is determined by the desired weight to be lifted by the dumbbell 10. FIG. 11 further shows a cross-sectional view of the weight shown in FIG. 10 taken along section line A-A. As shown in FIG. 11, the tab extends from the front surface 124 of the weight for engagement with the peripheral flanges of the collars.

US 7,261,678 B2

11

The peripheral flanges 96 of the collars 24 are clocked to the tabs 122 of the weights 16, i.e., there is a known defined rotational relationship between the peripheral flanges and tabs. A certain orientation of the outer selector knob 14 will engage none, one, or more particular peripheral flanges to the tabs of the weights to allow the user to select a predefined amount of weight.

The number of incremental weight selections available on the dumbbell 10 can be varied by varying the minimum width of the peripheral flanges 96 or by varying the circumference available for the peripheral flanges. For example, if the minimum width of the peripheral flanges is decreased, the number of peripheral flanges that may be placed around a constant circumference may be increased, thus increasing the number of incremental weight selections that may be made. Alternatively, by increasing the radius of the peripheral flange 96 from the center of the collar 24, the circumference available for positioning flanges is increased and the number of constant width peripheral flanges that may be placed around the circumference of the collar is increased, thus increasing the potential number of incremental weight selections that may be made. Although the peripheral flanges are preferably located along the periphery of the collar 24 so that the circumference available to position the peripheral flanges 96 is maximized, the flanges may be located either at the periphery of the collar or may be located any distance away from the periphery of the collar towards the center of the collar. In this embodiment, for example, the collar can have an outer diameter of 84 mm and a radius from the center of the collar to the peripheral flange of 32.5 mm.

Referring again to the weight plate 16 shown in FIGS. 10 and 11, in one embodiment, for example, the tab 122 has a width 125 of about 13 mm and height 126 of about 9.5 mm. With this weight plate, the minimum spacing between the peripheral flanges 96 of the collars 24 is at least 14 mm to allow the tab 38 to slide through the spacing when the weight is not selected.

FIG. 12 shows a front view of a first selection collar 24a located adjacent the inner disc 22 on the end portion 46 of the handle 18. As shown in FIG. 12, the first selection collar includes one flange 96a extending around a portion of the periphery of the first selection collar. In the particular embodiment described above wherein the collars 24 have an outer diameter of 84 mm and a radius from the center to the peripheral flange 96 of 32.5 mm, for example, the flange may extend around the periphery of the first selection collar 24a for an angle α of approximately 192 degrees. The extension sleeve 100 of the first selection collar is seated within the channel 112 of the first weight 16a of the adjustable dumbbell 10 (see FIG. 1). As the outer selector knob 14 is rotated, the peripheral flange 96a rotates around the end portion 46 of the handle 18. If the first weight 16a is selected by the user, the peripheral flange is positioned under the tab 122 of the first weight. Thus, when the adjustable dumbbell is lifted out of the support base 12, the peripheral flange 96a of the first selection collar 24a engages the tab 122 of the first weight 16a and lifts the first weight out of the support base. If the first weight 16a is not selected, however, the peripheral flange 96a of the first selection collar 24a is not under the tab 122 of the first weight. As the adjustable dumbbell 10 is lifted out of the support base 12, the first weight remains in the support base, supported by the positioning walls 30 of the support base.

FIG. 13 shows a front view of a second selection collar 24b located on the end portion 46 of the handle 18 immediately distal of the first selection collar 24a. As shown in FIG. 13, the second selection collar includes one flange 96b

12

extending around a portion of the periphery of the second selection collar. In the particular embodiment described above wherein the collars 24 have an outer diameter of 84 mm and a radius from the center to the peripheral flange 96 of 32.5 mm, for example, the flange may extend around a periphery of the second selection collar 24b for an angle β of approximately 96 degrees. The extension sleeve 100 of the second selection collar is seated within the channel 112 of the second weight 16b and is interlocked with the first selection collar 24a so that the collars turn together. As the outer selector knob 14 is rotated, the peripheral flange 96b rotates around the end portion 46 of the handle 18. If the second weight 16b is selected by the user, the peripheral flange 96b is positioned under the tab 122 of the second weight 16b . Thus, when the adjustable dumbbell 10 is lifted out of the support base 12, the peripheral flange 96b of the second selection collar 24b engages the tab 122 of the second weight 16b and lifts the second weight out of the support base. If the second weight is not selected, however, the peripheral flange of the second selection collar is not under the tab of the second weight and the outer end portion of the handle passes out of the channel 112 without lifting the second weight out of the support base. As the adjustable dumbbell is lifted out of the support base 12, the second weight 16b remains in the support base, supported by the positioning walls 30 of the support base.

FIG. 14 shows a front view of a third selection collar 24c located on the end portion 46 of the handle 18 immediately distal of the second selection collar 24b. As shown in FIG. 14, the third selection collar includes three flanges 96c, 96d, and 96e extending around a portion of the periphery of the third selection collar 24c. In the particular embodiment described above wherein the collars 24 have an outer diameter of 84 mm and a radius from the center to the peripheral flange 96 of 32.5 mm, for example, the flanges 96c, 96d, and 96e may extend around a periphery of the third selection collar 24c for angles γ, δ, and ε of approximately 72, 48, and 72 degrees, respectively. The extension sleeve 100 of the third selection collar 24c is seated within the channel 112 of the third weight 16c of the adjustable dumbbell 10 and is interlocked to the second selection collar 24b. As the outer selector knob 14 is rotated, the three peripheral flanges 96c, 96d, and 96e rotate around the end portion of the handle. If the third weight 16c is selected by the user, one of the peripheral flanges 96c, 96d, and 96e is positioned under the tab 122 of the third weight 16c. Thus, when the adjustable dumbbell is lifted out of the support base 12, one of the peripheral flanges 96c, 96d, and 96e of the third selection collar 24c engages the tab 122 of the third weight 16c and lifts the third weight out of the support base. If the third weight is not selected, however, none of the peripheral flanges 96c, 96d, and 96e of the third selection collar 24c is under the tab 122 of the third weight 16c and the outer end portion 46 of the handle 18 passes out of the channel 112 without lifting the third weight out of the support base 12. As the adjustable dumbbell 10 is lifted out of the support base, the third weight 16c remains in the support base, supported by the positioning walls 30 of the support base.

FIG. 15 shows a front view of a fourth selection collar 24d located on the end portion 46 of the handle 18 immediately distal of the third selection collar 24c. As shown in FIG. 15, the fourth selection collar includes five flanges 96f, 96g, 96h, 96i, and 96j extending around a portion of the periphery of the fourth selection collar 24d. In the particular embodiment described above wherein the collars 24 have an outer diameter of 84 mm and a radius from the center to the

US 7,261,678 B2

13

14

peripheral flange 96 of 32.5 mm, for example, the flanges 96f, 96g, 96h, 96i, and 96j may extend around a periphery of the fourth selection collar 24d for angles ζ, η, θ, κ, and λ of approximately 48, 24, 24, 48, and 48 degrees, respectively. The extension sleeve 100 of the fourth selection collar 24d is seated within the channel 112 of the fourth weight 16d of the adjustable dumbbell 10 and is interlocked with the third selection collar 24c. As the outer selector knob 14 is rotated, the five peripheral flanges 96f, 96g, 96h, 96i, and 96j rotate around the end portion 46 of the handle 14 If the fourth weight 16d is selected by the user, one of the peripheral flanges 96f, 96g, 96h, 96i, and 96j is positioned under the tab 122 of the fourth weight 16d. Thus, when the adjustable dumbbell 10 is lifted out of the support base 12, one of the peripheral flanges 96f, 96g, 96h, 96i, and 96j of the fourth selection collar 24d engages the tab 122 of the fourth weight 16d and lifts the fourth weight out of the support base. If the fourth weight is not selected, however, none of the peripheral flanges 96f, 96g, 96h, 96i, and 96j of the fourth selection collar is under the tab 122 of the fourth weight and the outer end portion 46 of the handle passes out of the channel 112 without lifting the fourth weight out of the support base 12. As the adjustable dumbbell is lifted out of the support base, the fourth weight 16d remains in the support base, supported by the positioning walls 30 of the support base.

FIG. 16 shows a front view of the outer selector knob 14 located at the distal end of the end portion 46 of the handle 18 immediately distal of the fourth selection collar 24d. As shown in FIG. 16, the outer selector knob includes five flanges 96k, 96l, 96m, 96n, and 96o extending around a portion of the periphery of the outer selector knob. In the particular embodiment described above wherein the collars 24 have an outer diameter of 84 mm and a radius from the center to the peripheral flange 96 of 32.5 mm, for example, the flanges 96k, 96l, 96m, 96n, and 96o may extend around a periphery of the outer selector knob 14 for angles μ, ν, o, ρ, and Ω of approximately 24, 24, 24, 24, and 24 degrees, respectively. The extension sleeve 100 of the outer selector knob is seated within the channel 112 of the fifth weight 16e of the adjustable dumbbell 10 and is interlocked with the fourth selection collar 24d. As the outer selector knob 14 is rotated, the five peripheral flanges 96k, 96l, 96m, 96n, and 96o rotate around the end portion 46 of the handle 18. If the fifth weight 16e is selected by the user, one of the peripheral flanges 96k, 96l, 96m, 96n, and 96o is positioned under the tab 122 of the fifth weight. Thus, when the adjustable dumbbell is lifted out of the support base 12, one of the peripheral flanges 96k, 96l, 96m, 96n, and 96o of the outer selector knob engages the tab 122 of the fifth weight and lifts the fifth weight out of the support base. If the fifth weight 16e is not selected, however, none of the peripheral flanges 96k, 96l, 96m, 96n, and 96o of the outer selector knob is under the tab 122 of the fifth weight 16e and the outer end portion 46 of the handle 18 passes out of the channel 112 without lifting the fifth weight out of the support base 12. As the adjustable dumbbell 10 is lifted out of the support base, the fifth weight remains in the support base, supported by the positioning walls 30 of the support base.

If the selection collars 24 shown in FIGS. 12-16 are used on each side of the dumbbell 10, the outer selector knob 14 has to be turned in the same direction, e.g., clockwise, to select the same weight setting on both sides. This requires turning one outer selector knob toward the user and the other outer selector knob away from the user. If desired, however, one skilled in the art would readily appreciate that mirror image collars could be used on opposite ends of the adjust-able dumbbell so that the outer selector knobs are both turned toward the user or are both turned away from the user in order to select the same weight setting on both ends.

As described above, the adjustable dumbbell 10 includes the spring-loaded pin 34 locking mechanism to secure the weights 16 in place when the pin is engaged with the inner disc 22, and to allow the weight of the dumbbell to be adjusted when the pin is disengaged from the inner disc. FIG. 17 shows a partial cross-section view of the adjustable dumbbell with the spring-loaded pin locking mechanism engaged in one of the apertures 40 of the inner disc and wherein the spring-loaded ball 44 is seated within one of the detent recesses 42 of the inner disc. When the spring-loaded pin is engaged as shown in FIG. 17, the spring-loaded pin locks the inner disc by engaging one of the plurality of apertures of the inner disc and prevents the inner disc from rotating. Since the inner disc 22 is interlocked with the collars 24 and the outer selector knob 14, the spring-loaded pin 34 secures each weight 16 by preventing the peripheral flanges 96 of the collars 24 from rotating with respect to the tabs 122 of the weights. In some implementations, the spring-loaded pin in combination with the stabilizing bar 118 (see FIG. 7) ensures that the weights are secured to the adjustable dumbbell 10 and stabilized during use and selec-tion. The receiving hole 40 is positioned on the inner disc 22 so that the pin is oriented with the particular hole only when the collars 24 are fully engaged with the desired weight plates 16. The pin will only lock with the inner plate when the collars and weight plates are properly oriented.

FIG. 18 shows a cross-sectional view of the adjustable dumbbell 10 with the spring-loaded pin 34 locking mecha-nism disengaged from the inner disc 22 and wherein the outer selector knob 14 is between settings, i.e., the spring-loaded ball 44 is not seated in a detent recess 42 of the inner disc. Since the spring-loaded pin is disengaged from the inner disc, the inner disc is free to rotate with respect to the inner support 20 and, thus, the outer selector knob may be rotated to adjust the weight of the dumbbell. As shown in FIGS. 2 and 18, the plunger 32 extends upwardly from the bottom wall to engage the bottom of the pin structure. The plunger includes an upper sloped cam surface 130 and the protrusion 38 that extends from the plunger 32 outwardly towards the end of the support base 12. The plunger is positioned on the support base such that the protrusion extends into the cavity 72 of the inner support 20 when the adjustable dumbbell 10 is placed onto the support base. As shown in FIG. 18, the upper sloped cam surface of the plunger contacts the downwardly angled surface 132 of the spring-loaded pin 34 inside the cavity of the inner support. As the adjustable dumbbell is lowered onto the support base, the upper sloped cam surface 130 of the plunger 32 engages the downwardly angled surface of the spring-loaded pin and retracts the spring-loaded pin from its engaged position in an aperture 40 of the inner disc 22 and pulls the pin 80 out of the aperture of the inner disc. When the spring-loaded pin is retracted from the aperture of the inner disc, the inner disc is unlocked and can rotate with respect to the inner support 20, thus allowing the weight selection to be made.

Thus, as the adjustable dumbbell 10 is lowered onto the support base 12, the plunger 32 extends into the cavity 72 of the inner support 20. The upper sloped cam surface 130 of the plunger engages the downwardly angled surface 132 of the spring-loaded pin 34 and retracts the spring-loaded pin from the aperture 40 of the inner disc 22 allowing the inner disc to rotate with respect to the inner support. In this position, the weight of the dumbbell can be adjusted by rotating the outer selector knob 14. When the dumbbell is

US 7,261,678 B2

15

removed from the support base, however, the upper sloped cam surface of the plunger is disengaged from the downwardly angled surface of the spring-loaded pin of the inner support. The spring 84 pushes the pin 80 outwardly to its extended, biased position where it engages one of the plurality of apertures of the inner disc preventing the inner disc from rotating with respect to the inner support 20 (assuming the hole 40 is properly aligned with the pin 34). Thus, when the dumbbell 10 is removed from the support base 12, the spring-loaded pin engages one of the apertures 40 of the inner disc 22 and prevents the inner disc, the collars 24, and the outer selector knob 14 from rotating with respect to the inner support 20 and the handle 18.

The respective angles of the upper sloped cam surface 130 of the plunger 32 and the downwardly angled surface 132 of the spring-loaded pin 34 determine how far the spring-loaded pin is retracted from its outward, biased position. In one embodiment, for example, the upper sloped cam surface of the plunger and the downwardly angled surface of the spring-loaded pin is sloped at an angle of about 40 degrees. Further, the length of the protrusion 38 of the plunger extends from the body of the plunger is about 5 mm. The protrusion may be slightly curved to match the curvature of the teeth 36 that extend from the perimeter of the inner disc 22. FIGS. 20A-20E show one implementation of a pin of FIG. 18. FIGS. 21A-21E show one implementation of a plunger.

The spring-loaded ball 44 engages a detent recess 42 to indicate when the inner disc 22 has been turned to a position such that one or more weights are fully engaged, i.e., one or more of the peripheral flanges 96 of the collars 24 are fully engaged with the tabs 122 of the weights 16. Note, in some implementations, the adjustable dumbbell 10 may be arranged such that no weights are engaged. Also, in some implementations, the spring-loaded ball and detent recess make an audible and/or other sensory feedback to the user when the weights have been properly secured by the peripheral flanges of the collars. This feature may be helpful for a user to determine the proper position of the weight selector knob 14.

As described above with reference to FIG. 5, the detent recesses 42 of the inner disc 22 are angularly offset from the teeth 36 of the inner disc. Thus, when the spring-loaded ball 44 is seated within one of the detent recesses as shown in FIG. 17, none of the teeth of the inner disc extend into the cavity 72 of the inner support 20. In this orientation, the plunger 32 of the support base 12 is free to move into or out of the cavity 72 of the inner support 20 and thus the teeth 36 do not engage the protrusion 38, which would keep the dumbbell 10 from disengaging from the base. Since the detent recesses 42 are aligned with the apertures 40 of the inner disc 22, the spring-loaded pin 34 is also aligned to engage one of the apertures of the inner disc when the spring-loaded ball 44 is seated within one of the detent recesses. Thus, as the plunger exits the cavity of the inner support, i.e., the dumbbell is removed from the support base, the spring-loaded pin is aligned with one of the apertures of the inner disc and the bias of the spring pushes the pin into the aperture of the inner disc.

As shown in FIG. 18, however, if the spring-loaded ball 44 is not seated within one of the detent recesses 42, i.e., the collars 24 of the adjustable dumbbell are between settings and the peripheral flanges 96 of the collars are not fully engaged with the tabs 122 of the selected weights 16, one of the offset teeth 36 of the inner disc 22 protrudes into the cavity 72 of the inner support 20. In this case, the plunger 32 cannot be removed from the cavity of the inner support, i.e.,

16

the dumbbell 10 cannot be removed from the support base 12, because the tooth locks the protrusion 38 of the plunger within the cavity. Thus, the dumbbell can only be removed from the support base if the spring-loaded ball detent 44 is seated within one of the detent recesses 42 and the flanges 96 of the collars 24 are fully engaged with the tabs 122 of the weights 16. Or, the full engagement of the flanges of the collars and the weight plates can be indicated in other ways than the spring detents, such as by a precise marking of the selection knob 14 orientation or other means. A position strip for use in indicating the selected orientation of the selector knob is described in greater detail below.

In the embodiment shown in FIG. 1, the adjustable dumbbell 10 allows for adjustments in weight from 5 pounds to 52.5 pounds. In this embodiment, the combined weight of the adjustable dumbbell 10 without any weights 16 attached is 5 pounds; the first weight 16a positioned between the inner disc 22 and the second selection collar 24a (first) or 24b (second) is a 7.5 pound weight; the second weight 16b positioned between the first and second selection collars 24a and 24b, respectively, is also 7.5 pounds; the third weight 16c positioned between the second and third selection collars 24b and 24c, respectively, is 5 pounds; the fourth weight 16d positioned between the third and fourth selection collars 24c and 24d, respectively, is 2.5 pounds; and the fifth and outer weight 16e positioned between the fourth selection collar 24d and the outer selector knob 14, respectively, is 1.25 pounds. This arrangement allows for fifteen incremental weights of 5, 7.5, 10, 12.5, 15, 17.5, 20, 22.5, 25, 30, 35, 40, 45, 50, and 52.5 pounds that may be selected for the adjustable dumbbell 10. The weights 16 are preferably arranged such that the weights range from the heaviest weights closest to the central grip portion 26 of the handle 18 and the lightest weights furthest from the central grip portion of the handle. The weights could also be arranged in any other order as desired, with the appropriate positioning of the collars 24 to provide for the proper weight selection.

An alternative embodiment of an adjustable dumbbell 10 employing an alternative spring-loaded pin 34 locking mechanism is shown in FIGS. 25 through 33D. Referring first to FIGS. 27 and 29, in this embodiment, the dumbbell 210 includes a spring-loaded pin 212 locking mechanism, a plunger 214, and a retaining bar 216. Referring next to FIG. 25, the support base 218 includes an engagement surface 220 and a protrusion 222. The shoulder engagement surface engages the plunger housed in the inner support 224 of the dumbbell to disengage the spring-loaded pin locking mechanism from the inner disc 226 when the dumbbell is located on the support base. The shoulder engagement surface also protects the protrusion from being inadvertently broken off or otherwise damaged. The protrusion 222, similar to the protrusion 38 described above, extends into the peripheral channel 228 of the inner support for selective engagement with the teeth 230 of the inner disc 226 when the weights 16 are not fully engaged or disengaged by the collars 232.

Similarly to the protrusion and locking mechanism described above, when engaged, the spring-loaded pin 212 locking mechanism prevents the inner disc 226, the collars 232, and the outer selector knob 234 from rotating with respect to the handle 236. When the dumbbell 210 is placed in the support base 218, the engagement surface 220 contacts the plunger 214 and retracts the spring-loaded pin locking mechanism so that the outer selector knob can be turned to adjust the weight of the adjustable dumbbell. Thus, the weight of the adjustable dumbbell can be adjusted by turning the pair of outer selector knobs to selectively engage

US 7,261,678 B2

**17**

or disengage the plurality of weights 16 with the plurality of collars when the dumbbell is seated in the support base.

FIGS. 28 and 29 show cross-sectional views of the adjustable dumbbell 210 with the spring-loaded pin 212 locking mechanism engaged in one of the apertures 238 of the inner disc 226 and wherein the spring-loaded ball 240 is seated within one of the detent recesses 242 of the inner disc. When the spring-loaded pin is engaged as shown in FIGS. 28 and 29, the spring-loaded pin locks the inner disc by engaging one of the plurality of apertures of the inner disc and prevents the inner disc from rotating. Since the inner disc 226 is interlocked with the collars 232 and the outer selector knob 234, the spring-loaded pin secures each weight by preventing the peripheral flanges of the collars from rotating with respect to the tabs 122 of the weights 16. In combination with the stabilizing bar 118, the spring-loaded pin 212 ensures that the weights are secured to the adjustable dumbbell until the dumbbell is replaced into the support base 218.

FIGS. 26 through 27 show cross-sectional views of the adjustable dumbbell 210 with the spring-loaded pin 212 locking mechanism disengaged from the inner disc 226. Since the spring-loaded pin 212 is disengaged from the inner disc 226, the inner disc is free to rotate with respect to the inner support 224 and, thus, the outer selector knob 234 may be rotated to adjust the weight of the dumbbell 210. As shown in FIGS. 25 and 27 the shoulder engagement surface 220 extends upwardly from the support base 218. The engagement surface extends into the cavity 244 of the inner support to engage the plunger 214 of the inner support. The plunger (or slider) (see, e.g., FIG. 32 and FIGS. 4A-33D) includes a lower engagement surface 246, an upper sloped cam surface 248, and a slot 250. Retaining bar 216 extends through the slot of the plunger and retains the plunger within the cavity of the inner support yet allows the plunger to slide along at least one axis, e.g., vertically, within the cavity of the inner support. As the adjustable dumbbell 210 is lowered onto the support base 218, the engagement surface 220 of the support base contacts the lower engagement surface 246 of the plunger 214 and urges the plunger vertically along the path defined by the slot 250 of the plunger. As the plunger is urged further into the cavity 244 of the inner support 224, the upper sloped cam surface 248 of the plunger is brought into contact with the downwardly angled surface 252 of the spring-loaded pin 212. The upper sloped cam surface of the plunger engages the downwardly angled surface of the spring-loaded pin and retracts the spring-loaded pin from its engaged position in an aperture 238 of the inner disc 226 and pulls the pin 254 out of the aperture of the inner disc (see, e.g., FIG. 27). When the spring-loaded pin 212 is retracted from the aperture of the inner disc, the inner disc is unlocked and can rotate with respect to the inner support.

The adjustable dumbbell may also be configured such that the support base is not required to release the weight plates. In such a configuration, the plunger may be arranged to extend beyond the bottom plane of the adjustable dumbbell so that the plunger will engage a surface, such as a floor or table, if the adjustable dumbbell is set thereon. Upon engagement with the floor or other surface, the plunger is moved into engagement with the locking device to disengage the support plate from the inner disc and thus allow the selector knob and collars to turn freely.

Thus, as the adjustable dumbbell 210 is lowered onto the support base 218, the engagement surface 220 of the support base contacts the lower engagement surface 246 of the plunger 214 and urges the plunger further within the cavity 244 of the inner support 224. As the upper sloped cam

**18**

surface 248 of the plunger engages the downwardly angled surface 252 of the spring-loaded pin 212, the spring-loaded pin retracts from the aperture 238 of the inner disc 226 allowing the inner disc to rotate with respect to the inner support 224. In this position, the weight of the dumbbell 210 can be adjusted by rotating the outer selector knob 234.

When the desired weight has been selected, and the dumbbell is removed from the support base 218, the bias imparted by the spring 256 of the spring-loaded pin 212 urges the spring-loaded pin outwardly towards the inner disc 226. The downwardly angled surface 252 of the spring-loaded pin engages the upper sloped cam surface 248 of the plunger 214 and urges the plunger away from the spring-loaded pin and the upper sloped cam surface of the plunger is disengaged from the downwardly angled surface of the spring-loaded pin. Gravity can also assist in moving the plunger downwardly. The spring 256 pushes the pin 254 outwardly to its extended, biased position where it engages one of the plurality of apertures 238 of the inner disc 226 and prevents the inner disc from rotating with respect to the inner support 224. Thus, when the dumbbell 210 is removed from the support base 218, the spring-loaded pin 212 engages one of the apertures of the inner disc and prevents the inner disc, the collars 232, and the outer selector knob 234 from rotating with respect to the inner support and the handle 236.

As described above, the respective angles of the upper sloped cam surface 248 of the plunger 214 and the downwardly angled surface 252 of the spring-loaded pin 212 determine how far the spring-loaded pin is retracted from its outward, biased position. In one embodiment, for example, the upper sloped cam surface of the plunger and the downwardly angled surface of the spring-loaded pin are sloped at an angle of about 40 degrees from vertical. The protrusion 222 may also be slightly curved to match the curvature of the teeth 230 that extend from the perimeter of the inner disc 226 as described above.

Further, the adjustable dumbbell 210 cannot be removed from the support base 218 unless the weights 16 are fully engaged or disengaged by the collars 232. As also described above, the inner support 224 of the dumbbell includes a plurality of teeth 230 that engage the protrusion 222 when the weights are not fully engaged or disengaged by the collars. When the weights are not fully engaged by the collars, the teeth engage the protrusion and prevent the protrusion from exiting the cavity 244 of the inner support, thus preventing the dumbbell from being removed from the support base. When the collars 232 are properly aligned for the desired weight and the dumbbell 210 is removed from the support base 218, the spring-loaded pin 212 locking mechanism re-engages the inner disc 226 and prevents the inner disc, the collars 232, and the outer selector knob 234 from rotating with respect to the handle 236 and the inner support 224. Thus, the weights 16 are locked into place and the outer selector knob cannot be turned to select a different combination of weights.

In this embodiment, the outer selector knob includes circular-shaped indentations around its perimeter to allow a user to securely grip and turn the outer selector knob while adjusting the weight of the dumbbell. Alternatively, the outer selector knob may include other shaped indentations or protrusions to provide a secure gripping surface for the user. As shown in FIG. 22, for example, the outer selector knob may include V-shaped indentations to provide the gripping surface. Further, the central grip portion of the handle includes an overlay to allow a user to more securely grip the dumbbell during use. In one embodiment, for example, the overlay may include a soft, compliant rubber or rubber-like

US 7,261,678 B2

19                                                                            20

non-slip material. Further, the overlay may include a textured grip surface to allow a user to securely grip the dumbbell. As shown in FIG. 1, for example, the grip overlay may include elongated oval shaped protrusions that extend beyond the outer surface of the overlay to aid a user in gripping the dumbbell. Alternatively, however, the overlay may include depressions or holes that provide a gripping surface.

The base 310 is made of a moldable plastic material sufficiently strong to support the dumbbell 10 when positioned therein. Since the dumbbell is handled while in the base, for instance to change the weight selection, it is helpful for the base to be stable on the support surface on which it sits. In addition, as the dumbbell is being removed from the base, or set back into the base, it is helpful for the base to not move easily during these steps. Since the dumbbell is set into the base with the weight plates 16 being received in their own respective sections, if the base moves easily on the support surface, the removal and return of the dumbbell from and to the base is more difficult.

FIG. 34 is a section view of one example of the base 310 without the dumbbell 10. FIG. 35 shows an exploded view of the base top portion 312, plate 314 with weight bars 316, and base bottom portion 318. Other types, amounts, or positions of weights could be used to anchor the base. The base has a top portion and a bottom portion, and a plate held between the two portions. Fasteners 320 (not shown) extend though the non-skid feet 322, the bottom portion, the plate, and into the top portion to hold the assembly together. The three steel weight bars 316 having a total weight of approximately 5 pounds are attached to and supported by the plate 314 to provide significant weight to the base 310 and keep it from moving around easily on the support surface. Non-skid feet 322, such as made of Kraton®, are positioned on the bottom portion to help keep the base stable on the support surface. The bottom portion 318 of the base has an arcuate curve 324 upward between the ends of the base, which provides some spacing between the base and the support surface. Since the plate supporting the weight bars is rigid and supports the weight blocks itself, the bottom portion of the base does not have to support the weight blocks. FIGS. 34 and 35 also show the shoulder engagement 326 for actuating the release mechanism in the dumbbell 10, as well as the protrusion 328 for locking the inner plate into the base when the weight selector is not in fully-selected position.

FIGS. 36 through 38 show an alternative embodiment of the base 410 for the dumbbell 10 with a different weight structure for anchoring the base on the support surface. FIG. 36 shows an upper base housing 412, a lower base housing 414, and a weight pack 416 positioned and held between the upper and lower base housings. Fasteners 418 extend though the non-skid feet 420, the bottom portion, the weight pack, and into the top portion to hold the assembly together. The weight pack is a blow-molded plastic container structure that contains steel sand and concrete (or any other weight substance, including liquid, ball bearings, sand, or the like). While the blow-molded container is structural, it could be flexible, such as a plastic bag-like container, as long as it sufficiently contains the weight material inside. The bottom portion 414 of the base is flat, and supports the weight of the weight pack 416. The flat bottom, if it flexes a minor amount under the load of the weight pack, will rest on the support surface that the base 410 is sitting on. FIG. 37 shows an exploded view of the alternative embodiment of the base, with the upper housing 412, weight pack 416, lower portion 414 of the housing, and non-skid feet 420. In both embodi-

ments, handles recesses 422 are molded into the ends 424 of the bases to make transporting the dumbbell base, or the combination of the dumbbell and base more convenient. See FIGS. 34-38. Alternatively, handle protrusions could also be formed on the base.

The selector knob 510 for selecting the weight load on the dumbbell 10 is shown in several figures, including FIGS. 39 through 43. There is a knob on each end, and each knob is substantially identical to the other. The selector knob is generally circular, and made of an outer piece 512, an inner piece 514 and a weight selector indicator 516. The outer and inner pieces can be made of glass filled nylon. Most of the knob is covered with an over molded material, such as a polymer or similar material like Kraton® or Santoprene®, preferably having a shore hardness of 60 or so. A selector knob is positioned over each end of the handle bar 518, and secured with a screw fastener 520 or the like, and can be either permanently mounted or removable. Each knob 510 can be rotated with respect to the handle bar. The inner piece 514 of the knob has a collar 522 formed around a central aperture 524 and extending inwardly (towards the middle of the handle) from the inner side for engaging the outer surface of the adjacent collar. The knob collar has keyed protrusions to insert into the corresponding recesses in the adjacent collar to rotationally engage the knob collar with the adjacent collar, as described in more detail herein. See FIGS. 39 and 42. The inner surface of the inner piece 514 also has tabs 526 for engaging the adjacent weight plate 16 as determined by the selection of the load on the dumbbell 10. See FIG. 42. The selector knob 510 has indicator markings formed thereon. In one implementation, the weight selector indicator 516 portion of the knob is a strap 528 formed by molding a material, such as Nylon 6 or the like, into a long piece having several sections 530 connected by a living hinge 532. A raised number 534 is formed on the outer surface 536 of each section. A positioning tab 538 is formed on the inner surface 540 of a few of the sections 530. The positioning tabs are formed such that when the strap 528 is formed into a circle (see FIG. 44) for positioning on the knob 510, the tabs insert into corresponding slots in the knob to insure the proper orientation of the various raised numbers. The position of the strap on the knob is important because the various numbers are the indicators for the selected weight on the dumbbell 10, so the strap should be keyed, or coordinated, with orientation of the knob, which is coordinated with the collar 522 positions, so that the weight selector numbers 534 are accurate. The edges of each of the sections 530 of the strap 528 are beveled. Once the strap is molded, it is positioned on the recessed annular rim 542 formed on the outer side of the inner piece 514 of the knob. See FIG. 40. The tabs 538 are inserted into their respective recesses formed in the annular rim, and the outer piece 512 is mated up and attached to the inner piece 514. The outer piece has a beveled annular recess 544 for receiving the beveled edges of the sections of the strap, thus effectively clamping the strap onto the assembled knob. See FIGS. 39, 41, and 42. The recessed annular rim 542 on the inner piece 514 of the knob 510 can also have a beveled recess on its inner edge to receive the beveled edges of the sections annular and similarly clamp the strap onto the knob.

The over mold material is then applied to the outer surfaces of the knob. Some of the outer surfaces are not covered with the over mold material, such as the inner face of the inner piece 514, which has to connect to the adjacent collar. The gripping surface, however, is covered with the over molded material to enhance the gripping characteristics. The top surface of the numbers on the strap 528 are not

US 7,261,678 B2

**21**

covered with the over mold material so that the weight indicator numbers 534 can be seen in a contrasting color with ease. This is accomplished by insuring that the mold used in applying the over molded material contacts the top surface of the numbers in order to keep the over mold material from covering up the number indicators. The top surface of the numbers are then flush with the top surface of the over molded material, yet can be seen clearly due to the contrast of colors with the over molded material. Other features can also be similarly treated to insure their visibility, for instance the arrows 546 shown in FIG. 41 associated with each number 534 are formed on the inner piece 514 of the knob 510. The over mold is designed to contact the top of the arrows along with the top of the numbers on the strap 528 during the molding process in order to allow the top surface of both the numbers and the arrows to be flush with and visible to the user. The numbers and arrows could be slightly above flush with the material is compressed when contacted with the mold, so that when the mold is removed, the top surfaces of the numbers and arrows expand slightly above the top surface of the over molded material, for an additional tactile feel.

An alternative embodiment of the bar 610 is shown in FIGS. 45 and 46. In FIG. 45, the bar is shown as a cylindrical rod 612 (hollow or solid) extending through a separate grip portion 614. The grip portion is contoured for comfortably handling a load, and can have a few regions of friction enhancing material 616 formed thereon. The grip portion is held to the bar with a pair of set screw fasteners or the like. In one implementation, the grip portion of the bar is formed from steel; however, other suitable materials, such as aluminum, rubber, polymers, and the like may be employed. Two opposing slots 618 are formed on both ends 620 of the grip portion. These slots receive tabs 720 formed on the inner support 710, as described further below, to rotationally engage the inner support with the end of the grip portion of the handle. This keeps the inner disc from rotating independently of the grip portion and bar. Both ends of the rod have threaded holes 622 for receiving the fastener for attaching the end knob 510 to the bar.

An alternative structure for the inner support 710 is shown in FIGS. 47 and 48. The inner support mounts on either end of the grip portion 614 of the bar 610. The inner support shown in FIGS. 47 and 48 includes an inner surface 712 (see FIG. 47) and an outer surface 714 (see FIG. 48). A central aperture 716 is formed through the support, with an enlarged recess 718 formed around the central aperture on the inner surface. Two opposing tabs 720 extend radially into the recess for engaging the corresponding slots 620 on the grip portion 614 of the handle 18, as discussed with respect to the bar 610 structure herein. A cutout area 722 at the top of the support receives and anchors (i.e. by two threaded fasteners) the inner end 724 of the bridge 118 that extends along the tops of the weights 16 to keep the weights from rotating when the dumbbell 10 is removed from the base 410 for use. A bottom edge 728 of the support is flat for engaging the base, and a recess 730 is formed in the support at the flat edge for receiving the shoulder engagement 326 structure and the protrusion 328, as described above. An opening 732 in the recess extends to the inner surface to allow access to the recess for positioning the spring-loaded pin 34 portion of the locking device into the support, as well as for positioning the ball-detent 44 structure in the support. A cutout 734 is formed over the opening to the recess to receive a cover plate 74. The aperture 736 at the bottom of the recess is for the pin 216 that slidably retains the slide engager/plunger 214 (See FIG. 32).

**22**

FIG. 48 shows the outer surface 714 of the inner support. The outer surface shows several bracing features 738 to provide sufficient structural strength to the support. A groove 740 extends around the edge of the support for receiving the teeth on the inner disc, which alternately engage with and disengage from the protrusion 328 during the weight plate selection, as described elsewhere herein. The central aperture 716 for receiving the rod 612 is shown, and a notch 742 is formed at the top of the support for receiving the bridge 118. The recess 744 at the bottom extends into a housing 746 that has three apertures 748 formed therein. The aperture 748a closest to the central aperture is for the ball detent 44 position indicator. The ball 89 and spring 88 are positioned therein from the inner side of the support. The next aperture 748b is for the spring loaded pin 34 portion of the locking device. The pin 80 and the spring 84 are positioned therein from the inner side of the support. The third aperture 748c (referenced as 736 for inner face 712), as mentioned above, is for the pin 216 that retains the slide engager/plunger 214. The plunger is positioned in the lower end of the enclosed portion 750 of the recess 744 from the bottom, and then the retaining pin is press-fit into the receiving apertures to retain the plunger thereon. The plunger extends out of the enclosed part of the recess. The bottom part 752 of the recess is not enclosed, and receives the retaining shoulder 326. The shoulder, when the dumbbell 10 is placed on the base 410, pushes the plunger 214 upward into the enclosed portion of the recess to actuate the locking mechanism, as described elsewhere herein.

A bridge 118 attaches to each inner support 710 and extends outwardly through the slot 112 in each weight 16. The bridge has an outer end 754 that fits into a groove on the inside rim 556 of the knob 510. The outer end of the bridge slides along the groove as the knob is turned so that the knob can be turned during weight selection. The outer end of the bridge may incidentally contact the side of the groove in the knob. Without any contact, the bridge is effectively a cantilever structure. See FIG. 39. The bridge keeps the weights from rotating on the rod 612 during use.

Alternative weight plates 810 for use with the dumbbell 10 are shown in FIGS. 49-54. These weight plates are similar to the weight plate 16 shown and described above (See FIG. 10), which are made of one-piece cast or otherwise formed metal. Instead of being made of one piece, the alternative weight plates are constructed of several layers of metal plate. In one implementation, the weight plates are CR steel and are zinc plated. Some of the layers are primary, having the overall shape, and some of the layers are partial and are attached to the primary plates. For instance, in FIG. 49, the weight plate shown is made of two primary plates 812 and four partial plates 814 attached to the shown side of the primary plates. Partial plates can be attached to both sides of the primary plate(s). The partial plates and primary plates are attached together using rivets 816, with, in one example, four rivets being used as shown in FIG. 49. FIG. 50 shows a 2.5 pound weight plate in exploded view. There are two primary plates, two partial plates (four pieces) to be attached to the inside surface 818, and two partial plates (four pieces) to be attached to the outside surface 820. Four rivets are used to attach the plates together. A tab 822 is welded to the primary plate 812 on the outside surface, just below the central groove 824, for engagement with the corresponding collar tab 826 when a weight selection is made utilizing that particular weight plate 810. See FIGS. 50 and 51.

The plates, once assembled into a single unit, are coated with an over mold material 828. The over mold material may

US 7,261,678 B2

23

be a plastic such as a thermoplastic material such as nylon, glass filled Nylon, Polypropylene, Kraton, or the like, to a thickness of approximately 1.2 mm. FIG. 51 shows the coated weight plate 830. The coated weight plate reduces the noise produced when the weights 810 contact each other, helps to avoid damage to some flooring surfaces, as well as providing a better gripping surface generally. The coating also helps to lower friction between interfacing parts. The over molding material 828 coating can be color coated for the different sized weight plates, or for any other reason. The circle of indentations 832 around the center of the weight plate, as shown in FIG. 51 masks the need for a few holes in the over mold material created during the coating process. The tab 822 turns into a wedge 834 when the over mold material is applied. FIG. 52 is a representative section of a weight plate 810 having four primary plates 812 and two partial plates 814 on either side of the primary plates. The over mold material smoothes out the edges 836 of the weight plate. FIG. 52 is a representative section of the same weight plate of FIG. 51, and shows the four primary plates with the L-shaped tab welded just below central groove 824. FIG. 54 is a representative section of a different weight plate having two primary plates with two partial plates 814a on one side and five partial plates 814b mounted on the other. The plates can be attached together without the use of rivets 816, if desired. They can be welded, glued, clipped around their edges 836, or any other means of connection can be used to hold the plates together. The assembled plate can be used without an over mold material 828 applied. The number of primary plates 812 and partial plates 814 are combined to obtain the desired weight.

FIGS. 55-57 show the alternative embodiment as described above. The dumbbell 910 is shown received in the base 912 in FIG. 55. In this position, since the locking mechanism is de-actuated, the weight selection can be made by rotating the selector knob 914 (which rotates the collars 916 to select the desired weights 918) on each end of the handle 920 to the desired weight load. The weight selection should be the same on both ends (i.e. select "5" on either end) in order to obtain the weight indicated on the dial. However, if desired the knobs can be turned to different weight levels, and a total weight between the two selected weight levels will be achieved. FIG. 56 shows the dumbbell 910, at its maximum weight, lifted out of the base 912. No weight plates 918 are left in the base. With the dumbbell out of the base, the locking mechanism is actuated, and the collars 916 cannot be turned. The bridge 924 keeps the weights from turning or re-orienting with respect to the collars. FIG. 57 shows the dumbbell with a 30 pound weight load lifted out of the base. Six weight plates 918a are left in the base 912, three on either side of the base. The dividers 926 keep the weight plates 918 upright and ready to receive the dumbbell.

FIG. 58A and FIG. 58B depicts two views of an alternative embodiment of a rotational interference device operably coupled with the inner disc for preventing the rotation of the inner disc. The rotational interference device or locking device includes a spring-biased member having a curved surface defining a plurality of serrations or teeth. The inner disc of this embodiment also includes matching serrations along its perimeter. The locking device is biased by the springs towards the perimeter of the inner disc so that, absent a counteracting force, the serrations of the locking device engage the matching serrations of the inner disc to prevent the inner disc from rotating. When the dumbbell is set on the base support or other surface, however, an actuator engages the spring-biased member and pushes the member

24

away from the perimeter of the inner disc. In this manner, the serrations of the spring-biased member are disengaged from the serrations along the perimeter of the inner disc when the dumbbell is in the base or on another surface, thus freeing the inner disc to rotate with respect to the handle and the inner support. When lifted out of the base or off the surface, the member engages the inner disc and keeps it from turning while the dumbbell is in use.

Referring to FIG. 58A, an alternative embodiment of the rotational interference device or locking device (as referenced above) is shown in engagement with the inner disc 1002. A lever arm 1004 is pivotally coupled with the inner support 1006 such that one end of the lever 1004 extends into the recess 1008 and the other end of the lever is engaged with the locking device block 1010. The block 1010 has gear teeth or serrations on its upper surface to engage corresponding gear teeth or serrations on the outer rim of the inner disc 1002. The spring 1012 biases the locking device block 1010 into engagement with the inner disc 1002, and causes the end of the lever arm 1004 in recess 1008 to be oriented downwardly. As shown in FIG. 58B, when the adjustable dumbbell is placed in the support base 1014, the plunger 1016 (or another portion of the base or support surface on which the dumbbell is set) engages the lever arm 1004 to depress the locking device block 1010 against the spring and disengage the inner disc 1002. When the dumbbell is lifted off of the base or support surface, the spring biases the block 1010 into contact with the inner disc and restricts the rotation of the inner disc relative to the inners support 1006 and handle. Alternatively, the locking device may be mounted to the upper portion 1018 of the inner support such that the serrations of the block 1010 are oriented downwardly to engage serrations along the inner disc 1002. In such an implementation, the lever arm 1004 is not included. Instead an elongate slidably supported rod extends between the upper portion of the inner support and the lower portion of the inner support. The upper portion 1018 of the rod is operably coupled with the locking device. When the adjustable dumbbell is placed in the support base, an engagement surface contacts the rod and slides it upwardly. Being coupled with the locking device block, the upward movement of the rod causes the locking device to disengage from the inner disc and thus allow the inner disc to rotate to allow adjustment of the weight selection.

Although preferred embodiments of this invention have been described above with a certain degree of particularity, those skilled in the art could make numerous alterations to the disclosed embodiments without departing from the spirit or scope of this invention. All directional references (e.g., upper, lower, upward, downward, left, right, leftward, rightward, top, bottom, above, below, vertical, horizontal, clockwise, and counterclockwise) are only used for identification purposes to aid the reader's understanding of the present invention, and do not create limitations, particularly as to the position, orientation, or use of the invention. Joinder references (e.g., attached, coupled, connected, mounted and the like) are to be construed broadly and may include intermediate members between a connection of elements and relative movement between elements. As such, joinder references do not necessarily infer that two elements are directly connected and in fixed relation to each other. It is intended that all matter contained in the above description or shown in the accompanying drawings shall be interpreted as illustrative only and not limiting. Changes in detail or structure may be made without departing from the spirit of the invention as defined in the appended claims.

US 7,261,678 B2

25

26

What is claimed is:

1. An adjustable dumbbell system, comprising:

(a) a dumbbell comprising:

(i) a handle;

(ii) an inner support mounted on the handle and substantially fixed relative to the handle;

(iii) an inner disc rotatably mounted on the handle;

(iv) a plurality of intercoupled collars each including at least one flange, the plurality of intercoupled collars being further intercoupled with the inner disc;

(v) a rotational interference device for coupling the inner disc to the inner support;

(vi) a selector device intercoupled with the plurality of intercoupled collars and the inner disc; and

(b) a base support comprising:

(i) a plurality of weights, each weight having a tab;

(ii) a plurality of positioning walls for supporting the weights; and

(iii) an actuator for releasing the rotational interference device, whereby some combination of the plurality of weights are selected by engaging the at least one flange of at least one of the collars with the tab of the weight.

2. The adjustable dumbbell system of claim 1, wherein the rotational interference device comprises a spring-loaded pin.

3. The adjustable dumbbell system of claim 1, wherein the selector device includes an outer selector knob.

4. The adjustable dumbbell system of claim 1, further comprising a rotational indicator for indicating the rotational position of the inner disc.

5. The adjustable dumbbell system of claim 4, wherein the rotational indicator includes a spring-loaded ball and detent recess that engage to indicate a selected weight.

6. A dumbbell and base system comprising:

a variable weight dumbbell having at least one weight plate, and having means for selecting the at least one weight plate on the dumbbell to provide the desired weight load, and means for disabling said means for selecting;

a base for receiving said dumbbell;

means for selectively securing said dumbbell in said base when said means for selecting is not fully engaged; and

wherein said means for selecting is operable only when said dumbbell is positioned in said base and said means for disabling is actuated only when said dumbbell is removed from said base.

7. A dumbbell and base system as defined in claim 6, wherein: said base includes a means for engaging said means for disabling to deactuate said means for disabling when said dumbbell is received in said base.

8. A dumbbell and base system as defined in claim 6, further comprising: means for securing said selected weight plates on said dumbbell.

9. A dumbbell comprising:

a handle having a grip and at least one end;

an inner plate mounted on said handle adjacent said grip;

a support plate rotationally mounted on said handle;

at least one collar rotationally mounted on said handle and coupled with said support plate;

a selector knob rotationally mounted on said handle and coupled with said collar;

a weight plate removably mounted on said handle in relation with said at least one collar;

a means for selectively securing said support plate to said inner plate to resist the rotation of said support plate, collar and selector knob with respect to the inner plate and handle.

10. A dumbbell as in claim 9, wherein:

the inner plate is mounted on said handle in a substantially fixed rotational orientation.

11. A dumbbell as in claim 10, wherein said means for selectively securing comprises:

said inner plate comprising a recess; and

a locking device positioned in said recess and engageable with said support plate to substantially rotationally fix said support plate on said handle.

12. A dumbbell as in claim 11, wherein:

said support plate defines at least one aperture; and

said locking device in said inner plate is selectively received in said aperture to rotationally fix said support plate on said handle.

13. A dumbbell as in claim 12, wherein:

said locking device comprises a post member that moves from a first position positioned in said recess and disengaged from said support plate to a second position at least partially extending from said recess to engage said support plate.

14. A dumbbell as in claim 12, further comprising:

means for disengaging said locking device from said support plate.

15. A dumbbell as in claim 14, wherein:

said means for disengaging includes:

a base for receiving the dumbbell;

an engagement shoulder on said base;

wherein said engagement shoulder causes said locking device to retract from said support plate when said dumbbell is received in said base.

16. A dumbbell as in claim 15, wherein:

said engagement shoulder is adapted for at least partial insertion into said recess; and

said engagement shoulder causes said locking device to retract from said support plate when said engagement shoulder is received in said recess.

17. A dumbbell as in claim 15 wherein:

said engagement shoulder directly engages said locking device.

18. A dumbbell as defined in claim 17 wherein:

said locking device has a lower end forming a cam surface; and

said engagement shoulder has a top end forming a complimentary cam surface.

19. A dumbbell as defined in claim 18, wherein said cam surface on said engagement shoulder operably engages said cam surface on said locking device to cause said locking device to move laterally into said recess and disengage from said support plate.

20. A dumbbell as in claim 15 wherein:

said locking device comprises a biased pin and a slider positioned in said recess;

said engagement shoulder engages said slider to cause said slider to engage said biased pin and disengage from said support plate; and

wherein said slider engages said biased pin to cause said biased pin to disengage from said support plate, and said slider disengages from said biased pin to cause said biased pin to engage said support plate.

21. A dumbbell as defined in claim 14, wherein: said means for disengaging said locking device includes a base for receiving said dumbbell;

said base including an engagement shoulder;

wherein said engagement shoulder causes said locking device to disengage from said support plate when said engagement shoulder is received in said recess to actuate said locking device; and

US 7,261,678 B2

27

28

a protrusion for selectively engaging at least one tab on said support plate to retain said dumbbell in said base when said protrusion is aligned to engage said at least one tab.

22. A dumbbell as defined in claim 14 wherein:

said means for disengaging said locking device comprises a base for receiving said dumbbell;

said base includes an engagement feature for at least partial insertion into said inner plate; and

wherein partial insertion of said engagement feature causes said locking device to disengage from said support plate when said dumbbell is received in said base.

23. A dumbbell and base system comprising:

a variable weight dumbbell comprising:

  at least one weight plate;

  a selection device operably associated with the at least one weight plate to provide a desired weight load; and

  a locking device operably associated with the selection device to disable the selection device;

a base for receiving said dumbbell comprising:

  at least one protrusion selectively operable with the selection device to secure the variable weight dumbbell to the base when the selection device is not fully engaged;

wherein the selection device is operable only when the dumbbell is positioned in the base, and the locking device is actuated only when the dumbbell is removed from the base.

24. The dumbbell and base system of claim 23, wherein the base further includes an engagement feature to engage the locking device to deactivate the locking device when the dumbbell is received in the base.

25. The dumbbell and base system of claim 23, wherein the dumbbell further includes at least one collar to secure the selected at least one weight plate on the dumbbell.

* * * * *

# EXHIBIT  L

US00D508628S

(12) **United States Design Patent**
Crawford et al.

(10) Patent No.: **US D508,628 S**
(45) Date of Patent: ** **Aug. 23, 2005**

(54) **ADJUSTABLE DUMBBELL SUPPORT BASE**

(75) Inventors: **Douglas A. Crawford**, Lafayette, CO (US); **Eric D. Golesh**, Thornton, CO (US); **Edward L. Flick**, Denver, CO (US); **Matthew Rauwerdink**, Westminster, CO (US)

(73) Assignee: **Nautilus, Inc.**, Vancouver, WA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/164,931**

(22) Filed: **Jul. 31, 2002**

(51) LOC (8) Cl. .................................................. **08-08**
(52) U.S. Cl. .................................................. **D6/552**
(58) Field of Search ........................ D6/552; D21/691, D21/662, 686, 690; 482/104, 148; 211/85

(56)         **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 772,906 A | 10/1904 | Reach |
| 848,272 A | 3/1907 | Thornley |
| 1,053,109 A | 2/1913 | Reach |
| 1,422,888 A | 7/1922 | Reeves et al. ............. D21/197 |
| 1,672,944 A | 6/1928 | Jowett ........................ D21/197 |
| 1,779,594 A | 10/1930 | Hall ........................... D21/197 |
| 1,917,566 A | 7/1933 | Wood .......................... D21/197 |
| 3,647,209 A | 3/1972 | La Lanne ...................... 272/58 |
| 3,758,110 A | 9/1973 | Bender ........................ 272/84 |
| 3,771,785 A | 11/1973 | Speyer ........................ 272/84 |
| 3,825,253 A | 7/1974 | Speyer ........................ 272/84 |
| 3,912,261 A | 10/1975 | Lambert, Sr. ................. 272/58 |
| 3,913,908 A | 10/1975 | Speyer ........................ 272/84 |
| D244,628 S | 6/1977 | Wright ....................... D34/5 K |
| 4,029,312 A | 6/1977 | Wright ........................ 272/123 |
| 4,076,236 A | 2/1978 | Ionel ......................... 272/123 |
| RE31,113 E | 12/1982 | Coker et al. ................. 272/118 |
| 4,411,424 A | 10/1983 | Barnett ....................... 272/118 |
| 4,453,710 A | 6/1984 | Plötz .......................... 272/122 |
| 4,529,197 A | 7/1985 | Gogarty ....................... 272/122 |
| 4,529,198 A | 7/1985 | Heltick, Jr. .................. 272/123 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CH | 384485 | 11/1964 |
| EP | 177643 | 4/1986 |
| FR | 637365 | 4/1928 |
| FR | 1468902 | 2/1967 |
| FR | 2452296 | 10/1980 |
| FR | 2613237 | 10/1988 |
| SU | 1258447 | 9/1986 |
| SU | 1643024 | 7/1987 |
| SU | 1367987 | 1/1988 |
| SU | 1389789 A2 | 4/1988 |
| SU | 1659073 | 6/1991 |
| SU | 1687271 | 10/1991 |
| SU | 1780780 | 12/1992 |
| WO | 03/063969 A3 | 8/2003 |
| WO | 03/089070 A1 | 10/2003 |

OTHER PUBLICATIONS

UK fitness supplies.co.uk, located at http://www.ukfitness-supplies.co.uk, 3 pages (First publ. date unknown, website pages printed on Aug. 4, 2003).
UK fitness supplies.co.uk, located at http://www.ukfitness-supplies.co.uk, 3 pages (First publ. date unknown, website pages printed on Aug. 5, 2003).

*Primary Examiner*—Brian N Vinson
(74) *Attorney, Agent, or Firm*—Dorsey & Whitney LLP

(57)         **CLAIM**

The ornamental design for an adjustable dumbbell support base, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective view of the adjustable dumbbell support base of the present invention;
FIG. 2 is a front elevation view thereof;
FIG. 3 is a rear elevation view thereof;
FIG. 4 is a right elevation view thereof;
FIG. 5 is a left elevation view thereof;
FIG. 6 is a top plan view thereof; and,
FIG. 7 is a bottom plan view thereof.

**1 Claim, 4 Drawing Sheets**



Exhibit L
Page 136 of 155

US D508,628 S
Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,540,171 A | 9/1985 | Clark et al. | 272/118 |
| 4,546,971 A | 10/1985 | Raasoch | 272/118 |
| 4,566,690 A | 1/1986 | Schook | 272/123 |
| 4,568,078 A | 2/1986 | Weiss | 272/117 |
| 4,575,074 A | 3/1986 | Damratoski | 272/119 |
| 4,601,466 A | 7/1986 | Lais | 272/118 |
| 4,624,457 A | 11/1986 | Silberman et al. | 272/118 |
| 4,627,618 A | 12/1986 | Schwartz | 272/122 |
| 4,651,988 A | 3/1987 | Sobel | 272/143 |
| 4,730,828 A | 3/1988 | Lane | 272/118 |
| 4,743,017 A | 5/1988 | Jaeger | 272/122 |
| 4,768,780 A | 9/1988 | Hayes | 272/122 |
| 4,787,629 A | 11/1988 | DeMyer | 272/123 |
| 4,809,973 A | 3/1989 | Johns | 272/118 |
| 4,822,034 A | 4/1989 | Shields | 272/123 |
| 4,878,662 A | 11/1989 | Chern | 272/118 |
| 4,878,663 A | 11/1989 | Luquette | 272/134 |
| 4,880,229 A | 11/1989 | Broussard | 272/123 |
| 4,900,016 A | 2/1990 | Caruthers | 272/122 |
| 4,900,018 A | 2/1990 | Ish, III et al. | 272/134 |
| D307,168 S | 4/1990 | Vodhanel | D21/197 |
| 4,913,422 A | 4/1990 | Elmore et al. | 272/123 |
| 4,948,123 A | 8/1990 | Schook | 272/123 |
| 4,971,305 A | 11/1990 | Rennex | 272/118 |
| 4,982,957 A | 1/1991 | Shields | 272/123 |
| D315,003 S | 2/1991 | Huang | D21/197 |
| 5,000,446 A | 3/1991 | Sarno | 272/118 |
| 5,037,089 A | 8/1991 | Spagnuolo et al. | 272/134 |
| 5,040,787 A | 8/1991 | Brotman | 272/123 |
| D321,230 S | 10/1991 | Leonesio | D21/197 |
| 5,102,124 A | 4/1992 | Diodati | 482/107 |
| 5,123,885 A | 6/1992 | Shields | 482/106 |
| 5,131,898 A | 7/1992 | Panagos | 482/108 |
| D329,563 S * | 9/1992 | Rasmussen | D6/552 |
| 5,171,199 A | 12/1992 | Panagos | 482/106 |
| 5,221,244 A | 6/1993 | Doss | 482/106 |
| 5,263,915 A | 11/1993 | Habing | 482/99 |
| 5,284,463 A | 2/1994 | Shields | 482/107 |
| 5,306,221 A | 4/1994 | Itaru | 482/98 |
| 5,344,375 A | 9/1994 | Cooper | 482/106 |
| 5,374,229 A | 12/1994 | Sencil | 482/98 |
| 5,407,413 A | 4/1995 | Kupferman | 482/106 |
| D359,778 S | 6/1995 | Towley, III et al. | D21/197 |
| 5,435,800 A | 7/1995 | Nelson | 482/108 |
| D362,776 S * | 10/1995 | Thorn | D6/552 |
| 5,484,367 A | 1/1996 | Martinez | 482/107 |
| 5,607,379 A | 3/1997 | Scott | 482/107 |
| 5,628,716 A | 5/1997 | Brice | 482/106 |
| 5,630,776 A * | 5/1997 | Yang | 482/104 |
| 5,637,064 A | 6/1997 | Olson et al. | 482/108 |
| 5,669,861 A | 9/1997 | Toups | 482/98 |
| 5,769,762 A | 6/1998 | Towley, III et al. | 482/93 |
| 5,779,604 A | 7/1998 | Towley, III et al. | 482/108 |
| 5,839,997 A | 11/1998 | Roth et al. | 482/107 |
| 5,853,355 A | 12/1998 | Standish | 482/106 |
| 5,876,313 A | 3/1999 | Krull | 482/98 |
| 5,971,899 A | 10/1999 | Towley, III et al. | 482/108 |
| 6,033,350 A | 3/2000 | Krull | 482/98 |
| 6,039,678 A | 3/2000 | Dawson | 482/107 |
| D422,654 S | 4/2000 | Chen | D21/681 |
| 6,083,144 A | 7/2000 | Towley, III et al. | 482/107 |
| 6,099,442 A | 8/2000 | Krull | 482/98 |
| 6,186,927 B1 | 2/2001 | Krull | 482/98 |
| 6,186,928 B1 | 2/2001 | Chen | 482/107 |
| 6,196,952 B1 | 3/2001 | Chen | 482/107 |
| 6,228,003 B1 | 5/2001 | Hald et al. | 482/107 |
| 6,261,022 B1 | 7/2001 | Dalebout et al. | 402/107 |
| 6,261,211 B1 | 7/2001 | Suarez et al. | 482/107 |
| 6,322,481 B1 | 11/2001 | Krull | 482/107 |
| 6,328,678 B1 | 12/2001 | Romero | 482/106 |
| 6,350,221 B1 | 2/2002 | Krull | 482/142 |
| 6,402,666 B2 | 6/2002 | Krull | 482/107 |
| 6,416,446 B1 | 7/2002 | Krull | 482/108 |
| 6,422,979 B1 | 7/2002 | Krull | 482/98 |
| 6,461,282 B1 | 10/2002 | Fenelon | 482/107 |
| 6,500,101 B1 | 12/2002 | Chen | 482/107 |
| D468,946 S * | 1/2003 | Harms et al. | D6/552 |
| D469,294 S * | 1/2003 | Harms et al. | D6/552 |
| 6,540,650 B1 | 4/2003 | Krull | 482/107 |
| 6,629,910 B1 | 10/2003 | Krull | 482/98 |
| 6,669,606 B2 | 12/2003 | Krull | 482/98 |
| 6,679,816 B1 | 1/2004 | Krull | 482/107 |
| 6,719,674 B2 | 4/2004 | Krull | 482/106 |
| 6,733,424 B2 | 5/2004 | Krull | 482/98 |
| 6,746,381 B2 | 6/2004 | Krull | 482/108 |
| 6,749,547 B2 | 6/2004 | Krull | 482/106 |
| 2002/0107118 A1 | 8/2002 | Shifferaw | 482/106 |
| 2002/0115539 A1 | 8/2002 | Krull | 482/106 |
| 2002/0183174 A1 | 12/2002 | Chen | 482/108 |
| 2003/0153439 A1 | 8/2003 | Krull | 482/99 |
| 2003/0199368 A1 | 10/2003 | Krull | 482/106 |
| 2003/0199369 A1 | 10/2003 | Krull | 482/107 |
| 2004/0005968 A1 | 1/2004 | Crawford et al. | 482/106 |
| 2004/0005969 A1 | 1/2004 | Chen | 482/106 |
| 2004/0023765 A1 | 2/2004 | Krull | 482/142 |
| 2004/0072661 A1 | 4/2004 | Krull | 482/106 |
| 2004/0138031 A1 | 7/2004 | Krull | 482/104 |

* cited by examiner

Exhibit L

Page 137 of 155

Case 2:10-cv-00624-MMM-MAN   Document 43   Filed 11/05/10   Page 152 of 173   Page ID #:1131



# FIG.1

Exhibit L

Page 138 of 155



FIG.2



FIG.3

Exhibit L

Page 139 of 155



# FIG.4



# FIG.5

Exhibit L

Page 140 of 155



FIG.6



FIG.7

Exhibit L
Page 141 of 155

# EXHIBIT M

US00D540405S

(12) **United States Design Patent**
Crawford et al.

(10) Patent No.: **US D540,405 S**
(45) Date of Patent: ** **Apr. 10, 2007**

(54) **ADJUSTABLE DUMBBELL**

(75) Inventors: **Douglas A. Crawford**, Lafayette, CO (US); **Eric D. Golesh**, Thornton, CO (US); **Edward L. Flick**, Denver, CO (US); **Matthew Rauwerdink**, Westminster, CO (US)

(73) Assignee: **Nautilus, Inc.**, Vancouver, WA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/164,826**

(22) Filed: **Jul. 31, 2002**

(51) LOC (8) Cl. .................................................. 21-02
(52) U.S. Cl. .................................................. D21/681
(58) Field of Classification Search ............... D21/662, D21/680, 681, 682, 683, 684; 482/105, 106, 482/107, 108
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 772,906 | A | 10/1904 | Reach |
| 848,272 | A | 3/1907 | Thornley |
| 1,053,109 | A | 2/1913 | Reach |
| 1,422,888 | A | 7/1922 | Reeves et al. |
| 1,672,944 | A | 6/1928 | Jowett |
| 1,779,594 | A | 10/1930 | Hall |
| 1,917,566 | A | 7/1933 | Wood |
| 3,647,209 | A | 3/1972 | La Lanne |
| 3,758,109 | A | 9/1973 | Bender |
| 3,771,785 | A | 11/1973 | Speyer |
| 3,825,253 | A | 7/1974 | Speyer |
| 3,912,261 | A | 10/1975 | Lambert, Sr. ............... 272/58 |
| 3,913,908 | A | 10/1975 | Speyer |
| D244,628 | S | 6/1977 | Wright |
| 4,029,312 | A | 6/1977 | Wright |
| 4,076,236 | A | 2/1978 | Ionel |
| 4,349,192 | A | 9/1982 | Lambert, Jr. et al. |
| RE31,113 | E | 12/1982 | Coker et al. |
| 4,411,424 | A | 10/1983 | Barnett ....................... 272/118 |
| 4,453,710 | A | 6/1984 | Plötz |
| 4,529,197 | A | 7/1985 | Gogarty |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CH | 384485 | 11/1964 |
| EP | 177643 | 4/1986 |
| FR | 637365 | 4/1928 |
| FR | 1468902 | 2/1967 |
| FR | 2452296 | 10/1980 |
| FR | 2613237 | 10/1988 |
| JP | 10118222 | 5/1998 |
| SU | 1258447 | 9/1986 |
| SU | 1643024 | 7/1987 |
| SU | 1367987 | 1/1988 |
| SU | 1389789 | A2 | 4/1988 |
| SU | 1659073 | 6/1991 |
| SU | 1687271 | 10/1991 |
| SU | 1780780 | 12/1992 |
| WO | WO 03/063969 A3 | 8/2003 |
| WO | WO 03/063969 A2 | 8/2003 |
| WO | 03/089070 A1 | 10/2003 |

OTHER PUBLICATIONS

UK fitness supplies.co.uk, located at http://www.ukfitness-supplies.co.uk, 3 pages (First publ. date unknown, website pages printed on Aug. 5, 2003).

*Primary Examiner*—Philip S. Hyder
(74) *Attorney, Agent, or Firm*—Dorsey & Whitney LLP

(57) **CLAIM**

The ornamental design for an adjustable dumbbell, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective view of the adjustable dumbbell of the present invention;
FIG. 2 is a front elevation view thereof;
FIG. 3 is a rear elevation view thereof;
FIG. 4 is a right side elevation view thereof;
FIG. 5 is a left side elevation view thereof;
FIG. 6 is a top plan view thereof; and,
FIG. 7 is a bottom plan view thereof.

**1 Claim, 4 Drawing Sheets**



## US D540,405 S
### Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,529,198 A | 7/1985 | Hettick, Jr. | |
| 4,538,805 A | 9/1985 | Parviainen | |
| 4,540,171 A | 9/1985 | Clark et al. | |
| 4,546,971 A | 10/1985 | Raasoch | 272/118 |
| 4,566,690 A | 1/1986 | Schook | |
| 4,568,078 A | 2/1986 | Weiss | |
| 4,575,074 A | 3/1986 | Damratoski | |
| 4,601,466 A | 7/1986 | Lais | 272/118 |
| 4,624,457 A | 11/1986 | Silberman et al. | |
| 4,627,615 A | 12/1986 | Nurkowski | |
| 4,627,618 A | 12/1986 | Schwartz | |
| 4,651,988 A | 3/1987 | Sobel | |
| 4,712,793 A | 12/1987 | Harwick et al. | |
| 4,730,828 A | 3/1988 | Lane | |
| 4,743,017 A | 5/1988 | Jaeger | |
| 4,768,780 A | 9/1988 | Hayes | |
| 4,787,629 A | 11/1988 | DeMyer | |
| 4,809,973 A | 3/1989 | Johns | 272/118 |
| 4,822,034 A | 4/1989 | Shields | |
| 4,834,365 A | 5/1989 | Jones | |
| 4,878,662 A | 11/1989 | Chern | |
| 4,878,663 A | 11/1989 | Luquette | 272/134 |
| 4,880,229 A | 11/1989 | Broussard | |
| 4,900,016 A | 2/1990 | Caruthers | |
| 4,900,018 A | 2/1990 | Ish, III et al. | 272/134 |
| D307,168 S | 4/1990 | Vodhanel | D21/681 |
| 4,913,422 A | 4/1990 | Elmore et al. | |
| 4,948,123 A | 8/1990 | Schook | |
| 4,971,305 A | 11/1990 | Rennex | |
| 4,982,957 A | 1/1991 | Shields | |
| D315,003 S | 2/1991 | Huang | D21/681 |
| 5,000,446 A | 3/1991 | Sarno | 272/118 |
| 5,037,089 A | 8/1991 | Spagnuolo et al. | 272/134 |
| 5,040,787 A | 8/1991 | Brotman | |
| D321,230 S | 10/1991 | Leonesio | D21/681 |
| 5,102,124 A | 4/1992 | Diodati | 482/107 |
| 5,123,885 A | 6/1992 | Shields | 482/106 |
| 5,131,898 A | 7/1992 | Panagos | 482/108 |
| 5,135,453 A | 8/1992 | Sollenberger | |
| D329,563 S | 9/1992 | Rasmussen | D6/552 |
| 5,171,199 A | 12/1992 | Panagos | 482/106 |
| 5,221,244 A | 6/1993 | Doss | 482/107 |
| 5,263,915 A | 11/1993 | Habing | 482/99 |
| 5,284,463 A | 2/1994 | Shields | 482/107 |
| 5,306,221 A | 4/1994 | Itaru | 482/98 |
| 5,344,375 A | 9/1994 | Cooper | 482/106 |
| 5,374,229 A | 12/1994 | Sencil | 482/98 |
| 5,407,413 A | 4/1995 | Kupferman | 482/106 |
| D359,778 S | 6/1995 | Towley, III et al. | D21/681 |
| 5,433,687 A | 7/1995 | Hinzman et al. | |
| 5,435,800 A | 7/1995 | Nelson | 482/108 |
| D362,776 S | 10/1995 | Thorn | D6/552 |
| 5,484,367 A | 1/1996 | Martinez | 482/107 |
| 5,607,379 A | 3/1997 | Scott | 482/107 |
| 5,628,716 A | 5/1997 | Brice | 482/106 |
| 5,636,776 A | 5/1997 | Yang | 482/104 |
| 5,637,064 A | 6/1997 | Olson et al. | 482/108 |
| 5,669,861 A | 9/1997 | Toups | 482/98 |
| 5,749,814 A | 5/1998 | Chen | |
| 5,769,762 A | 6/1998 | Towley, III et al. | 482/93 |
| 5,776,040 A | 7/1998 | Webb et al. | |
| 5,779,604 A | 7/1998 | Towley, III et al. | 482/108 |
| 5,839,997 A | 11/1998 | Roth et al. | 482/107 |
| 5,853,355 A | 12/1998 | Standish | 482/106 |
| 5,876,313 A | 3/1999 | Krull | 482/98 |
| 5,879,274 A | 3/1999 | Mattox | |
| 5,971,899 A | 10/1999 | Towley, III et al. | 482/108 |
| 6,033,350 A | 3/2000 | Krull | 482/98 |
| 6,039,678 A | 3/2000 | Dawson | 482/107 |
| D422,654 S * | 4/2000 | Chen | D21/681 |
| 6,083,144 A | 7/2000 | Towley, III et al. | 482/107 |
| 6,099,442 A | 8/2000 | Krull | 482/107 |
| 6,123,651 A | 9/2000 | Ellenburg | |
| 6,149,558 A | 11/2000 | Chen | |
| 6,186,927 B1 | 2/2001 | Krull | 482/98 |
| 6,186,928 B1 | 2/2001 | Chen | 482/107 |
| 6,196,952 B1 | 3/2001 | Chen | 482/107 |
| 6,228,003 B1 | 5/2001 | Hald et al. | 482/107 |
| 6,261,022 B1 | 7/2001 | Dalebout et al. | 402/107 |
| 6,261,211 B1 | 7/2001 | Suarez et al. | 482/107 |
| 6,322,481 B1 | 11/2001 | Krull | 482/107 |
| 6,328,678 B1 | 12/2001 | Romero | 482/106 |
| 6,350,221 B1 | 2/2002 | Krull | 482/142 |
| 6,402,666 B2 | 6/2002 | Krull | 482/107 |
| 6,416,446 B1 | 7/2002 | Krull | 482/108 |
| 6,422,979 B1 | 7/2002 | Krull | 482/107 |
| 6,461,282 B1 | 10/2002 | Fenelon | 482/106 |
| 6,500,101 B1 | 12/2002 | Chen | 482/107 |
| D468,946 S | 1/2003 | Harms et al. | D6/552 |
| D469,294 S | 1/2003 | Harms et al. | D6/552 |
| 6,540,650 B1 | 4/2003 | Krull | 482/107 |
| 6,582,345 B2 | 6/2003 | Roy | |
| 6,629,910 B1 | 10/2003 | Krull | 482/98 |
| 6,656,093 B2 | 12/2003 | Chen | |
| 6,669,606 B2 | 12/2003 | Krull | 482/98 |
| 6,679,816 B1 | 1/2004 | Krull | 482/107 |
| 6,682,464 B2 | 1/2004 | Shifferaw | |
| 6,719,672 B1 | 4/2004 | Ellis et al. | |
| 6,719,674 B2 | 4/2004 | Krull | 482/106 |
| 6,733,424 B2 | 5/2004 | Krull | 482/98 |
| 6,746,381 B2 | 6/2004 | Krull | 482/108 |
| 6,749,547 B2 | 6/2004 | Krull | 482/106 |
| D498,272 S | 11/2004 | Sanford-Schwentke et al. | |
| D500,820 S | 1/2005 | Krull | |
| 6,855,097 B2 | 2/2005 | Krull | |
| 6,872,173 B2 | 3/2005 | Krull | |
| 6,902,516 B2 | 6/2005 | Krull | |
| D508,628 S | 8/2005 | Crawford et al. | |
| 2002/0107118 A1 | 8/2002 | Shifferaw | 482/106 |
| 2002/0115539 A1 | 8/2002 | Krull | 482/106 |
| 2002/0183174 A1 | 12/2002 | Chen | 482/108 |
| 2003/0148862 A1 | 8/2003 | Chen et al. | |
| 2003/0153439 A1 | 8/2003 | Krull | 482/99 |
| 2003/0199368 A1 | 10/2003 | Krull | 482/107 |
| 2003/0199369 A1 | 10/2003 | Krull | 482/107 |
| 2004/0005968 A1 | 1/2004 | Crawford et al. | 482/142 |
| 2004/0023765 A1 | 2/2004 | Krull | 482/142 |
| 2004/0072661 A1 | 4/2004 | Krull | 482/106 |
| 2004/0138031 A1 | 7/2004 | Krull | 482/104 |
| 2005/0079961 A1 | 4/2005 | Dalebout et al. | |

* cited by examiner



# FIG.1



FIG.2



FIG.3



# FIG.4



# FIG.5



**FIG.6**



**FIG.7**

# EXHIBIT  N



US00D540894S

(12) **United States Design Patent**
Crawford et al.

(10) Patent No.: **US D540,894 S**
(45) Date of Patent: ** **Apr. 17, 2007**

(54) **ADJUSTABLE DUMBBELL**

(75) Inventors: **Douglas A. Crawford**, Lafayette, CO (US); **Eric D. Golesh**, Thornton, CO (US); **Edward L. Flick**, Denver, CO (US); **Matthew Rauwerdink**, Westminster, CO (US)

(73) Assignee: **Nautilus, Inc.**, Vancouver, WA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/164,972**

(22) Filed: **Aug. 1, 2002**

(51) LOC (8) Cl. .................................................. 21-02
(52) U.S. Cl. .................................................. D21/681
(58) Field of Classification Search .............. D21/680, D21/681, 682, 683; 482/105, 106, 107, 108, 482/109
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 772,906 | A | 10/1904 | Reach |
| 848,272 | A | 3/1907 | Thornley |
| 1,053,109 | A | 2/1913 | Reach |
| 1,422,888 | A | 7/1922 | Reeves et al. |
| 1,672,944 | A | 6/1928 | Jowett |
| 1,779,594 | A | 10/1930 | Hall |
| 1,917,566 | A | 7/1933 | Wood |
| 3,647,209 | A | 3/1972 | La Lanne |
| 3,758,109 | A | 9/1973 | Bender |
| 3,771,785 | A | 11/1973 | Speyer |
| 3,825,253 | A | 7/1974 | Speyer |
| 3,912,261 | A | 10/1975 | Lambert, Sr. ................. 272/58 |
| 3,913,908 | A | 10/1975 | Speyer |
| D244,628 | S | 6/1977 | Wright |
| 4,029,312 | A | 6/1977 | Wright |
| 4,076,236 | A | 2/1978 | Ionel ........................... 482/108 |
| 4,349,192 | A | 9/1982 | Lambert, Jr. et al. |
| RE31,113 | E | 12/1982 | Coker et al. |
| 4,411,424 | A | 10/1983 | Barnett ....................... 272/118 |
| 4,453,710 | A | 6/1984 | Plötz |
| 4,529,197 | A | 7/1985 | Gogarty |

| | | | |
|---|---|---|---|
| 4,529,198 | A | 7/1985 | Hettick, Jr. |
| 4,538,805 | A | 9/1985 | Parviainen |
| 4,540,171 | A | 9/1985 | Clark et al. |
| 4,546,971 | A | 10/1985 | Raasoch ..................... 272/118 |
| 4,566,690 | A | 1/1986 | Schook ...................... 482/108 |
| 4,568,078 | A | 2/1986 | Weiss |
| 4,575,074 | A | 3/1986 | Damratoski ................ 482/108 |
| 4,601,466 | A | 7/1986 | Lais .......................... 272/118 |
| 4,624,457 | A | 11/1986 | Silberman et al. |
| 4,627,615 | A | 12/1986 | Nurkowski |
| 4,627,618 | A | 12/1986 | Schwartz .................... 482/108 |
| 4,651,988 | A | 3/1987 | Sobel |
| 4,712,793 | A | 12/1987 | Harwick et al. |
| 4,730,828 | A | 3/1988 | Lane |
| 4,743,017 | A | 5/1988 | Jaeger ....................... 482/108 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CH | 384485 | 11/1964 |
| EP | 177643 | 4/1986 |

(Continued)

OTHER PUBLICATIONS

UK Fitness Supplies. co . uk, websight 2002, page of dumbbell sets.*

*Primary Examiner*—Philip S. Hyder
(74) *Attorney, Agent, or Firm*—Dorsey & Whitney LLP

(57) **CLAIM**

The ornamental design for an adjustable dumbbell, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective view of the adjustable dumbbell of the present invention;
FIG. 2 is a front elevation view thereof;
FIG. 3 is a rear elevation view thereof;
FIG. 4 is a right side elevation view thereof;
FIG. 5 is a left side elevation view thereof;
FIG. 6 is a top plan view thereof; and,
FIG. 7 is a bottom plan view thereof.

**1 Claim, 4 Drawing Sheets**



US D540,894 S

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,768,780 A | 9/1988 | Hayes | 482/108 |
| 4,787,629 A | 11/1988 | DeMyer | |
| 4,809,973 A | 3/1989 | Johns | 272/118 |
| 4,822,034 A | 4/1989 | Shields | |
| 4,834,365 A | 5/1989 | Jones | |
| 4,878,662 A | 11/1989 | Chern | |
| 4,878,663 A | 11/1989 | Luquette | 272/134 |
| 4,880,229 A | 11/1989 | Broussard | 482/108 |
| 4,900,016 A | 2/1990 | Caruthers | 482/108 |
| 4,900,018 A | 2/1990 | Ish, III et al. | 272/134 |
| D307,168 S | 4/1990 | Vodhanel | D21/681 |
| 4,913,422 A | 4/1990 | Elmore et al. | 482/108 |
| 4,948,123 A | 8/1990 | Schook | 482/108 |
| 4,971,305 A | 11/1990 | Rennex | |
| 4,982,957 A | 1/1991 | Shields | |
| D315,003 S | 2/1991 | Huang | D21/681 |
| 5,000,446 A | 3/1991 | Sarno | 272/118 |
| 5,037,089 A | 8/1991 | Spagnuolo et al. | 272/134 |
| 5,040,787 A | 8/1991 | Brotman | |
| D321,230 S | 10/1991 | Leonesio | D21/681 |
| 5,102,124 A | 4/1992 | Diodati | 482/107 |
| 5,123,885 A | 6/1992 | Shields | 482/106 |
| 5,131,898 A | 7/1992 | Panagos | 482/108 |
| 5,135,453 A | 8/1992 | Sollenberger | |
| D329,563 S | 9/1992 | Rasmussen | D6/552 |
| 5,171,199 A | 12/1992 | Panagos | 482/106 |
| 5,221,244 A | 6/1993 | Doss | 482/106 |
| 5,263,915 A | 11/1993 | Habing | 482/99 |
| 5,284,463 A | 2/1994 | Shields | 482/107 |
| 5,306,221 A | 4/1994 | Itaru | 482/98 |
| 5,344,375 A | 9/1994 | Cooper | 482/106 |
| 5,374,229 A | 12/1994 | Sencil | 482/98 |
| 5,407,413 A | 4/1995 | Kupferman | 482/98 |
| D359,778 S | 6/1995 | Towley, III et al. | D21/681 |
| 5,433,687 A | 7/1995 | Hinzman et al. | |
| 5,435,800 A | 7/1995 | Nelson | 482/108 |
| D362,776 S | 10/1995 | Thorn | D6/552 |
| 5,484,367 A | 1/1996 | Martinez | 482/107 |
| 5,607,379 A | 3/1997 | Scott | 482/107 |
| 5,628,716 A | 5/1997 | Brice | 482/106 |
| 5,630,776 A | 5/1997 | Yang | 482/104 |
| 5,637,064 A | 6/1997 | Olson et al. | 482/108 |
| 5,669,861 A | 9/1997 | Toups | 482/98 |
| 5,749,814 A | 5/1998 | Chen | |
| 5,769,762 A | 6/1998 | Towley, III et al. | 482/93 |
| 5,776,040 A | 7/1998 | Webb et al. | |
| 5,779,604 A | 7/1998 | Towley, III et al. | 482/108 |
| 5,839,997 A | 11/1998 | Roth et al. | 482/107 |
| 5,853,355 A | 12/1998 | Standish | 482/106 |
| 5,876,313 A | 3/1999 | Krull | 482/98 |
| 5,879,274 A | 3/1999 | Mattox | |
| 5,971,899 A | 10/1999 | Towley, III et al. | 482/108 |
| 6,033,350 A | 3/2000 | Krull | 482/98 |
| 6,039,678 A | 3/2000 | Dawson | 482/107 |
| D422,654 S | 4/2000 | Chen | D21/681 |
| 6,083,144 A | 7/2000 | Towley, III et al. | 482/107 |
| 6,099,442 A | 8/2000 | Krull | 482/107 |
| 6,123,651 A | 9/2000 | Ellenburg | |
| 6,149,558 A | 11/2000 | Chen | |
| 6,186,927 B1 | 2/2001 | Krull | 482/98 |
| 6,186,928 B1 | 2/2001 | Chen | 482/107 |

| | | | |
|---|---|---|---|
| 6,196,952 B1 | 3/2001 | Chen | 482/107 |
| 6,228,003 B1 | 5/2001 | Hald et al. | 482/107 |
| 6,261,022 B1 | 7/2001 | Dalebout et al. | 402/107 |
| 6,261,211 B1 | 7/2001 | Suarez et al. | 482/107 |
| 6,322,481 B1 | 11/2001 | Krull | 482/107 |
| 6,328,678 B1 | 12/2001 | Romero | 482/106 |
| 6,350,221 B1 | 2/2002 | Krull | 482/107 |
| 6,402,666 B2 | 6/2002 | Krull | 482/107 |
| 6,416,446 B1 | 7/2002 | Krull | 482/108 |
| 6,422,979 B1 | 7/2002 | Krull | 482/98 |
| 6,461,282 B1 | 10/2002 | Fenelon | 482/106 |
| 6,500,101 B1 | 12/2002 | Chen | 482/107 |
| D468,946 S | 1/2003 | Harms et al. | D6/552 |
| D469,294 S | 1/2003 | Harms et al. | D6/552 |
| 6,540,650 B1 | 4/2003 | Krull | 482/107 |
| 6,582,345 B2 | 6/2003 | Roy | |
| 6,629,910 B1 | 10/2003 | Krull | 482/98 |
| 6,656,093 B2 | 12/2003 | Chen | |
| 6,669,606 B2 | 12/2003 | Krull | 482/98 |
| 6,679,816 B1 | 1/2004 | Krull | 482/107 |
| 6,682,464 B2 | 1/2004 | Shifferaw | |
| 6,719,672 B1 | 4/2004 | Ellis et al. | |
| 6,719,674 B2 | 4/2004 | Krull | 482/106 |
| 6,733,424 B2 | 5/2004 | Krull | 482/98 |
| 6,746,381 B2 | 6/2004 | Krull | 482/108 |
| 6,749,547 B2 | 6/2004 | Krull | 482/106 |
| D498,272 S | 11/2004 | Sanford-Schwentke et al. | |
| D500,820 S | 1/2005 | Krull | |
| 6,855,097 B2 | 2/2005 | Krull | |
| 6,872,173 B2 | 3/2005 | Krull | |
| 6,902,516 B2 | 6/2005 | Krull | |
| D508,628 S | 8/2005 | Crawford et al. | |
| 2002/0115539 A1 | 8/2002 | Krull | 482/106 |
| 2002/0183174 A1 | 12/2002 | Chen | 482/108 |
| 2003/0148862 A1 | 8/2003 | Chen et al. | |
| 2003/0153439 A1 | 8/2003 | Krull | 482/99 |
| 2003/0199368 A1 | 10/2003 | Krull | 482/107 |
| 2003/0199369 A1 | 10/2003 | Krull | 482/107 |
| 2004/0005968 A1 | 1/2004 | Crawford et al. | 482/106 |
| 2004/0005969 A1 | 1/2004 | Chen | 482/107 |
| 2004/0023765 A1 | 2/2004 | Krull | 482/142 |
| 2004/0072661 A1 | 4/2004 | Krull | 482/106 |
| 2004/0138031 A1 | 7/2004 | Krull | 482/104 |
| 2005/0079961 A1 | 4/2005 | Dalebout et al. | |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| FR | 637365 | 4/1928 |
| FR | 1468902 | 2/1967 |
| FR | 2452296 | 10/1980 |
| FR | 2613237 | 10/1988 |
| JP | 10118222 | 5/1998 |
| SU | 1258447 | 9/1986 |
| SU | 1643024 | 7/1987 |
| SU | 1367987 | 1/1988 |
| SU | 1389789 A2 | 4/1988 |
| SU | 1659073 | 6/1991 |
| SU | 1687271 | 10/1991 |
| SU | 1780780 | 12/1992 |
| WO | WO 03/063969 A3 | 8/2003 |
| WO | WO 03/063969 A2 | 8/2003 |
| WO | 03/089070 A1 | 10/2003 |

* cited by examiner

**U.S. Patent**      Apr. 17, 2007      **Sheet 1 of 4**      **US D540,894 S**



# FIG.1



## FIG.2



## FIG.3



## FIG.4



## FIG.5



**FIG.6**



**FIG.7**

# EXHIBIT  O



301 E. Ocean Blvd
Long Beach, CA 90802

**U.S. Customs and
Border Protection**

OCT 0 6 2009

2009-2704-001260
nl

Rebekka Moen
16400 SE Nautilus Drive
Vancouver, Washington 98683

Re: Seizure of Infringing Merchandise

Dear Sir or Madam:

Our records show that Nautilus, Inc. is the owner of the trademarks recorded under trademark recordation numbers TMK 09-00700, 9-00701; and Customs and Border Protection (CBP) has seized articles found to infringe upon said trademark.

Pursuant to Title 19, Code of Federal Regulations, Section 133.21 (counterfeit trademark), you are being provided the following information concerning said seizure:

Date and port of entry: July 14, 2009; Los Angeles/Long Beach harbor

Description of merchandise (including quantity): home gym power rods, 29pc; multifunction home gym, 90pc; Bowflex dumbbells, 294pc

Country of Origin: China

Name and address of exporter: Zhejiang Baige Import & Export Co Ltd, No.33 Xita Road Chengxi Industrial Park, Yongkang, Zhejiang, China

Name and address of importer: Chunchai Yu, 12409 Orgren Ct, Chino, CA 91710

Any questions not answered by this letter should be directed to Nicole M. Lopez of my staff at (562) 366-5545.

Sincerely,

Robert P. Thierry
Director, Fines, Penalties
and Forfeitures

Exhibit O
Page 154 of 155

# EXHIBIT P

301 E. Ocean Blvd
Long Beach, CA  90802



**U.S. Customs and
Border Protection**

OCT 1 6 2009

2009-2704-001348-01
sa

Rebekka Moen
Nautilus, Inc.
16400 Se Nautilus Drive
Vancouver, Washington  98683

Re: Seizure of Infringing Merchandise

Dear Madam/Sir:

Our records show that Nautilus, Inc. is the owner of the trademark recorded under trademark recordation number (TMK) 09-00700, (TMK) 09-00701, and Customs and Border Protection (CBP) has seized articles found to infringe upon said trademark.

Pursuant to Title 19, Code of Federal Regulations, Section 133.21 (counterfeit trademark), you are being provided the following information concerning said seizure:

Date and port of entry: September 30, 2009, Los Angeles/Long Beach Seaport

Description of merchandise (including quantity): Bowflex Exercise Equipment  67 pcs (115 ctns).

Country of Origin: China

Name and address of exporter: Huanggang Fuqiang Textile Imp. & Exp. Co., Ltd., No. 47 Shengli Road, Huanggang City, Hubei China

Name and address of importer: DR Trade International Inc., 18474 Amistad St., #F, Fountain Valley, CA  92708

Any questions not answered by this letter should be directed to <u>Sandy Agee</u> of my staff at <u>(562) 366-5542.</u>

Sincerely,

*Robert P. Thierry*

Robert P. Thierry
Director, Fines, Penalties
and Forfeitures

Exhibit P

Page 155 of 155